IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
PURDUE PHARMA PRODUCTS L.P.,                      :
NAPP PHARMACEUTICAL GROUP LTD.,                   :
BIOVAIL LABORATORIES INTERNATIONAL                :
SRL, and ORTHO-MCNEIL, INC.,                      :
                                                  :
              Plaintiffs,                         :       C.A. No. 07-255-JJF
                                                  :
        v.                                        :       REDACTED
                                                  :       PUBLIC VERSION
PAR PHARMACEUTICAL, INC. and PAR                  :
PHARMACEUTICAL COMPANIES, INC.,                   :
                                                  :
              Defendants.                         :
------------------------------------------------------------ x
```

## DECLARATION OF ROBERT E. COLLETTI IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FOREIGN DOCUMENTS

I, Robert E. Colletti, declare pursuant to 28 U.S.C. § 1746 that:

1.      I am a partner with the law firm of Frommer Lawrence & Haug LLP located at 745 Fifth Avenue, New York, New York 10151 and am counsel to Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc., (jointly "Par") in this action.

2.      I make the following declaration in support of Defendants' Motion to Compel Production of Foreign Documents.

3.      Exhibit A is a true and correct copy of a February 27, 2008 letter from Sona De to Robert E. Colletti.

4.      Exhibit B is a true and correct copy of a March 3, 2008 letter from Robert E. Colletti to Sona De.

5.      Exhibit C is a true and correct copy of a March 7, 2008 letter from Thomas A. Wang to Robert E. Colletti.

6.      Exhibit D is a true and correct copy of an English Translation of DE 4315525 bearing production numbers PUR0375443 – PUR0375452.

7.      Exhibit E is a true and correct copy of U.S. Patent No. 6,254,887 bearing production numbers PUR0533352 – PUR0533364.

8.    Exhibit F is a true and correct copy of the Patent Assignment Abstract of Title for U.S. Patent No. 6,254,887.

9.    Exhibit G is a true and correct copy of the Settlement Agreement between Mundipharma Laboratories GmbH, Euro-Celtique S.A., Napp Pharmaceutical Group Limited, Asta Medica AG, and Temmler Pharma GmbH, dated March 21, 1999, bearing production numbers DDK013902 – DDK013926.

10.    Exhibit H is a true and correct copy of an Information Disclosure Statement bearing production numbers PUR0536000 – PUR0536002.

11.    Exhibit I is a true and correct copy of the Statutory Declaration of Kenneth Frederick Brown before the Commonwealth of Australia bearing production numbers PUR0912025 – PUR0912050.

12.    Exhibit J is a true and correct copy of the Counter Statement by Euro-Celtique S.A. in response to the opposition of Grunenthal GmbH against New Zealand Patent Application 260,408 bearing production numbers NAPP026588 – NAPP0267600.

13.    Exhibit K is a true and correct copy of a February 5, 2008 letter from Robert E. Colletti to Sona De.

14.    Exhibit L is a true and correct copy of a February 11, 2008 letter from Robert E. Colletti to Sona De.

15.    Exhibit M is a true and correct copy of a February 21, 2008 letter from Robert E. Colletti to Sona De, Richard D. Kirk, Robert J. Goldman, and Mary W. Bourke.

16.    Exhibit N is a true and correct copy of an excerpt from the Family Legal Status Report for U.S. Patent No. 6,254,887.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 25, 2008

_Robert E. Colletti_

Robert E. Colletti

2

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2008, I electronically filed the foregoing document

with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand

Delivered to the following:

Jack B. Blumenfeld, Esquire
Rodger D. Smith II, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Richard D. Kirk, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130

Mary W. Bourke, Esquire
Conolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

I hereby certify that on March 25, 2008, I have sent by Electronic Mail, the foregoing

document to the following non-registered participants:

Robert J. Goldman, Esquire
Ropes & Gray LLP
525 University Avenue
Suite 300
Palo Alto, California 94310

Richard A. Inz
Sona De
Ropes & Gray LLP
1211 Avenue of the Americas
New York, New York 10036

Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
fineman@rlf.com

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2008, I electronically filed the foregoing document with

the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand

Delivered to the following:

Jack B. Blumenfeld, Esquire
Rodger D. Smith II, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Richard D. Kirk, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130

Mary W. Bourke, Esquire
Conolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

I hereby certify that on April 8, 2008, I have sent by Electronic Mail, the foregoing

document to the following non-registered participants:

Robert J. Goldman, Esquire
Ropes & Gray LLP
525 University Avenue
Suite 300
Palo Alto, California 94310

Richard A. Inz
Sona De
Ropes & Gray LLP
1211 Avenue of the Americas
New York, New York 10036

Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
fineman@rlf.com

RLF1-3158583-1

# EXHIBIT A



ROPES & GRAY LLP

1211 AVENUE OF THE AMERICAS    NEW YORK, NY 10036 8704    212-596-9000    F 212 596 9090
BOSTON    NLW YORK    PALO ALTO    SAN FRANCISCO    TOKYO    WASHINGTON  DC    www.ropesgray.com

February 27, 2008

Sona De
212-596-9050
646-728-2650 fax
sona.de@ropesgray.com

**BY ELECTRONIC MAIL**

Robert E. Colletti, Esq.
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY  10151

Re:  *Purdue et al. v. Par Pharmaceutical et al.*

Dear Rob:

I write in response to the questions you have raised regarding the Napp and Purdue document production in your letters of February 5, 11, and 21.

Abandoned U.S. patent applications 09/239,092 and 09/507,806

Abandoned applications 09/239,092 and 09/507,806 are not relevant to any claim or defense asserted in this action.  While these are continuations-in-part of the application that issued as the '887 patent, neither of these abandoned applications appear on the face of the '887 patent-in-suit, nor do they have any relation to the issuance of the '887 patent itself.  These applications list different named inventors and had claims directed to avoiding non-linear pharmacokinetics of plasma tramadol concentrations and/or supersaturation of hepatic enzymes by tramadol, which is different than the dissolution rates of the '887 patent.  Moreover, both these applications were abandoned before there was any substantive prosecution by the applicants.  Application 09/239,092 was filed on January 27, 1999 and abandoned on December 22, 1999, but there was no substantive prosecution of that application during that time.  Application 09/507,806 was filed on February 22, 2000 and abandoned after November 14, 2002, however, it does not appear that the applicants responded to any office actions during its pendency.

In any event, we note that your February 21st letter acknowledges that the file histories for these two abandoned applications were included in the documents produced by Davidson, Davidson & Kappel.

ROPES & GRAY LLP

Robert E. Colletti, Esq.                    - 2 -                    February 27, 2008

Foreign patent prosecution histories

       Foreign counterpart patents and their respective prosecution file histories, other than the four foreign priority applications listed on the face of the '887 patent-in-suit (the "foreign priority applications"), are not relevant to any claim or defense in this lawsuit. Foreign counterpart patents involve different claims and are prosecuted under the laws of their respective tribunals. Accordingly, they have no bearing on the '887 patent-in-suit. To the extent that Par believes otherwise, foreign patents and their prosecution histories are publicly available documents that Par can obtain for itself, at comparable burden and expense to what it would cost Purdue and Napp to collect and process the documents.

       Because the '887 patent-in-suit cites four foreign priority applications, however, Purdue and Napp have produced non-privileged documents in its possession related to the prosecution of those four foreign priority applications.

Expert report of Professor Alexander Florence

       Professor Florence's expert report was submitted by Napp to a foreign tribunal in connection with foreign litigation that does not involve the '887 patent-in-suit. Accordingly, his expert report is not relevant to any claim or defense in this action, and unlikely to lead to any admissible evidence. Moreover, court filings are publicly available documents that Par can obtain itself.

       In any event, we note that your February 21st letter acknowledges that the expert report of Professor Florence requested in your February 5th letter was included in the documents produced by Davidson, Davidson & Kappel.

Grunenthal/Searle license

       The July 8, 1994 Grunenthal/Searle tramadol license agreement requested in your February 5th letter appears to be an agreement between two non-parties to this litigation. It is also unclear based on the amendment to that license produced by Napp whether the July 8, 1994 license even involved a controlled release formulation of tramadol, or how a license between two third-parties would be otherwise relevant to any claim or defense in this action. In any event, we have conducted a reasonable search of the documents we collected from Napp and have not been able to locate a copy of this license to date.

Foreign litigation

       Foreign litigation before a foreign tribunal is not relevant to any claim or defense in this action. Specifically, the foreign priority applications listed on the face of the '887 patent-in-suit were not at issue in either litigation cited in your February 5th letter (*Napp Pharmaceutical Group Ltd. v. Asta Medica Ltd. UK* or *Temmler Pharma GmbH v. Euro-Celtique*

ROPES & GRAY LLP

Robert E. Colletti, Esq.                    - 3 -                    February 27, 2008

*S.A.*).  Moreover, it is highly burdensome for Napp to collect, review, and produce voluminous litigation and opposition files from outside counsel across the world that have no bearing on the '887 patent-in-suit -- especially considering that court filings are publicly available documents that Par can obtain itself.  The non-privileged documents having any relevance to this litigation which Purdue and Napp have produced are voluminous as it is.  There is no sound basis in law to further inject documents from numerous unrelated foreign litigations into this case.

          To the extent that documents related to foreign litigations or oppositions were submitted to the U.S. Patent and Trademark Office and made of record during the prosecution of the '887 patent-in-suit, however, such documents have been produced from the files of Davidson, Davidson & Kappel.  This includes the supplemental expert report of John Tasker Fell, which was submitted by third-party Asta.

          Please call me if you would like to discuss any of this further.

                              Sincerely,

                              Sona De

SD:amp

# EXHIBIT B



FROMMER LAWRENCE & HAUG LLP

New York                        www.flhlaw.com
745 Fifth Avenue
New York, NY 10151              Washington, DC
Telephone: (212) 588-0800       Tokyo
Fax: (212) 588-0500

March 3, 2008

Robert E. Colletti
rcolletti@flhlaw.com


**VIA ELECTRONIC MAIL**
**AND FIRST-CLASS MAIL**

Sona De, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, New York 10036

Re:    *Purdue et al. v. Par Pharmaceutical et al.*
       FLH Reference No. 540572-521

Dear Sona:

This letter responds to your February 27, 2008 letter and addresses the foreign patent prosecution histories corresponding to U.S. Patent No. 6,254,887 ("the '887 patent"), the foreign litigation documents related to controlled-release tramadol, and the license agreement between Searle and Grunenthal.

Foreign Patent Prosecution Histories

With respect to the foreign patent prosecution histories, plaintiffs contend that foreign counterpart patents and their respective prosecution histories, which are not listed as priority documents on the face of the '887 patent, are irrelevant. We disagree.[1]

The prosecution histories of patents and applications corresponding to the '887 patent are relevant to this litigation and should be produced. The Federal Circuit has expressly acknowledged the relevance of evidence from foreign patent offices. *See Caterpillar Tractor Co. v. Berco, S.p.A.*, 714 F.2d 1110, 1116 (Fed. Cir. 1983) ("[W]hen such matters [instructions to foreign counsel and a representation to foreign patent offices] comprise relevant evidence they must be considered."); *see also Tanabe Seiyaku Co. v. U.S. Int'l Trade Comm'n*, 109 F.3d 726, 733 (Fed. Cir. 1997) ("representations made to foreign patent offices are relevant to determine whether a person skilled in the art would consider butanone or other ketones to be interchangeable with acetone in [the patentee's] claimed N-alkylation reaction"). Relying on

---

[1] To the extent your letter implies the file histories for the foreign priority document were produced, please identify them by production number.

Sona De, Esq.
March 3, 2008
Page 2

this case law Judge Farnan denied a motion to exclude a decision of the Austrian Patent Office and held: "Because the Court cannot conclude that this evidence is entirely irrelevant, and Pfizer has not advanced any grounds under *Rule 403* justifying its exclusion, the Court will admit the evidence and address Pfizer's concerns in terms of the weight to be afforded this evidence." *Pfizer Inc. v. Ranbaxy Labs., Ltd.*, No. 03-209, 2005 U.S. Dist. LEXIS 34901, at \*11 (D. Del. Dec. 22, 2005). Likewise, in *Liposome Co. v. Vestar, Inc.*, No. 92-332, 1994 U.S. Dist. LEXIS 19325, at \*40 (D. Del. Dec. 20, 1994), the Court held that statements made to a foreign Patent Office are relevant as evidence of how the patentees "had in fact read the words of the claim at a time when it was not looking at them as a necessary step in building a claim for relief that moves from complaint to recovery. [Patentee's] prior statements are also relevant as they are evidence of how one skilled in the art would interpret the words in the patent."

The foreign prosecution histories in this case are relevant to claims of noninfringement and invalidity in this case. Plaintiff's statements regarding controlled release tramadol to foreign patent offices will shed light on prior art and the patentees' understanding of the scope of the alleged invention prior to litigation.

<u>Foreign Litigation</u>

We disagree with plaintiffs' position that litigation of corresponding foreign patents directed to control release tramadol is irrelevant to a claim or defense in this action. Purdue's corresponding foreign patent EP 624 366, which is a foreign counterpart to the '887 patent, was revoked. The evidence and facts relied upon by the foreign patent court for the revocation of EP 624 366, and the positions taken by plaintiffs, must be produced. Moreover, the German and UK controlled release tramadol litigations focused on the same issues contested in this case. Plaintiffs cannot simply ignore litigation involving controlled release tramadol in foreign jurisdictions. "I do not read the Federal Circuit's cases as compelling courts of the United States to ignore an informed decision rendered abroad. . . If a foreign court renders a judgment on a question of fact with significance in each system of law, there is no reason not to take over that decision. . . ." *Vas-Cath, Inc. v. Mahurkar*, 745 F. Supp. 517, 526 (D. Ill. 1990), *rev'd* on other grounds, 935 F.2d 1555 (Fed. Cir. 1991). As such, the evidence submitted and the decisions of foreign courts concerning the foreign counterparts to the '887 patent, are relevant and properly discoverable in this case.

<u>Grunenthal/Searle License</u>

The July 8, 1994 New Tramadol License Agreement between Grunenthal and Searle is relevant to understanding the produced amended agreement in which Napp will be providing the "Substance (as defined in the Agreement)" to Searle. (*See* NAPP044052). Plaintiffs' reasoning that it is "unclear" whether the agreement involved a controlled-release formulation of tramadol is not a proper basis for withholding the requested documents. The original agreement is

Sona De, Esq.
March 3, 2008
Page 3

relevant to understanding the produced amendment, which is for a controlled-release tramadol formulation. Please produce the July 8, 1994 Agreement. If this agreement cannot be located please let us know and explain the search effort to locate the document.

Please produce the requested foreign counterpart patents and their prosecution histories and the foreign litigation documents by Friday, March 7. Otherwise, we will seek the assistance of the Court.

Sincerely,

Robert E. Colletti

Robert E. Colletti

Encl.
cc:    Robert J. Goldman, Esq.
       Mary W. Bourke, Esq.
       Richard D. Kirk, Esq.
       Frederick L. Cottrell, Esq.

# EXHIBIT C



ROPES & GRAY LLP

525 UNIVERSITY AVENUE    SUITE 300    PALO ALTO. CA 94301-1917    650-617-4000    F 650-617-4090

BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    TOKYO    WASHINGTON. DC    www ropesgray com

March 7, 2008

Thomas A. Wang
650-617-4075
thomas wang@ropesgray com

**VIA ELECTRONIC MAIL**

Robert E. Colletti, Esq.
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151

Re: *Purdue et al. v. Par Pharmaceutical et al.*

Dear Rob:

I write in response to your letter dated March 3, 2008 to Sona De, who is out of town, regarding Par's demand that Purdue and Napp collect and produce (1) publicly available files relating to over 30 additional foreign patent prosecution, foreign patent litigation, and oppositions, beyond the thousands of pages that Purdue, Napp, and its outside patent counsel have already produced; and (2) the license agreement between Grunenthal and Searle, which we previously told you that we cannot locate.

Documents related to foreign patent proceedings

Plaintiffs Purdue and Napp and third-party Mundipharma have already produced thousands of documents related to the prosecution of the U.S. patent in suit, its parent, and continuations, as well as the foreign patent applications to which the U.S. applications claim priority.[1]  To the extent that such documents exist, are in Purdue or Napp's possession, and are not privileged, Par has them.

In addition, Purdue and Napp's outside patent counsel, Davidson, Davidson, and Kappel ("DDK"), has also produced over 13,000 pages of documents, approximately 6,000 pages of which relate to foreign patent proceedings.  For example, documents from foreign proceedings were produced in the following production ranges:

DDK 3769-7529
DDK 9559-10718
DDK 11136-11996

---

[1]    These applications are GB 9324045, GB 9404544, GB 9404928, and DE 4315525.

CASE 1:07-cv-00255-JJF    Document 80-2    Filed 04/08/2008    Page 11 of 35

ROPES & GRAY LLP

Robert E. Colletti, Esq.                    - 2 -                         March 7, 2008

DDK 12590-13628

        In addition to the foreign applications that form the basis of the U.S. patent in suit, there have been at least four foreign litigations and foreign opposition proceedings involving at least seven opposers relating to other Purdue/Napp/Mundipharma applications relating to controlled-release tramadol. During the prosecution of the U.S. patent in suit, DDK disclosed these proceedings to the U.S. Patent and Trademark Office and provided evidence submitted in those proceedings to the PTO. These documents include art references, expert reports and affidavits submitted by Dr. Momberger, Prof. Florence, Ms. Malkowska, Dr. Fell, Dr. Posch, Dr. Beszedes, Dr. Budd, Mr. Oshlack, Dr. Roth, Dr. Winkler, and Dr. Smith, and other papers submitted by Napp, Asta Medica Group, Lannacher Heilmittel, Hexal, Arzneimittelwerk Dresden, Krewel Meuselbach, and Nycomed Danmark. All of these have been produced to Par.

        What Par is requesting, however, goes beyond anything that was involved in the prosecution of the U.S. patent in suit or its foreign priority documents. As identified at the DDK deposition on March 5, there have been over 30 foreign prosecutions of Purdue/Napp/Mundipharma applications relating to controlled-release tramadol (*see, e.g.*, DDK 13919-922). These papers are publicly available. The burden of obtaining those papers is at least equal for Par and for Purdue and Napp. Indeed, the burden of Purdue and Napp collecting and producing those papers from the files of its foreign patent counsel is greater, because Purdue and Napp would have to sort privileged communications from non-privileged public documents.

        In Purdue's and Napp's view, there is no sound reason for Par to impose this burden on Purdue, Napp, or Mundipharma.

        The cases that you cite in your March 3, 2008 letter are inapposite. They stand for the unremarkable proposition that documents from foreign patent proceedings may be relevant in certain circumstances. They do not address whether a party must produce such documents when they are voluminous and equally available to the other party. *See* Rule 26(b)(2), Fed. R. Civ. P.

        To the extent that Par wishes to collect documents from the remaining 30 foreign proceedings, it is free to do so. After obtaining those files, if Par has a more focused request for additional documents from any of those proceedings, Purdue and Napp will consider such a request.

Grunenthal/Searle license

        As stated in Sona De's letter of February 27, 2008, we have been unable to locate a copy of the July 8, 1994 Grunenthal/Searle license that you requested. We have run searches on the documents and have found only the Amendment to the agreement that has already been

ROPES & GRAY LLP

Robert E. Colletti, Esq.                    - 3 -                         March 7, 2008


produced; however, we note that we have not completed the coding of all of our documents for
electronic searching.

Regards,

Thomas A. Wang

TAW:amp

# EXHIBIT D

# REDACTED IN ITS ENTIRETY

# EXHIBIT E

US006254887B1

(12) **United States Patent**
Miller et al.

(10) Patent No.:     **US 6,254,887 B1**
(45) Date of Patent:      *Jul. 3, 2001

(54) CONTROLLED RELEASE TRAMADOL

(75) Inventors: Ronald Brown Miller, Basel (CH);
Stewart Thomas Leslie, Cambridge
(GB); Sandra Therese Antoinette
Malkowska, Cambridgeshire (GB);
Kevin John Smith, Cambridge (GB);
Walter Wimmer, Limburg (DE); Horst
Winkler, Linter (DE); Udo Hahn,
Nentershausen (DE); Derek Allan
Prater, Cambridge (GB)

(73) Assignee: Euro-Celtique S.A., Luxembourg (LU)

( * ) Notice: This patent issued on a continued prosecution application filed under 37 CFR 1.53(d), and is subject to the twenty year patent term provisions of 35 U.S.C. 154(a)(2).

Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: 08/677,798

(22) Filed: Jul. 10, 1996

**Related U.S. Application Data**

(62) Division of application No. 08/241,129, filed on May 10, 1994, now Pat. No. 5,591,452.

(30) Foreign Application Priority Data

May 10, 1993 (DE) ................................. 43 15 525
Nov. 23, 1993 (GB) ................................. 9324045
Mar. 9, 1994 (GB) ................................. 9404544
Mar. 14, 1994 (GB) ................................. 9404928

(51) Int. Cl.[7] ................................. A61K 9/22
(52) U.S. Cl. ........... 424/468; 424/470; 424/476;
424/480; 424/488; 424/494; 424/495; 424/498;
424/499; 424/502; 514/646
(58) Field of Search ..................... 424/468, 470,
424/476, 480, 488, 494, 495, 498, 499,
502; 514/646

(56) References Cited

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,738,303 | 3/1956 | Blythe et al. | 167/82 |
| 3,065,143 | 11/1962 | Christenson et al. | 167/82 |
| 3,652,589 | 3/1972 | Flick et al. | 260/326.5 M |
| 3,830,934 | 8/1974 | Flick et al. | 424/330 |
| 3,845,770 | 11/1974 | Theeuwes et al. | 128/260 |
| 3,950,508 | 4/1976 | Mony et al. | 424/19 |
| 3,965,256 | 6/1976 | Leslie | 424/22 |
| 3,974,157 | 8/1976 | Shetty et al. | 260/247.2 B |
| 4,013,784 | 3/1977 | Speiser | 424/19 |
| 4,063,064 | 12/1977 | Saunders et al. | 219/121 |
| 4,076,798 | 2/1978 | Casey et al. | 424/22 |
| 4,088,864 | 5/1978 | Theeuwes et al. | 219/121 |
| 4,132,753 | 1/1979 | Blichare et al. | 264/25 |
| 4,259,314 | 3/1981 | Lowey | 424/19 |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 2131350 | 3/1995 | (CA) | | A61K/31/135 |
| 3602370 | 8/1987 | (DE) | | A61K/45/06 |
| 3623193 | 1/1988 | (DE) | | A61K/31/205 |
| 4329794 | 3/1995 | (DE) | | A61K/31/135 |
| 4329794 A1 | 3/1995 | (DE) | | A61K/31/135 |
| 0032004 | 12/1980 | (EP) | | A61K/9/22 |
| 0043254 | 1/1982 | (EP) | | A61K/9/26 |
| 0097523 | 8/1983 | (EP) | | A61K/9/26 |
| 0043254 | 5/1984 | (EP) | | A61K/9/26 |
| 0108218 | 5/1984 | (EP) | | A61K/9/22 |
| 0108218 A2 | 5/1984 | (EP) | | A61K/9/22 |
| 0147780 | 12/1984 | (EP) | | A61K/9/32 |
| 0147780 | 7/1985 | (EP) | | A61K/9/32 |
| 0152379 | 8/1985 | (EP) | | A61K/9/50 |

(List continued on next page.)

OTHER PUBLICATIONS

Martindale, The Extra Pharmacopeia, 28th Ed., 1982, 6263–c, Tramadol hydrochloride, pp 1029–1030.

Anderson, H.O. & Christensen, H., *In vitro and in vivo investigations of a new timed–release dosage form of propoxyphene hydrochloride,* Dansk tidsskrift for farmaci, vol. 43, 1969, pp 117–126.

Schmidhammer, Helmut, *Synthesis and Biological Evaluation of 14–Alkoxymorphinans,* Helvetica Chimica Acta, vol 72, 1989, pp 1233–1239.

Schmidhammer, Helmut, *Synthesis, Structure Elucidation, and Pharmacological Evaluation of 5–Methyl–oxymorphone,* Hevetica Chimica Acta, vol 71, (1988) pp 1801–1804.

Schmidhammer, Helmut, *Synthesis and Biological Evaluation of 14–Alkoxymorphinans,* J. Med Chem, (1990) vol 33. No. 4, pp1200–1206.

ROTE LISTE® Service GmbH, Rote Liste 1998, Section 05.

Stanislaw Janicki and Zdzisiaw Jedras, *Slow–Release Microballs: Method of Preparation,* Acta. Pharm Technol 33(3) (1987), pp. 154–155.

B. Elsing and G. Blaschke, *Achiral and chiral high–performance liquid chromatographic determination of tramadol and its major metabolites in urine after oral administration of racemic tramadol,* Journal of Chromatography, 612 (1993), pp. 223–230.

C.H.W. Koks, A.P.E. Vielvoye–Kerkmeer, and J.H. Beijnen, *Tramadol (Tramal),* Pharm. Weekbl 1993; 128(4): 1298–1300.

W. Lintz and H. Uragg, *Quantitative Determination of Tramadol in Human Serum by Gas Chromatography—Mass Spectrometry,* Journal of Chromatography, 341 (1985), pp 65–79.

(List continued on next page.)

*Primary Examiner*—Samuel Barts
(74) *Attorney, Agent, or Firm*—Davidson, Davidson & Kappel, LLC

(57)        ABSTRACT

A controlled release preparation for oral administration contains tramadol, or a pharmaceutically acceptable salt thereof, as active ingredient.

**33 Claims, 1 Drawing Sheet**

# US 6,254,887 B1
Page 2

## U S PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,343,789 | 8/1982 | Kawata et al | 424/78 |
| 4,366,172 | 12/1982 | Lednicer | 424/330 |
| 4,380,534 | 4/1983 | Fukui et al | 424/38 |
| 4,389,393 | 6/1983 | Schor et al | 424/19 |
| 4,421,736 | 12/1983 | Walters | 424/19 |
| 4,483,847 | 11/1984 | Augart | 424/22 |
| 4,533,562 | 8/1985 | Ikegani et al | 427/3 |
| 4,613,619 | 9/1986 | Sleigh et al | 514/546 |
| 4,708,874 | 11/1987 | DeHaan et al | 424/470 |
| 4,797,410 | 1/1989 | El-Fakahany | 514/356 |
| 4,801,458 | 1/1989 | Hiduka et al | 424/469 |
| 4,801,460 | 1/1989 | Goertz et al | 424/465 |
| 4,828,836 | 5/1989 | Elger et al | 424/19 |
| 4,834,984 | * 5/1989 | Goldie et al | 424/488 |
| 4,834,985 | 5/1989 | Elger et al | 424/488 |
| 4,844,907 | 7/1989 | Elger et al | 424/465 |
| 4,844,909 | 7/1989 | Goldie et al | 424/480 |
| 4,861,598 | 8/1989 | Oshlack | 424/469 |
| 4,880,830 | 11/1989 | Rhodes | 424/470 |
| 4,894,234 | 1/1990 | Sharma et al | 424/440 |
| 4,917,899 | 4/1990 | Geoghegan et al | 424/461 |
| 4,925,675 | 5/1990 | Giannini et al | 424/469 |
| 4,935,246 | 6/1990 | Ahrens | 424/490 |
| 4,987,136 | 1/1991 | Kreek et al | 514/282 |
| 4,990,341 | 2/1991 | Goldie et al | 424/484 |
| 5,007,790 | 4/1991 | Shell | 424/451 |
| 5,023,089 | 6/1991 | Sakumoto et al | 424/502 |
| 5,026,560 | 6/1991 | Makino et al | 424/494 |
| 5,030,400 | 7/1991 | Danielson et al | 264/101 |
| 5,071,646 | 12/1991 | Malkowaka et al | 424/497 |
| 5,073,379 | 12/1991 | Klimesch et al | 424/467 |
| 5,126,145 | 6/1992 | Evenstad et al | 424/465 |
| 5,132,142 | 7/1992 | Jones et al | 427/196 |
| 5,133,974 | 7/1992 | Paradissis et al | 424/480 |
| 5,162,117 | 11/1992 | Stupak et al | 424/475 |
| 5,167,964 | 12/1992 | Muhammad et al | 424/482 |
| 5,169,645 | 12/1992 | Shukla et al | 424/499 |
| 5,178,868 | 1/1993 | Mamqvist-Granlund et al | 424/490 |
| 5,196,203 | 3/1993 | Boehm | 424/469 |
| 5,202,128 | 4/1993 | Morella et al | 424/469 |
| 5,204,119 | 4/1993 | Shiobara et al | 424/489 |
| 5,266,331 | 11/1993 | Oshlack et al | 424/468 |
| 5,271,934 | 12/1993 | Goldberg et al | 424/401 |
| 5,273,760 | 12/1993 | Oshlack et al | 424/480 |
| 5,286,493 | 2/1994 | Oshlack et al | 424/468 |
| 5,292,461 | 3/1994 | Juch et al | 264/37 |
| 5,300,300 | 4/1994 | Egidio et al | 424/456 |
| 5,321,012 | 6/1994 | Mayer et al | 514/25 |
| 5,330,766 | 7/1994 | Morella et al | 424/490 |
| 5,395,626 | 3/1995 | Kotwal et al | 424/472 |
| 5,403,593 | 4/1995 | Royce | 424/489 |
| 5,453,283 | 9/1995 | Münch et al | 424/489 |
| 5,468,744 | * 11/1995 | Raffa et al | 514/282 |
| 5,472,710 | 12/1995 | Klekkers-Bethke et al | 424/468 |
| 5,521,178 | 5/1996 | Nickel et al | 514/23.2 |
| 5,549,912 | 8/1996 | Oshlack | 424/468 |

## FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 0214735 | 7/1986 | (EP) | A61K/9/22 |
| 0189861 | 8/1986 | (EP) | A61K/47/00 |
| 0248548 | 5/1987 | (EP) | A61K/9/22 |
| 0249347 | 5/1987 | (EP) | A61K/31/485 |
| 0251459 | 5/1987 | (EP) | A61K/9/22 |
| 0253104 | 6/1987 | (EP) | A61K/9/00 |
| 0254978 | 2/1988 | (EP) | A61K/9/22 |
| 0256127 | 2/1988 | (EP) | C12N/9/00 |
| 0256127 B1 | 2/1988 | (EP) | C12N/9/00 |
| 0267702 | 5/1988 | (EP) | A61K/9/14 |
| 0271193 | 6/1988 | (EP) | A61K/31/485 |
| 0271193 A2 | 6/1988 | (EP) | A61K/31/485 |
| 0300897 | 7/1988 | (EP) | A61K/9/22 |
| 0295212 | 12/1988 | (EP) | A61K/47/00 |
| 0327295 | 8/1989 | (EP) | A61K/9/52 |
| 0338383 | 10/1989 | (EP) | A61K/9/54 |
| 0068450 | 1/1990 | (EP) | A61K/9/20 |
| 0351580 | 1/1990 | (EP) | A61K/9/22 |
| 0377518 | 1/1990 | (EP) | A61K/9/52 |
| 0361680 | 4/1990 | (EP) | A61K/9/46 |
| 0361910 | 4/1990 | (EP) | A61K/9/16 |
| 0368247 | 5/1990 | (EP) | A61K/9/26 |
| 0377517 | 7/1990 | (EP) | A61K/31/52 |
| 0377518 | 7/1990 | (EP) | |
| 0298355 | 11/1990 | (EP) | A61K/9/50 |
| 0415693 | 3/1991 | (EP) | A61K/37/02 |
| 0430287 B1 | 6/1991 | (EP) | A61K/9/54 |
| 0463833 | 6/1991 | (EP) | A61K/9/20 |
| 0241615 | 9/1991 | (EP) | A61K/9/22 |
| 0452145 | 10/1991 | (EP) | A61K/9/14 |
| 0531611 | 4/1992 | (EP) | A61K/9/02 |
| 0535841 | 9/1992 | (EP) | A61K/31/485 |
| 0526862 | 2/1993 | (EP) | A61K/9/20 |
| 0533297 | 3/1993 | (EP) | A61K/9/16 |
| 0534628 | 3/1993 | (EP) | A61K/31/485 |
| 0546676 | 6/1993 | (EP) | A61K/9/16 |
| 0595311 | 5/1994 | (EP) | A61K/31/44 |
| 0361910 | 6/1994 | (EP) | A61K/9/16 |
| 0636370 | 2/1995 | (EP) | A61K/31/485 |
| 0642788 | 3/1995 | (EP) | A61K/31/135 |
| 0609961 | 8/1995 | (EP) | A61K/31/485 |
| 0205282 | 9/1995 | (EP) | A61K/9/20 |
| 0624366 | 5/1996 | (EP) | A61K/31/135 |
| 2642420 | 3/1990 | (FR) | C07C/55/10 |
| 997399 | 4/1964 | (GB) | |
| 1405088 | 6/1971 | (GB) | A61K/9/26 |
| 1513166 | 6/1978 | (GB) | B29B/1/02 |
| 2111386 | 12/1982 | (GB) | A61K/9/16 |
| 2117239 | 3/1983 | (GB) | A61K/9/20 |
| 2053681 | 4/1984 | (GB) | A61K/9/22 |
| 2196848 | 5/1988 | (GB) | A61K/9/22 |
| 2246514 | 2/1992 | (GB) | A61K/9/16 |
| 2287880 | 10/1995 | (GB) | A61K/9/14 |
| 54-92631 | 7/1979 | (JP) | |
| 4217925 | 8/1992 | (JP) | |
| 2568202 | 12/1996 | (JP) | A61K/31/485 |
| WO9119484 | 12/1991 | (WO) | A61K/9/16 |
| WO9119485 | 12/1991 | (WO) | A61K/9/16 |
| WO9201446 | 2/1992 | (WO) | A61K/9/50 |
| WO9202209 | 2/1992 | (WO) | A61K/9/22 |
| WO9205774 | 4/1992 | (WO) | A61K/9/18 |
| WO9206679 | 4/1992 | (WO) | A61K/9/16 |
| WO9300076 | 1/1993 | (WO) | A61K/9/51 |
| WO9304675 | 3/1993 | (WO) | A61K/31/16 |
| WO9307859 | 4/1993 | (WO) | A61K/9/16 |
| WO9307861 | 4/1993 | (WO) | A61K/9/50 |
| WO9317667 | 9/1993 | (WO) | A61K/9/16 |
| WO9318753 | 9/1993 | (WO) | A61K/9/16 |
| WO9324110 | 12/1993 | (WO) | A61K/9/20 |
| WO9403160 | 2/1994 | (WO) | A61K/9/32 |
| WO9403161 | 2/1994 | (WO) | A61K/9/52 |
| WO9405262 | 3/1994 | (WO) | A61K/9/16 |
| WO9422431 | 10/1994 | (WO) | A61K/9/20 |
| WO9423700 | 10/1994 | (WO) | A61K/9/16 |
| WO9514460 | 6/1995 | (WO) | A61K/9/14 |

## OTHER PUBLICATIONS

Pharm Res 1992; Supp 9:308, *Tramadol*, PPDM's 8207 and 8206

**US 6,254,887 B1**
Page 3

W. Lintz, H. Barth, G. Osterloh, and E. Schmid–Bothelt, *Bioavailability of Enteral Tramadol Formulations 1st Communication Capsules*, Arzeimittel–Forschung, Drug Res 36 (II) Nr 8 (1986), pp. 1278–1283.

Jean–Marie Besson and Michael D. Vickers, *Tramadol Analgesia Synergy in Research and Therapy*, Drugs 47 (Suppl. 1):1–2, 1994, Adis International Limited.

Pierre Dayer, Laurence Collart and Jules Desmeules, *The Pharmacology of Tramadol*, Drugs 47 (Suppl. 1):3–7, 1994, Adis International Limited.

Abraham Sunshine, *New Clinical Experience with Tramadol*, Drugs 47 (Supp. 1) 8–18, 1994, Adis International Limited.

Klaus A. Lehmann, *Tramadol for the Management of Acute Pain*, Drugs 47 (Supp. 1):19–32. 1994, Adis International Limited.

Keith Budd, *Chronic Pain—Challenge and Response*, Drugs 47 (Suppl. 1):39–43, 1994, Adis International Limited.

Jordi Cami, Xavier Lamas and Magi Farre, *Acute Effects of Tramadol in Methadone–Maintained Volunteers*, Drugs 47 (Supp. 1):39–43, 1994, Adis International Limited.

C. Rhoda Lee, Donna Mc Tavish and Eugene M. Surkin, "Tramadol, A Preliminary Review of its Pharmacodynamic Properties, and Therapeutic Potential in Acute and Chronic Pain States", Drugs 46(2):313–340, 1993, Adis International Limited.

Valerie Kayser, Jean–Marie Besson, and Gisele Gilbaud, *Evidence for a noradrenergic component in the antinociceptive effect of the analgesic agent tramadol in an animal model of clinical pain, the arthritic rat*, European Journal of Pharmacology, 224 (1992), pp. 83–88.

Kenzie L. Preston, Donald R. Jasinksi and Margaret Testa, *Abuse potential and pharmacological comparison of tramadol and morphine*, Drug and Alcohol Dependence, 27 (1991), pp. 7–17.

Valerie Kayser, Jean–Marie Besson and Gisele Guilbaud, *Effects of the analgesic agent tramadol in normal and arthritic rats: comparison with the effects of different opioids, including and cross–tolerance to morphine*, European Journal of Pharmacology, 195 (1991) 37–45.

T. Murano, H. Yamamoto, N. Endo, Y. Kudo, N. Okada, Y. Masuda, and I. Yano, *Studies of Dependence on Tramadol in Rats*, Arzneimittel–Forschung, Drug Res 28(I) Heft 1a (1978).

T. Yanagita, *Drug Dependence Potential of 1–(m–Methoxyphenil)–2–(dimethylaminomethyl)–cyclohesan–1–ol Hydrochloride (Tramadol) Tested in Monkeys*, Arzneimittel–Forschung Drug Res 28(I), Heft 1a (1978), pp. 158–163.

Abraham Sunshine, MD, Nancy Z. Olson, MPS, Itic Zighelboim, MD, Ana DeCastro, RN, and Frederick L. Minn, MD, PhD, *Analgesic oral efficacy of tramadol hydrochloride in postoperative pain*, Clin. Pharmacol. Ter. (Jun. 1992), pp. 740–146.

Translation of Japanese Patent Publication Nr. 43 (1968) 20006, Detailed Description of the Invention.

M. Ahmend and R P. Enever, *Formulation and Evaluation of Sustained Release Paracetamol Tablets*, Journal of Clinical and Hospital Pharmacy (1981) 6, pp. 27–38.

M D. Vickers, D. O'Flaherty, S M. Szekely, M. Read and J. Yoshizumi, *Tramadol: pain relief by an opioid without depression of respiration*, Anaesthesia, 1992, vol. 47, pp. 291–296.

G M. Hanna, C A. Lau–Cam and W.M. Plank, *Direct determination of the enantiomeric purity of tramadol hydrochloride by proton nuclear resonance (1H NMR spectroscopy with chiral lanthanide shift reagent*, Pharmazie 44 (1989). II 5, pp. 321–325.

S.J. Carter and R. Woodford, "Long–Acting Oral Medicaments", Pharmacy Digest (1961) pp. 183–189.

Remington's Pharmaceutical Sciences, 1980, p. 1598.

Thomsen, L. Juul, et al., *Prolonged Release Matrix Pellets Prepared by Melt Pelletization II. Hydrophobic Substances as Meltable Binders*, Drug, Development and Industrial Pharmacy, vol. 20, No. 7, (1984), pp. 1179–1197.

Von K. Fliek, E. Frankus and E. Friderichs—Tramadol, 107–113, *Untersuchungen zur chemischen Strukhur und analgeslachen Wirkung von phenylsubstituterien Aminomethylgycolohexanglen*, Arzneimittel–Forschung. Drug Res. 28 (1), Heft 1a, and English translation.

Kuschinsky et al., *Kurges Lehrbuch der Pharmakologie und Toxikologie*, Georg Theimo Verlag Stuttgart, New York 1987, p270–273.

Von E. Frankus, II. Friderichs, S M. Kin und G. Osterioh, *Über die Isomerentronnung, Strukuraufklarung und pharmakologische Charaklerisierung von 1–(m–Methoxyphenyl)–2–(dimethylaminomethyl)–cyclohexand–1–ol*, Arzneim–Forsch, Drug Res. (I), Heft 1a (1978), 144–121 and English translation.

Rote Liste 1992, Entry No. 05020.

Derwent WPI C92–138727 Abstract JP 04/217 925 of 07 08.92.

Herbert P. Fledler: Loxicon der Hilfastoffe, 34d Ed., 1989, p272–273.

Sueker et al., (Eds.), Pharmazeutische Technologie, Stuttgart 1979, p497–498.

Von W. Vogel, H. Burchardi, K. Sihler und L. Valic, *Über die Wirkung von Tramadol auf Almung und Kreislauf*, Arzneimittel–Forschung, Drug. Res. 28(I), Heft 1a (1978), pp. 183–186 und English translation.

Von M. Lintz, S. Erlacin, E. Frankus and H. Uragg, *Metabolismus von Tramadol bol Mensch and Tier*, Arzneimittel–Forschung, Drug Res. 31 (II), Nr. 11 (1981), pp. 1932–1943 and English translation.

Von F. Lagler, F. Helm, V. Etzol und H. Kiel, *Toxikologisache Untersuchungen mit Tramadol einem neuen Analgelikum*, Arzneimittel–Forschung, Drug Res. 28(I), Heft 1a (1978), pp. 164–172 and English translation.

Von G. Osterloh, E. Friderichs*, F. Felgenheuer*, W.A. Gunzler, Z. Henmi**, T. Kitano**, M. Nakamura**, H. Hayashi** und I. Ishii**, *Allgemeine pharmakologische Unternuchungen mit Tramadol einem stark wirkenden Analgenikum*, Arzneimittel–Forschung, Drug Res. 28(I). Heft 1a (1978) pp. 135–151 and English translation.

Von E. Friderichs, F. Felgenhauer, P. Jongschaap und G Osterloh, *Pharmakologische Untersuchungen zur Analgesic, Abhangigheim–und Toleranzentwicklung–von Tramadol. einem stark wirkenden Analgetikum*, Arzneimittel–Forschung Drug Res. 28(I), Heft 1a, pp 122–134 and English translation.

L. Collart, C. Luthy, C. Favario–Constantin, P. Dayer, *Dualite de l'effel analgesique du tramadol chez l'homme*, Schwiz Med Wochenscbr 1993: 123: pp 2241–2243 and English translation.

E. Beubler, *Medikamenlose Schmerzhergnie Krieterien, Möglichkeiten, Risken*, Therapiewoche Österreich 7,2 (1992), pp 90–96 and English translation.

US 6,254,887 B1

Page 4

Kaiko, et al., *A Single-dose Study of the Effect of Food Ingestion and Timing of Dose Administration on the Pharmacokinetic Profile of 30mg* Sustained–release Morphine Sulfate Tablets, Current Therapeutic Research, pp. 869–878, vol. 47, No. 5, May 1990.

Kaiko, et al., *Controlled–release Morphine Bioavailability (MS Contin™ Tablets) in the Presence and Absence of Food*, The Hospice Journal, pp. 17–30, vol. 6(4) 1990.

Gourlay, et al., *The Reproducibility of Bioavailability of Oral Morphine from Solution under Fed and Fasted Conditions*, Journal of Pain and Symptom Management, vol. 6, No 7, Oct. 1991, pp. 431–436.

Gourlay et al., *Influence of a High–fat Meal on the Absorption of Morphine from Oral Solutions*, Clin. Pharmacol Ther., Oct. 1989, pp. 403–468.

Physicians Desk Reference 1994, 48th Edition, pp. 1821–1824.

Advertisement: Roxanol SR., 1988 Roxane Labs, Inc.

R. Kaiko and T. Hunt, *Comparison of the Pharmacokineric Profiles of Two Oral Controlled–Release Morphine Formulations in Healthy Young Adults*, Clin. Thera., vol. 13, No 4, 1991, pp. 484–488.

Thomsen, L. Juul, *Prolonged Release Matrix Pellets Prepared by Melt Pelletization, Part IV. Drug Content, Drug Particle Size, and Binder Composition*, Pharmaceutical Technology Europa (Oct. 1994), pp. 19–22.

McTaggart, C.M., et al., *The Evaluation of Formulation and Processing Conditions of a Melt Granulation Process*, Int. J. Pharm., vol. 19, No. 2, issued 198, pp. 139–148.

El–Shanawany, S., *Sustained Release of Nitrofurantoin Front Inert Wax Matrixes*, J. Controlled Release, vol. 26, No. 1, issued 1993, pp. 11–19.

S. Bloomfield, et al., *Analgesic Efficacy and Potency of Two Oral Controlled–Release Morphine Preparations*, Clin. Pharmacol. Ther., vol. 53, No. 4, 1993, pp. 469–478.

Advertisement MS Contin™ 1986, 1987 The Purdue Frederick Company.

P. Flanders, et al., *The Control of Drug Releases From Conventional Melt Granulation Matrices*, Drug Development and Industrial Pharmacy, vol. 13, No. 6, (1987), pp. 1001–1022.

T. Schaefer, et al., *Melt granulation in a laboratory scale high shear mixer*, Drug Development and Industrial Pharmacy, vol. 16, No. 8, (1990), pp. 1249–1277.

Thompson, L. Junl et al., Schaefer, T., et al., *Prolonged Release Matrix Pellets Prepared by Melt Pelletization, I. Process Variables*, Drug Development and Industrial Pharmacy, vol. 19, No. 15, pp. 1867–1887.

Thomsen, L. Juul, et al., *Prolonged Release Matrix Pellets Prepared by Melt Pelletization, Part IV, Drug Content, Drug Particle Size, and Binder Composition*, Pharmaceutical Technology Europe, (Oct. 1994), pp. 19–24.

Thomsen, L. Juul, *Utilizing melt pelletization technique for the preparation of prolonged release products, Pelletization*, (material elaborated by Assistant Prof. Lars Juul Thomsen, Dept. of Pharmaceutics, Royal Danish School of Pharmacy for the DIE course "Pelletization Technology", Nov 1992, Sections I to VI

SK Baveja et al., Int J Pharmaceutics, 41, (1988) p55–62. Formulating for Controlled Release with METHOCEL® Premium Cellulose Ethers The Dow Chemical Company, 1989

M S Vasquez et al., Drug Dev & Ind Pharmacy, 18 (11 & 12), p1355–1378 (1992).

L W S Cheong et al, Pharm. Res 9(11) p1510–151 (1992)

Pharmazeutische Stoffiste 6th Ed., 1985 p. 196.

Rote Liste 1993 Nos. 05001 & 05008.

Derwent Abstract 92:64751 1985.

Haltbarkeim–Herstellungsdalen deutscher Arzneimittel p486 1985.

Goodman and Gilmans, 8th Ed., 1990:p497.

Hunt, et al, Clin Ther vol. 13, No. 4, 1991, pp. 482–488.

Lee et al. Drugs 46(2), 1993, pp. 313–340.

The Merck Index 11th Ed., 1989.

Pharmazeutische Stoffiate 10, Auflage, p. 193, 11/94

Rote Liste 1992 Entry 05007.

PIL (Product Information Leaflet) about MST CONTINUS® tablets

Graph of dissolution rates claimed in the patent EP 0 624 366.

The Physician's Desk Reference, 1994. Monograph on MS CONTIN® (MST CONTINUS®) tablets.

DA Aldermann, Int. J. Pharm. Tech. and Prod. Mfr, 5(3) p1–9, 1984.

HE Huber et al., J. Pharm. Sci. 55 (9) Sep. 1966, p974–976.

Lin SY et al., Current Therapeutic Research 52 (3), p. 486–492, Sep., 1992

Handbook of Pharmaceutical Excipients, p138–140, 1986.

Aqualon Technical Information Bulletin VC–585, 1991

P Colombo, Advanced Drug Delivery Reviews, 11 (1993) p37–57.

KV Ranga Rao et al., Int. J. Pharmaceutics, 48 (1988) p1–13.

JE Hogan, Drug Dev. & Ind. Pharmacy, 15 (6 & 7), p975–999 (1989)

JL Ford et al., Int. J. Pharmaceutics, 24 (1985) p327–338

PB Daly et al. Int. J. Pharmaceutics, 18 (1984) p201–205

H. Lapidus et al., J. Pharm Sci., 55(8), Aug. 1966, p840–843.

H. Lapidus et al., J. Pharm Sci., 57(8), Aug. 1968, p1292–1301.

Abstract of JP 54/092631, published Jul. 23, 1979.

J M. Aiache and J Hirtz, *Biopharmaceutics—Absolute Bioavailability of Tramal Suppositories*, Third European Congress of Biopharmaceutics and Pharmacokinetics Proceedings—vol. 1, p. 311, 1992

Clinical Pharm & Ther vol. 53, No. 2, *American Society for Clinical Pharmacology and Therapeutics*, P111–67, P111–68 and P111–69, 1993.

* cited by examiner



FIG.1



Mean plasma profile (n=5)

FIG.2

— □ — OD Tablet 200mg    — △ — Tramal drops 100mg

US 6,254,887 B1

| 1 | 2 |

# CONTROLLED RELEASE TRAMADOL

This is a divisional of application Ser. No. 08/241,129, filed May 10, 1994 (now U.S. Pat. No. 5,591,452)

The present invention relates to a controlled release preparation for oral administration, to processes for its preparation and to its medical use. In particular, (lie invention relates to a controlled release preparation comprising tramadol or a pharmaceutically acceptable salt thereof.

Tramadol, which has the chemical name (+)-trans-2-[(dimethylamino)methyl]-1-(3-methoxyphenyl)cyclohexanol, is an orally active opioid analgesic. Conventional release preparations in the form of capsules, drops and suppositories containing tramadol, or more particularly its hydrochloride salt, have been commercially available for many years for use in the treatment of moderate to severe pain; Such preparations, however, do not provide a controlled release of the tramadol. Moreover, despite tramadol's long-standing use. controlled release preparations for oral administration containing tramadol as active ingredient have not even previously been described in the literature.

It is an object of the present invention to provide an oral controlled release tramadol preparation suitable for at least twelve-hourly (e g. up to twenty-four hourly) administration for the treatment of pain

The present invention therefore provides a controlled release preparation comprising tramadol or a pharmaceutically acceptable salt thereof for oral administration

Suitable pharmaceutically acceptable salts of tramadol for use according to the present invention are those conventionally known in the art such as pharmaceutically acceptable acid addition salts The hydrochloride salt is particularly preferred.

A controlled release preparation according to the present invention is one that achieves slow release of a drug over an extended period of time, thereby extending the duration of drug action over that achieved by conventional delivery Preferably such a preparation maintains a drug concentration in the blood within the therapeutic range for 12 hours or more.

The present inventors have found that in order to allow for controlled release tramadol over at least a twelve hour period following oral administration, the in vitro release rate preferably corresponds to the following % rate of tramadol released:

TABLE 1

| TIME (H) | % RELEASED |
|----------|------------|
| 1 | 0–50 |
| 2 | 0–75 |
| 4 | 3–95 |
| 8 | 10–100 |
| 12 | 20–100 |
| 16 | 30–100 |
| 24 | 50–100 |
| 36 | >80 |

Another preferred preparation especially suited for twice-a-day dosing has an in vitro release rate corresponding to the following % rate of tramadol released:

TABLE 2

| TIME (H) | % RELEASED |
|----------|------------|
| 1 | 20–50 |
| 2 | 40–75 |

TABLE 2-continued

| TIME (H) | % RELEASED |
|----------|------------|
| 4 | 60–95 |
| 8 | 80–100 |
| 12 | 90–100 |

Yet another preferred preparation particularly suited for once-a-day dosing has an in-vitro release rate corresponding to the following % rate of tramadol released:

TABLE 3

| TIME (H) | % RELEASED |
|----------|------------|
| 1 | 0–50 |
| 2 | 0–75 |
| 4 | 10–95 |
| 8 | 35–100 |
| 12 | 55–100 |
| 16 | 70–100 |
| 24 | >90 |

A still further preferred preparation in accordance with the invention also particularly suited for once-a-day dosing has an in vitro release rate corresponding to the following % rate if tramadol released

TABLE 4

| TIME (H) | % RELEASED |
|----------|------------|
| 1 | 0–30 |
| 2 | 0–40 |
| 4 | 3–55 |
| 8 | 10–65 |
| 12 | 20–75 |
| 16 | 30–88 |
| 24 | 50–100 |
| 36 | >80 |

More preferably a preparation for once-a-day dosing has an in vitro release rate substantially as follows:

| TIME (H) | % TRAMADOL RELEASED |
|----------|---------------------|
| 1 | 15–25 |
| 2 | 25–35 |
| 4 | 30–45 |
| 8 | 40–60 |
| 12 | 55–70 |
| 16 | 60–75 |

Another preferred dissolution rate in vitro upon release of the controlled release preparation for administration twice daily according to the invention, is between 5 and 50% (by weight) tramadol released after 1 hour, between 10 and 75% (by weight) tramadol released after 2 hours, between 20 and 95% (by weight) tramadol released after 4 hours, between 40 and 100% (by weight) tramadol released after 8 hours, more than 50% (by weight) tramadol released after 12 hours, more than 70% (by weight) released after 18 hours and more than 80% (by weight) tramadol released after 24 hours.

Furthermore, it is preferred in the case of a controlled release preparation for administration twice daily that after 8 hours following oral administration between 70 and 95% (by weight) tramadol is absorbed in vivo, between 77 and 97% (by weight) tramadol is absorbed after 10 hours and between 80 and 100% (by weight) tramadol is absorbed after 12 hours

US 6,254,887 B1

3

A formulation in accordance with the invention suitable for twice-a-day dosing may have a tmax of 1.5 to 8 hours, preferably 2 to 7 hours, and a $W_{50}$ value in the range 7 to 16 hours.

A formulation in accordance with the invention suitable for once-a-day dosing may have a tmax in the range of 3 to 6 hours, preferably 4 to 5 hours and a $W_{50}$ value in the range of 10 to 33 hours.

The $W_{50}$ parameter defines the width of the plasma profile at 50% Cmax, i.e. the duration over which the plasma concentrations are equal to or greater than 50% of the peak concentration. The parameter is determined by linear interpolation of the observed data and represents the difference in time between the first (or only) upslope crossing the last (or only) downslope crossing in the plasma profile.

The in vitro release rates mentioned herein are, except where otherwise specified, those obtained by measurement using the Ph. Eur. Paddle Method at 100 rpm in 900 ml 0.1 N hydrochloric acid at 37° C. and using UV detection at 270 mm.

The in vitro absorption rate is determined from measurement of plasma concentration against time using the deconvolution technique. A conventional release tramadol drop preparation (Tramal (trade mark), Grunenthal) was used as the weighting-function and the elimination half life of tramadol was taken as 7.8 hours.

The controlled release preparation according to the invention preferably contains an analgesically effective amount of tramadol or a pharmaceutically acceptable salt thereof, conveniently in the range from 50 to 800 mg, especially 100, 200, 300, 400 to 600 mg (calculated as tramadol hydrochloride) per dosage unit.

The controlled release preparation according to the invention may be presented, for example, as granules, spheroids, pellets, multiparticulates, capsules, tablets, sachets, controlled release suspensions, or in any other suitable dosage form incorporating such granules, spheroids, pellets or multiparticulates.

The active ingredient in the preparation according to the invention may suitably be incorporated in a matrix. This may be any matrix that affords controlled release tramadol over at least a twelve hour period and preferably that affords in-vitro dissolution rates and in vivo absorption rates of tramadol within the ranges specified above. Preferably the matrix is a controlled release matrix. Alternatively, normal release matrices having a coating which provides for controlled release of the active ingredient may be used.

Suitable materials for inclusion in a controlled release matrix include

(a) Hydrophilic or hydrophobic polymers, such as gums, cellulose ethers, acrylic resins and protein derived materials. Of these polymers, the cellulose ethers, especially alkylcelluloses are preferred. The preparation may conveniently contain between 1% and 80% (by weight) of one or more hydrophilic or hydrophobic polymers.

(b) Digestible, long chain ($C_{8}$–$C_{50}$, especially $C_{12}$–$C_{40}$), substituted or unsubstituted hydrocarbons, such as fatty acids, fatty alcohols, glyceryl esters of fatty acids, mineral and vegetable oils and waxes, hydrocarbons having a melting point of between 25 and 90° C. are preferred. Of these long chain hydrocarbon materials, fatty (aliphatic) alcohols are preferred. The preparation may conveniently contain up to 60% (by weight) of at least one digestible, long chain hydrocarbon.

(c) Polyalkylene glycols. The preparation may suitably contain up to 60% (by weight) of one or more polyalkylene glycols.

4

One particularly suitable controlled release matrix comprises one or more alkylcelluloses and one or more $C_{12}$–$C_{36}$ aliphatic alcohols. The alkylcellulose is preferably $C_{1}$–$C_{6}$ alkyl cellulose, especially ethyl cellulose. The controlled release preparation according to the invention preferably contains from 1 to 20% (by weight), especially from 2 to 15% (by weight) of one or more alkylcelluloses.

The aliphatic alcohol may conveniently be lauryl alcohol, myristyl alcohol or stearyl alcohol but is preferably cetyl alcohol or more preferably cetostearyl alcohol. The controlled release preparation suitably contains from 5 to 30% (by weight) of aliphatic alcohol, especially from 10 to 25% (by weight) of aliphatic alcohol.

Optionally the controlled release matrix may also contain other pharmaceutically acceptable ingredients which are conventional in the pharmaceutical art such as diluents, lubricants, binders, granulating aids, colourants, flavourants, surfactants, pH adjusters, anti-adherents and glidants, e.g. dibutyl sebacate, ammonium hydroxide, oleic acid and colloidal silica.

The controlled release preparation according to the invention may conveniently be film coated using any film coating material conventional in the pharmaceutical art. Preferably an aqueous film coating is used.

Alternatively, the controlled release preparation according to the invention may comprise a normal release matrix having a controlled release coating. Preferably the preparation comprises film coated spheroids containing the active ingredient and a spheronising agent.

The spheronising agent may be any suitable pharmaceutically acceptable material which may be spheronised together with the active ingredient to form spheroids. A preferred spheronising agent is microcrystalline cellulose. The microcrystalline cellulose used may suitably be, for example, Avicel PH 101 or Avicel PH 102 (Trade Marks, FMC Corporation).

Optionally the spheroids may contain other pharmaceutically acceptable ingredients conventional in the pharmaceutical art such as binders, bulking agents and colourants. Suitable binders include water soluble polymers, water soluble hydroxyalkyl celluloses such as hydroxypropylcellulose or water insoluble polymers (which may also contribute controlled release properties) such as acrylic polymers or copolymers for example ethylcellulose. Suitable bulking agents include lactose.

The spheroids are coated with a material which permits release of the active ingredient at a controlled rate in an aqueous medium. Suitable controlled release coating materials include water insoluble waxes and polymers such as polymethylacrylates (for example Eudragit polymers, Trade Mark) or water insoluble celluloses, particularly ethylcellulose. Optionally, water soluble polymers such as polyvinylpyrrolidone or water soluble celluloses such as hydroxypropylmethylcellulose or hydroxypropylcellulose may be included. Optionally other water soluble agents such as polysorbate 80 may be added.

Alternatively the drug may be coated onto inert nonpareil beads and the drug loaded beads coated with a material which permits control of the release of the active ingredient into the aqueous medium.

In a further aspect the present invention provides a process for preparing a controlled release preparation according to the present invention comprising incorporating tramadol or a pharmaceutically acceptable salt thereof in a controlled release matrix, for example by

(a) granulating a mixture comprising tramadol or a pharmaceutically acceptable salt thereof and one or more alkylcelluloses,

PUR0533358

US 6,254,887 B1

5

(b) mixing the alkylcellulose containing granules with one or more $C_{12-36}$ aliphatic alcohols; and optionally

(c) shaping and compressing the granules, and film coating, if desired; or

(d) granulating a mixture comprising tramadol or a pharmaceutically acceptable salt thereof, lactose and one or more alkylcelluloses with one or more $C_{12-36}$ aliphatic alcohol; and, optionally,

(e) shaping and compressing the granules, and film coating, if desired.

The controlled release preparation according to the invention may also be prepared in the form of film coated spheroids by

(a) granulating the mixture comprising tramadol or a pharmaceutically acceptable salt thereof and a spheronising agent;

(b) extruding the granulated mixture to give an extrudate;

(c) spheronising the extrudate until spheroids are formed; and

(d) coating the spheroids with a film coat.

One preferred form of unit dose form in accordance with the invention comprises a capsule filled with controlled release particles essentially comprising the active ingredient, a hydrophobic fusible carrier or diluent and optionally a hydrophillic release modifier. In particular, the controlled release particles are preferably prepared by a process which comprises forming a mixture of dry active ingredient and fusible release control materials followed by mechanically working the mixture in a high speed mixer with an energy input sufficient to melt or soften the fusible material whereby it forms particles with the active ingredient. The resultant particles, after cooling, are suitably sieved to give particles having a size range from 0.1 to 3.0 mm, preferably 0.25 to 2.0 mm. An example according to the invention is described below which is suitable for the commercial production of dosage units.

When using such a processing technique it has been found that, in order most readily to achieve the desired release characteristics (both in vivo and in vitro as discussed above) the composition to be processed should comprises two essential ingredients namely:

(a) tramadol or salt thereof; and

(b) hydrophobic fusible carrier or diluent; optionally together with

(c) a release control component comprising a water-soluble fusible material or a particulate soluble or insoluble organic or inorganic material.

We have found that the total amount of tramadol or pharmaceutically acceptable salt thereof in the composition may vary within wide limits, for example from 10 to 90% by weight thereof.

The hydrophobic fusible component (b) should be a hydrophobic material such as a natural or synthetic wax or oil, for example hydrogenated vegetable oil, hydrogenated castor oil, microcrystalline wax, Beeswax, Carnauba wax or glyceryl monostearate, and suitably has a melting point of from 35 to 140° C., preferably 45 to 110° C.

The release modifying component (c), when a water soluble fusible material, is conveniently a polyethylene glycol and, when a particulate material, is conveniently a pharmaceutically acceptable material such as dicalcium phosphate or lactose.

Another preferred process for the manufacture of a formulation in accordance with the invention comprises

(a) mechanically working in a high-speed mixer, a mixture of tramadol or a pharmaceutically acceptable salt in particulate form and a particulate, hydrophobic fusible car-

6

rier or diluent having a melting point from 35 to 140° C. and optionally a release control component comprising a water soluble fusible material, or a particulate soluble or insoluble organic or inorganic material at a speed and energy input which allows the carrier or diluent to melt or soften, whereby it forms agglomerates,

(b) breaking down the larger agglomerates to give controlled release seeds; and

(c) continuing mechanically working with optionally a further addition of low percentage of the carrier or diluent

(d) optionally repeating steps (c) and possibly (b) one or more times

This process is capable of giving a high yield (over 80%) of particles in a desired size range, with a desired uniformity of release rate of tramadol or salt thereof.

The resulting particles may be sieved to eliminate any over-or undersized material then formed into the desired dosage units by for example, encapsulation into hard gelatin capsules containing the required dose of the active substance or by compression into tablets.

In this method in accordance with the invention preferably all the tramadol or salt thereof is added in step (a) together with a major portion of the hydrophobic fusible release control material used. Preferably the amount of fusible release material added in step (a) is between 10% and 90% w/w of the total amount of ingredients added in the entire manufacturing operation, more preferably between 20% and 70% w/w.

Stage (a) of the process may be carried out in conventional high speed mixers with a standard stainless steel interior, e.g. a Collette Vactron 75 or equivalent mixer. The mixture is processed until a bed temperature about 40° C. or above is achieved and the resulting mixture acquires a cohesive granular texture, with particle sizes ranging from about 1–3 mm to fine powder in the case of non-aggregated original material. Such material, in the case of the embodiments described below, has the appearance of agglomerates which upon cooling below 40° C. have structural integrity and resistance to crushing between the fingers. At this stage the agglomerates are of an irregular size, shape and appearance.

The agglomerates are preferably allowed to cool. The temperature to which it cools is not critical and a temperature in the range room temperature to 37° C. may be conveniently used.

The agglomerates are broken down by any suitable means, which will comminute oversize agglomerates and produce a mixture of powder and small particles preferably with a diameter under 2 mm. It is currently preferred to carry out the classification using a Jackson Crockatt granulator using a suitable sized mesh, or a Comil with an appropriate sized screen. We have found that if too small a mesh size is used in the aforementioned apparatus the agglomerates melting under the action of the beater or impeller will clog the mesh and prevent further throughput of mixture, thus reducing yield. A mesh size of 12 has been found adequate.

The classified material is returned to the high speed mixer and processing continued.

It is believed that this leads to cementation of the finer particles into particles of uniform size range.

In one preferred form of the method of the invention processing of the classified materials is continued, until the hydrophobic fusible materials used begin to soften/melt and optionally additional hydrophobic fusible material is then added. Mixing is continued until the mixture has been transformed into particles of the desired predetermined size range.

US 6,254,887 B1

7

In order to ensure uniform energy input into the ingredients in the high speed mixer it is preferred to supply at least part of the energy by means of microwave energy

Energy may also be delivered through oiler means such as by a heating jacket or via the mixer impeller and chopper blades

After the particles have been formed they are cooled or allowed to cool, and may then be sieved to remove any over or undersized material.

The resulting particles may be used to prepare dosage units in accordance with the invention in the form of e g tablets or capsules in manners known per se.

We have also found that particles containing tramadol or a salt thereof produced by a melt processing as described in application PCT/SE93/00225 and the process described and claimed in our prior unpublished UK application No. 9324045.5 filed onNov 23, 1993 as well as the process described herein are particularly useful for processing into the form of tablets.

We have found that by suitable selection of the materials used in forming the particles and in the tabletting and the proportions in which they are used, enables a significant degree of control in the ultimate dissolution and release rates of the tramadol or salt thereof from the compressed tablets

Usually, to form a tablet in accordance with the invention, particles prepared as described above will be admixed with tabletting excipients e g. one or more of the standard excipients such as diluents, lubricants, binding agents, flow aids, disintegrating agents, surface active agents or water soluble polymeric materials.

Suitable diluents are e g. microcrystalline cellulose, lactose and dicalcium phosphate. Suitable lubricants are e.g. magnesium stearate and sodium stearyl fumarate. Suitable binding agents are e.g hydroxypropyl methyl cellulose, polyvidone and methyl cellulose.

Suitable disintegrating agents are starch, sodium starch glycolate, crospovidone and croscarmalose sodium.

Suitable surface active are Poloxamer 188®, polysorbate 80 and sodium lauryl sulfate. Suitable flow aids are talc colloidal anhydrous silica. Suitable water soluble polymers are PEG with molecular weights in the range 1000 to 6000

To produce tablets in accordance with the invention, particles produced in accordance with the invention may be mixed or blended with the desired excipient(s), if any, using conventional procedures, e g. using a Y-Cone or bin-blender and the resulting mixture compressed according to conventional tabletting procedure using a suitable size tabletting mould. Tablets can be produced using conventional tabletting machines, and in the embodiments described below were produced on standard single punch F3 Manesty machine or Kilian RLE15 rotary tablet machine.

Generally speaking we find that even with such a highly water soluble active agent as tramadol or salt thereof tablets formed by compression according to standard methods give very low release rates of the active ingredient e.g. corresponding to release over a period of greater than 24 hours, say more than 36 We have found that the release profile can be adjusted in a number of ways. For instance a higher loading of the drug will be associated with increased release rates; the use of larger proportions of the water soluble fusible material in the particles or surface active agent in the tabletting formulation will also be associated with a higher release rate of the active ingredient. By controlling the relative amounts of these ingredients it is possible to adjust the release profile of the tramadol or salt thereof.

In order that the invention may be well understood the following examples are given by way of illustration only.

8

BRIEF DESCRIPTION OF DRAWINGS

The present invention is further illustrated in connection with the accompanying drawings in which:

FIG. 1 is a graphical depiction of the serum levels of tramadol following administration of one tablet according to Example 2 in 12 healthy volunteers: and

FIG. 2 is a graphical depiction of the plasma profile resulting from single dose administration of the tablet of Example 8 in comparison to the administration of a commercial preparation of tramadol drops 100 mg in a trial involving five healthy male volunteers.

EXAMPLE 1

Tablets having the following formulation wee prepared:

|  | mg/tablet |
|---|---|
| Tramadol Hydrochloride | 100 |
| Lactose Ph. Eur. | 68 0 |
| Ethylcellulose (Surelease @ 25% solids) | 15 |
| Purified Water Ph Eur | 13 3* |
| Cetostearyl Alcohol Ph Eur (Dehydag wax O) | 42 00 |
| Magnesium Stearate Ph Eur | 2 00 |
| Purified Talc Ph Eur | 3.00 |
|  | 230.00 |

*Removed during processing

Tramadol hydrochloride (100 mg) and lactose (68 mg) were granulated, transferred to a fluid bed granulatnr and sprayed with ethylcellulose (15 mg) and water. The granules were then dried at 60° C. and passed through a 1 mm screen.

To the warmed tramadol containing granules was added molten cetostearyl alcohol (42 mg) and the whole was mixed thoroughly The granules were allowed to cool and sieved through a 1 6 mm screen Purified talc and magnesium stearate were added and mixed with the granules. The granules were then compressed into tablets.

The tablets were coated with a film coat having the formulation given below

|  | mg/tablet |
|---|---|
| Hydropopylmethylcellulose Ph. Eur 15 cps (Methocel E15) | 0.770 |
| Hydroxypropylmethylcellulose (Ph Eur 5 cps (Methocel E5) | 3 87 |
| Opospray M-1-7111B (33% solids) | 2.57 |
| Polyethylene glycol 400 USNF | 0.520 |
| Purified Talc Ph. Eur. | 0 270 |
| Purified Water Ph. Eur | 55 52* |

*Remove during processing

EXAMPLE 2

Tablets having the following formulation were prepared:

|  | mg/tablet |
|---|---|
| Tramadol hydrochloride | 100 0 |
| Lactose Ph. Eur. | 58 0 |
| Ethylcellulose USNF | 15 0 |

PUR0533360

US 6,254,887 B1

9

-continued

|  | mg/tablet |
|---|---|
| (Ethocel 45 CP) | |
| Cetostearyl alcohol Ph. Eur. | 52.0 |
| (Dehydag wax O) | |
| Magnesium stearate Ph. Eur. | 2.00 |
| Purified talc Ph. Eur. | 3.00 |

A mixture of tramadol hydrochloride (100 mg), lactose (58 mg) and ethylcellulose (15 mg) was granulated whilst adding molten cetostearyl alcohol (52 mg) and the whole was mixed thoroughly. The granules were allowed to cool and sieved through a 1.6 mm screen. Purified talc and magnesium stearate were added and mixed with the granules. The granules were then compressed into tablets which were coated with a film coat having the formulation given in Example 1.

EXAMPLE 3

Film coated tablets were produced following the procedure described in Example 2 and having the following formulation:

|  | mg/tablet |
|---|---|
| Tramadol hydrochloride | 100.00 |
| Lactose Ph. Eur. | 70.50 |
| Hydroxyethylcellulose Ph. Eur. | 12.50 |
| Cetostearyl alcohol Ph. Eur. | 42.00 |
| Magnesium stearate Ph. Eur. | 2.00 |
| Purified talc Ph. Eur. | 3.00 |

In vitro dissolution studies

In vitro dissolution studies were conducted on tablets prepared as described above. Results are given in Table 1.

TABLE 1

| | WT % TRAMADOL RELEASED | | |
|---|---|---|---|
| Time (h) | Example 1 | Example 2* | Example 3 |
| 1 | 39 | 35 | 43 |
| 2 | 52 | 47 | 60 |
| 4 | 67 | 62 | 84 |
| 8 | 82 | 78 | 97 |
| 12 | 90 | 86 | — |

*Measured on tablet core

In a trial involving 12 healthy volunteers the serum levels of tramadol following administration of one tablet according to Example 2 was found to be as illustrated in FIG. 1.

EXAMPLES 4 AND 5

Particles having the formulations given in Table II below were prepared by the steps of:

i. Placing the ingredients (a) and (c) (total batch weight 0.7 kg) in the bowl of a 10 liter capacity Collette Gral Mixer (or equivalent) equipped with variable speed mixing and granulating blades;

ii. Mixing the ingredients at about 150–1000 rpm whilst applying heat until the contents of the bowl are agglomerated

iii. Classifying the agglomerated material by passage through a Comil and/or Jackson Crockatt to obtain controlled release seeds

10

iv. Warming and mixing the classified material in the bowl of a 10 liter Collette Gral, until uniform multiparticulates of the desired pre-determined size range are formed in yield of greater than 80%. This takes approximately 5 minutes.

v. Discharging the multiparticulates from the mixer and sieving them to separate out the multiparticulates collected between 0.5 and 2 mm aperture sieves.

TABLE II

| Example | 4 | 5 |
|---|---|---|
| (a) Tramadol HCl (Wt %) | 50 | 75 |
| (b) Hydrogenated Vegetable Oil (Wt %) | 50 | 25 |

EXAMPLE 6

Samples of the particles from Example 4 were blended with magnesium stearate and purified talc using a Y-Cone or bin-blender. The blended mixture was then compressed using either (1) 14×6 mm, (2) 16×7 mm or (3) 18.6×7.5 mm capsule shaped tooling on a single punch F3 Manesty tabletting machine to give tablets giving 200, 300 and 400 mg of tramadol HCl. The ingredients per dosage unit amounted to the following:

TABLE III

| TABLET | MG/TABLET | | |
|---|---|---|---|
| INGREDIENT | 1 | 2 | 3 |
| Tramadol Hcl | 200 | 300 | 400 |
| Hydrogenated Vegetable Oil | 200 | 300 | 400 |
| Sub Total | 400 | 600 | 800 |
| Purified Talc | 12.63 | 18.95 | 25.26 |
| Magnesium Stearate | 8.42 | 12.63 | 16.84 |

The tablets were assessed by the dissolution using Ph. Eur. Paddle Method 100 rpm, 0.1 N HCl.

To assess the non-compressed particles the Ph. Eur. Paddle was replaced by a modified Ph. Eur. Basket.

The results are shown in Table IV below;

TABLE IV

| HOURS AFTER START OF TEST | Particles | Tablet 1 | Tablet 2 | Tablet 3 |
|---|---|---|---|---|
| | % TRAMADOL HCl RELEASED | | | |
| 1 | 54 | 16 | 15 | 15 |
| 2 | 68 | 23 | 20 | 21 |
| 3 | 76 | 28 | 25 | 25 |
| 4 | 82 | 32 | 28 | 28 |
| 6 | 89 | 40 | 35 | 35 |
| 8 | 93 | 46 | 41 | 40 |
| 10 | 96 | 50 | 45 | 45 |
| 12 | 98 | 55 | 49 | 49 |
| 16 | 100 | 63 | 57 | 56 |
| 20 | NR | 70 | 63 | NR |

These results confirm the effectiveness of the tabletting in reducing the release rate.

EXAMPLE 7

Samples of the particles from Example 5 were then tabletted using a procedure similar and the ingredients per unit dosage amounted to:

US 6,254,887 B1

11

12

TABLE V

| INGREDIENT | MG/TABLET | | |
|---|---|---|---|
| | 4 | 5 | 6 |
| Tramadol HCl | 200 | 360 | 400 |
| Hydrogenated Vegetable Oil | 66.7 | 100 | 133 |
| Sub Total | 266.7 | 400 | 533 |
| Purified Talc | 7.63 | 11.44 | 15.25 |
| Magnesium Stearate | 5.16 | 7.63 | 10.17 |

The tablets and samples of non-compressed multiparticulates (each sample containing 400 mg of tramadol hydrochloride) were assessed by the dissolution method also described above. The results are shown in Table VI below;

TABLE VI

| HOURS AFTER START OF TEST | Particles | Tablet 4 | Tablet 5 | Tablet 6 |
|---|---|---|---|---|
| | | % TRAMADOL HCl RELEASED | | |
| 1 | 77 | 43 | 40 | 42 |
| 2 | 92 | 64 | 55 | 56 |
| 3 | 98 | 75 | 65 | 66 |
| 4 | 100 | 83 | 72 | 73 |
| 6 | 102 | 94 | 83 | 84 |
| 8 | 102 | 100 | 91 | 91 |
| 10 | 102 | NR | 96 | 97 |

These results show that by increasing the loading of the highly water soluble tramadol hydrochloride (75% w/w in this example compared with 50% w/w in Example 6) a significantly faster release rate of the active ingredient can be achieved

EXAMPLE 8

Example 4 was repeated but with (the following formulation:

| Tramadol HCl | 200 mg/tablet |
|---|---|
| Hydrogenated Vegetable Oil | 163.0 mg/tablet |

The resulting multiparticulates were blended as described in Example 6 with the following;

| Purified Talc | 11.5 mg/tablet |
|---|---|
| Magnesium Stearate | 7.66 mg/tablet |

The blend was then compressed as described in Example 6 but using 15 mm×6.5 mm normal concave capsule shaped plain/plain punches

The resulting tablets were then assessed by the dissolution method described above. The results are shown in Table V

| HOURS AFTER START OF TEST | % TRAMADOL HCl RELEASED |
|---|---|
| 1 | 20 |
| 2 | 27 |
| 3 | 32 |
| 4 | 37 |
| 6 | 44 |
| 8 | 50 |

-continued

| HOURS AFTER START OF TEST | % TRAMADOL HCl RELEASED |
|---|---|
| 10 | 55 |
| 12 | 60 |
| 16 | 67 |
| 20 | 73 |
| 24 | 77 |

In a trial involving five healthy male volunteers the plasma profile resulting from single dose administrations of the above tablet are shown in FIG 2 in comparison to the administration of a commercial preparation of Tramadol drops 100 mg.

What is claimed is:

1 A controlled release oral pharmaceutical preparation suitable for dosing every 24 hours comprising

a substrate comprising a pharmaceutically effective amount of tramadol or a salt thereof;

said substrate coated with a controlled release coating;

said preparation having a dissolution rate in vitro when measured using the Ph Eur. Paddle Method at 100 rpm in 900 ml 0,1 N hydrochloric acid at 37° C. and using UV detection at 270 nm, between 0 and 50% tramadol released after 1 hour; between 0 and 75% tramadol released after 2 hours; between 3 and 95% tramadol released after 4 hours; between 10 and 100% tramadol released after 8 hours; between 20 and 100% tramadol released after 12 hours; between 30 and 100% tramadol released after 16 hours; between 50 and 100% tramadol released after 24 hours; and greater than 80% tramadol released after 36 hours, by weight, said preparation providing a therapeutic effect for about 24 hours after oral administration.

2. A controlled release preparation as claimed in claim 1, having an in vitro dissolution rate (measured by the Ph Eur. Paddle method at 100 rpm in 900 ml 0.1 N hydrochloric acid at 37° C. And using UV detection at 270 mm) as set forth below:

| TIME (H) | % RELEASED |
|---|---|
| 1 | 20–50 |
| 2 | 40–75 |
| 4 | 60–95 |
| 8 | 80–100 |
| 12 | 90–100 |

3. A controlled release preparation as claimed in claim 1, having an in vitro dissolution rate (measured by the Ph. Eur. Paddle method at 100 rpm in 900 ml 0.1 N hydrochloric acid at 37° C. and using UV detection at 270 mm) as set forth below:

| TIME (H) | % RELEASED |
|---|---|
| 1 | 0–50 |
| 2 | 0–75 |
| 4 | 10–95 |
| 8 | 35–100 |
| 12 | 55–100 |
| 16 | 70–100 |
| 24 | >90 |

4. A controlled release preparation as claimed in claim 1, having an in vitro dissolution rate (measured by the Ph Eur

US 6,254,887 B1

13

Paddle method at 100 rpm in 900 ml 0.1 N hydrochloric acid at 37° C. and using UV detection at 270 mm) as set forth below:

| TIME (H) | % RELEASED |
|----------|------------|
| 1 | 0–30 |
| 2 | 0–45 |
| 4 | 3–55 |
| 8 | 10–65 |
| 12 | 20–75 |
| 16 | 30–88 |
| 24 | 50–100 |
| 36 | >80 |

5. A controlled release preparation according to claim 1, wherein said substrate comprises a plurality of spheroids.

6. A controlled release preparation according to claim 5, wherein said spheroids comprise a spheronizing agent.

7. A controlled release preparation suitable for dosing every twelve hours comprising

a substrate comprising an effective amount of tramadol or pharmaceutically acceptable salt thereof and said substrate coated wit a controlled release coating;

said preparation exhibiting an in vitro dissolution rate when measured by the Ph. Eur Paddle method at 100 rpm in 900 ml 0.1 N hydrochloric acid at 37° C. and using UV detection at 270 mm, such that between 5 and 50% (by weight) tramadol is released after 1 hour, between 10 and 75% by weight) tramadol is released after 2 hours, between 20 and 95% (by weight) tramadol is released at after 4 hours, between 40 and 100% (by weight) tramadol is released after 8 hours, more than 50% (by weight) tramadol is released after 12 hours, more than 70% (by weight) tramadol is released after 18 hours and more than 80% (by weight) tramadol is released after 24 hours said preparation providing a therapeutic effect for at least about 12 hours after oral administration.

8. A controlled release preparation according to claim 7, wherein said substrate comprises a plurality of spheroids.

9. A controlled release preparation according to claim 7 which provides a $t_{max}$ at 2 to 7 hours after oral administration.

10. A controlled release preparation according to claim 7. which provides a $t_{max}$ at 1.5 to 8 hours after oral administration.

11. A controlled release preparation according to claim 7, which provides a $W_{50}$ from about 7 to about 16 hours after oral administration.

12. A controlled release preparation according to claim 7, wherein said substrate is a tablet.

13. A controlled release oral pharmaceutical tablet suitable for dosing every 24 hours comprising

a tablet containing a pharmaceutically effective amount of tramadol or a salt thereof;

said tablet coated with a controlled release coating;

said coated tablet having a dissolution rate in vitro when measured using the Ph. Eur Paddle Method at 100 rpm in 900 ml 0.1 N hydrochloric acid at 37° C. and using UV detection at 270 nm, between 0 and 50% tramadol released after 1 hour; between 0 and 75% tramadol released after 2 hours; between 3 and 95% tramadol released after 4 hours; between 10 and 100% tramadol released after 8 hours; between 20 and 100% tramadol released after 12 hours; between 30 and 100% tramadol

14

released after 16 hours; between 50 and 100% tramadol released after 24 hours; and greater than 80% tramadol released after 36 hours, by weight, and providing a $W_{50}$ in the range of 10 to 33 hours when orally administered, said coated tablet providing a therapeutic effect for about 24 hours after oral administration.

14. A controlled release oral pharmaceutical tablet suitable for dosing every 24 hours comprising

a tablet containing a pharmaceutically effective amount of tramadol or a salt thereof;

said tablet coated with a controlled release coating;

said coated tablet providing a therapeutic effect for about 24 hours after oral administration and having an in vitro dissolution rate (measured by the Ph. Eur Paddle method at 100 rpm in 900 ml 0.1 N hydrochloric acid at 37° C. and using UV detection at 270 mm) as set forth below:

| TIME (H) | % RELEASED |
|----------|------------|
| 1 | 20–50 |
| 2 | 40–75 |
| 4 | 60–95 |
| 8 | 80–100 |
| 12 | 90–100 |

15. A controlled release oral pharmaceutical tablet in accordance with claim 15 which has

an in vitro dissolution rate (measured by the Ph. Eur Paddle method at 100 rpm in 900 ml 0.1 N hydrochloric acid at 37° C. using UV detection at 27 mm) as set forth below:

| TIME (H) | % RELEASED |
|----------|------------|
| 1 | 0–50 |
| 2 | 0–75 |
| 4 | 10–95 |
| 8 | 35–100 |
| 12 | 55–100 |
| 16 | 70–100 |
| 24 | >90 |

16. A controlled release preparation according to claim 1, which when orally administered provides a $W_{50}$ value in the range of 10 to 33 hours.

17. A controlled release preparation according to claim 1. having an in vitro dissolution rate (measured by the Ph. Eur. Paddle method at 100 rpm in 900 ml 0.1 N hydrochloric acid at 37° C. and using UV detection at 270 mm) as set forth below:

| TIME (H) | % RELEASED |
|----------|------------|
| 1 | 15–25 |
| 2 | 25–35 |
| 4 | 30–45 |
| 8 | 40–60 |
| 12 | 55–70 |
| 16 | 60–75 |

18. A controlled release preparation according to claim 1, which when orally administered provides a $t_{max}$ at 4–5 hours after oral administration.

19. A controlled release oral pharmaceutical preparation suitable for dosing every 24 hours comprising

US 6,254,887 B1

15

a substrate comprising a pharmaceutically effective amount of an opioid analgesic consisting essentially of tramadol or a salt thereof;

said substrate coated with a controlled release coating;

said preparation having a dissolution rate in vitro when measured using the Ph. Eur. Paddle Method at 100 rpm in 900 ml 0.1 N hydrochloric acid at 37° C. and using UV detection at 270 nm, between 0 and 50% tramadol released after 1 hour; between 0 and 75% tramadol released after 2 hours; between 3 and 95% tramadol released after 4 hours; between 10 and 100% tramadol released after 8 hours; between 20 and 100% tramadol released after 12 hours; between 30 and 100% tramadol released after 16 hours; between 50 and 100% tramadol released after 24 hours; and greater than 80% tramadol released after 36 hours, by weight, said preparation providing a therapeutic effect for about 24 hour, after oral administration.

20. A controlled release preparation according to claim 1, wherein said substrate comprises inert non-pareil beads coated with said tramadol.

21. A controlled release preparation according to claim 7, wherein said substrate comprises inert nonpareil beads coated with said tramadol.

22. A controlled release preparation according to claim 19, wherein said substrate comprises inert non-pareil beads coated with said tramadol.

23. A controlled release preparation according to claim 19, wherein said substrate is a tablet.

24. A controlled release preparation according to claim 19, wherein said substrate comprises spheroids.

25. A controlled release preparation according to claim 19, which provides a $t_{max}$ from 3 to 6 hours after orally administered to a human patient.

26. A controlled release preparation according to claim 25, which provides a $W_{50}$ value in the range from 10 to 33 hours.

16

27. A controlled release preparation in accordance with claim 1, wherein said controlled release coating comprises a material selected from the group consisting of a water insoluble wax, a water insoluble polymer, a water insoluble cellulose and mixtures of any of the foregoing.

28. A controlled release preparation in accordance with claim 7, wherein said controlled release coating comprises a material selected from the group consisting of a water insoluble wax, a water insoluble polymer, a water insoluble cellulose and mixtures of any of the foregoing.

29. A controlled release preparation in accordance with claim 13, wherein said controlled release coating comprises a material selected from the group consisting of a water insoluble wax, a water insoluble polymer, a water insoluble cellulose and mixtures of any of the foregoing.

30. A controlled release preparation in accordance with claim 14, wherein said controlled release coating comprises a material selected form the group consisting of a water insoluble wax, a water insoluble polymer, a water insoluble cellulose and mixtures of any of the foregoing.

31. A controlled release preparation in accordance with claim 19, wherein said controlled release coating comprises a material selected from the group consisting of a water insoluble wax, a water insoluble polymer, a water insoluble cellulose and mixtures of any of the foregoing.

32. A controlled release preparation in accordance with claim 26, wherein said controlled release coating comprises a material selected from the group consisting of a water insoluble wax, a water insoluble polymer, a water insoluble cellulose and mixtures of any of the foregoing.

33. A controlled release preparation in accordance with claim 11, wherein said controlled release coating comprises a material selected from the group consisting of a water insoluble wax, a water insoluble polymer, a water insoluble cellulose and mixtures of any of the foregoing.

* * * * *

PUR0533364

# EXHIBIT F

 **United States Patent and Trademark Office** 

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Assignments on the Web > **Patent Query**

# Patent Assignment Abstract of Title
## NOTE:Results display only for issued patents and published applications.
## For pending or abandoned applications please consult USPTO staff.

**Total Assignments: 4**

**Patent #:** 6254887    **Issue Dt:** 07/03/2001    **Application #:** 08677798    **Filing Dt:** 07/10/1996

**Inventors:** RONALD B  MILLER, STEWART T  LESLIE, SANDRA T  A  MALKOWSKA, KEVIN J  SMITH et al

**Title:** CONTROLLED RELEASE TRAMADOL

**Assignment: 1**

**Reel/Frame:** 019317/0262    **Recorded:** 05/15/2007    **Pages:** 4

**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Assignor:** MUNDIPHARMA GMBH    **Exec Dt:** 05/03/2007

**Assignees:** NAPP PHARMACEUTICAL GROUP LIMITED
MILTON ROAD
CAMBRIDGE SCIENCE PARK
CAMBRIDGE, UNITED KINGDOM BB4 OGW
PURDUE PHARMA PRODUCTS L.P.
201 TRESSER BOULEVARD
ONE STAMFORD FORUM
STAMFORD, CONNECTICUT 06901

**Correspondent:** DAVIDSON, DAVIDSON & KAPPEL, LLC
14TH FLOOR
485 SEVENTH AVENUE
NEW YORK, NY 10018

**Assignment: 2**

**Reel/Frame:** 019317/0258    **Recorded:** 05/15/2007    **Pages:** 4

**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Assignor:** EURO-CELTIQUE S.A.    **Exec Dt:** 05/04/2007

**Assignees:** NAPP PHARMACEUTICAL GROUP LIMITED
MILTON ROA
CAMBRIDGE SCIENCE PARK
CAMBRIDGE, UNITED KINGDOM BB4 OGW
PURDUE PHARMA PRODUCTS L.P.
201 TRESSER BOULEVARD
ONE STAMFORD FORUM
STAMFORD, CONNECTICUT 06901

**Correspondent:** DAVIDSON, DAVIDSON & KAPPEL, LLC
14TH FLOOR
485 SEVENTH AVENUE
NEW YORK, NY 1001B

**Assignment: 3**

**Reel/Frame:** 019317/0266    **Recorded:** 05/15/2007    **Pages:** 4

**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Assignor:** NAPP RESEARCH CENTRE LIMITED    **Exec Dt:** 05/04/2007

**Assignees:** NAPP PHARMACEUTICAL GROUP LIMITED
MILTON ROAD

CAMBRIDGE SCIENCE PARK
CAMBRIDGE, UNITED KINGDOM BB4 0GW
PURDUE PHARMA PRODUCTS L.P.
201 TRESSER BOULEVARD
ONE STAMFORD FORUM
STAMFORD, CONNECTICUT 06901

**Correspondent:** DAVIDSON, DAVIDSON & KAPPEL, LLC
14TH FLOOR
485 SEVENTH AVENUE
NEW YORK, NY 1001B

## Assignment: 4

**Reel/Frame:** 019317/0396    **Recorded:** 05/15/2007    **Pages:** 4

**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS)

**Assignor:** MUNDIPHARMA AG (A.K.A. MUNDIPHARMA S.A.)    **Exec Dt:** 05/04/2007

**Assignees:** NAPP PHARMACEUTICAL GROUP LIMITED
MILTON ROAD
CAMBRIDGE SCIENCE PARK
CAMBRIDGE, UNITED KINGDOM BB4 0GW
PURDUE PHARMA PRODUCTS L.P.
201 TRESSER BOULEVARD
ONE STAMFORD FORUM
STAMFORD, CONNECTICUT 06901

**Correspondent:** DAVIDSON, DAVIDSON & KAPPEL, LLC
485 SEVENTH AVENUE, 14TH FLOOR
NEW YORK, NEW YORK 10018

Search Results as of: 03/11/2008 01:34 PM
If you have any comments or questions concerning the data displayed, contact PRD / Assignments at 571-272-3350  v 2 0 1
Web interface last modified: April 20, 2007 v 2 0 1

# EXHIBIT G

# REDACTED
# IN ITS
# ENTIRETY

# EXHIBIT H

 Attachment A 

222.94213 DIV

## UNITED STATES PATENT AND TRADEMARK OFFICE

Re:     Application of:          Ronald B. MILLER, et al.

        Serial No.:              08/449,772

        Filed:                   May 24, 1995

        For:                     CONTROLLED RELEASE FORMULATION


### INFORMATION DISCLOSURE STATEMENT

Assistant Commissioner of Patents
Washington, D.C. 20231
                                                            July 17, 1997

Sir:

In accordance with 37 C.F.R. paragraphs 1.97-1.99, copies of the references listed on the attached form PTO-1449 are enclosed herewith.


The Examiner's attention is drawn to the fact that a corresponding European Patent EP 0 624 366 B1 has now been opposed by seven (7) opposers. The granted claims of EP 0 624 366 B1 are directed to compositions and are different than the pending claims in the present application. The corresponding Chilean Patent Application 667-94 has also been opposed by one of the opposers of the European patent. The documents cited in the Chilean Opposition have also been cited in the European Opposition.

I hereby certify that this correspondence and/or
fee is being deposited with the United States
Postal Service as first class mail in an envelope
addressed to "Assistant Commissioner for Patents,
Washington, D.C. 20231" on July 17, 1997.

STEINBERG, RASKIN & DAVIDSON, P.C.

BY: _____

G:\CLIENTS\222\94213DIV\PROSECU\IDS\JULY 21                    1

PUR0536000



In order to ensure compliance with disclosure requirements under Rule 56, Applicants submit herewith a PTO-1449 form which lists each and every reference which has been cited in the above-mentioned EP Opposition. In addition, submitted herewith are copies of the Opposition papers (or English translations thereof where appropriate) submitted by each opponent. These copies include submissions by Arzneimittelwerk Dresden GmbH, Bioglan Laboratories Ltd., Gruenenthal GmbH, Krewel Meuselbach GmbH, Hexal AG, Lannacher Heilmittel GmbH, and Nycomed Danmark A/S. For the Examiners convenience, Applicants have separately enclosed Appendix A, which correlates the references cited by the opposers. Certain of these references have already been cited by Applicants in a previous Information Disclosure Statement and have already been considered and made of record by the Examiner. However, for the sake of completeness, Applicants have once again provided copies of the previously cited documents.

The Examiner's particular attention is drawn to the fact that the U.S. Patent corresponding to EP 147 780, cited and relied upon by several opponents, has previously made of record in both the present application and in the parent application (U.S. Patent No. 5,591,452)

The Examiner's attention is also directed to the page 8 of the twelve page PTO-1449 form that was submitted with Applicants' Information Disclosure Statement of August 15, 1994. On that page, the Examiner indicated that certain references were not considered. Applicants have once again recited these references on the present PTO-1449 form, and have resubmitted copies of these references, along with English translations where appropriate.

Applicants have also obtained English translations of certain non-English language journal articles that were previously cited in the Information Disclosure Statement mailed October 20, 1995. Copies of both the journal articles and their English translations are submitted herewith for the Examiner's further consideration.

PUR0536001

 

The undersigned also respectfully directs the Examiner's attention Assignee's co-pending patent applications U.S. Serial Nos. 08/774,229; 08/404,293; 08/607,852; 08/343,630; 08/607,851; and 08/843,571  Abandoned application 08/269,208 is also brought to the Examiner's attention.

It is respectfully requested that all of the references cited herein be made of record in the instant application.  A check in the amount of $230.00 is enclosed to cover the cost of the fee for entering this Information Disclosure Statement.

Respectfully submitted,
STEINBERG, RASKIN & DAVIDSON, P.C.

By_____
Clifford M. Davidson
Reg. No. 32,728

Steinberg, Raskin & Davidson, P.C.
1140 Avenue of the Americas
New York, New York 10036
(212) 768-3800

3

PUR0536002

# EXHIBIT I

COMMONWEALTH OF AUSTRALIA

*(Patents Act 1990)*

**IN THE MATTER OF:** Australian
Patent Application 735113 (87145/98).
In the name of: Mundipharma Medical
GmbH

- and -

**OPPOSITION THERETO BY:**
Grunenthal GmbH under Section 59 of
the Patents Act.

**STATUTORY DECLARATION**

I, **Kenneth Frederick Brown**, Consultant Pharmaceutical Scientist in Pharmaceutics of 209 Burraneer Road, Coomba, NSW, 2428, Australia, declare as follows:

### 1    BACKGROUND and QUALIFICATIONS

1.1    I am currently self employed (part-time) as a Consultant Pharmaceutical Scientist in Pharmaceutics. Pharmaceutics is the science of the design, formulation, development and evaluation, both *in vitro* and *in vivo* of pharmaceutical dosage forms.

1.2    I received the degrees of Bachelor of Pharmacy, Master of Pharmacy and Doctor of Philosophy in Pharmaceutics from the University of Sydney NSW 2006 in 1963, 1965 and 1968 respectively.

1.3    After the completion of my doctorate I spent one year as a postdoctoral fellow in the Department of Pharmaceutics, School of Pharmacy, State University of New York at Buffalo, NY, USA. Thereafter I returned to the

**Allens Arthur Robinson**
**Patent & Trade Marks Attorneys**
Chifley Tower
2 Chifley Square
Sydney, NSW, 2000

DX 105 Sydney
Tel 02 9230 4000
Ref 205485059

Fax 02 9230 5333

Department of Pharmacy, University of Sydney as a Lecturer in Pharmaceutics (1969-1975) and Senior Lecturer (1976-1988).

1.4 During 1975-1976 I was a Visiting Lecturer at the School of Pharmacy, University of Manchester, UK for one year. In 1985 I spent six months as a Visiting Scientist at the Departement de Pharmacologie, Faculte de Medecine de Creteil, Universite de Paris XII, Paris. During that period I visited Schools of Pharmacy and presented invited research seminars at Marseilles, Leeuwin, Utrecht, Brighton, Bath and Cardiff as well as in Creteil where I was based. The seminars covered a wide range of my research results including the areas of physical pharmaceutics and biopharmaceutics. I also presented pharmacokinetics research at the 1985 British Pharmaceutical Conference in Leeds.

1.5 In February 1988 I left the University of Sydney to become Medical and Technical Director of 3M Riker (later renamed 3M Pharmaceuticals), a division of 3M Healthcare Australia at Chilvers Road, Pennant Hills, New South Wales. In that position I was responsible for all research and development and technical affairs of the division, including clinical research, regulatory affairs, medical services, laboratory product development and quality assurance for new and marketed products for the region including Australia, New Zealand and Asia (excluding Japan).

1.6 During the time of my employment there, 3M Pharmaceuticals was extensively involved in development of controlled release preparations including 12-hour and 24-hour oral controlled release capsules of theophylline and transdermal patches for coronary vasodilatation and hormone replacement therapy among others. I participated directly in clinical trials for several of those products and supervised staff conducting trials in a number of others. As Medical Director it was my responsibility to select and visit the investigators, inspect the facilities develop and approve the budget and the protocol including trial design, analytical methodology, data treatment and patient inclusion criteria. The day to day management of case records was the responsibility of the investigator and a dedicated clinical research officer under my supervision. In trial design and data management there were usually intensive discussions with and assistance from 3M global laboratory staff to arrive at optimum protocol end points. I believe this is typical of the procedure used in most multinational pharmaceutical companies. For products which we developed locally in the 3M Australia R and D

- 2 -

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

PUR0912026

laboratories the clinical trials were performed entirely locally, by specialist investigators, occasionally with the assistance of consultants.

1.7 As regional manager for research and development I represented the Australian subsidiary of 3M Pharmaceuticals at the global research management meetings. This group was responsible for review and evaluation of data and progress of all projects undertaken by 3M Pharmaceuticals worldwide. In Australia, I was responsible for the management of four subsidiary departments and a staff, which at the time of my resignation in 1992, numbered 27.

1.8 In September 1992, I rejoined the Department of Pharmacy (since 1 January 2000 the Faculty of Pharmacy in the College of Health Sciences), University of Sydney as Professor of Pharmaceutics. At that time, to my knowledge, there were four Professors of Pharmaceutics in Australia. I remained in that position until my retirement in April 2000. The Pharmaceutics group at the University comprised one Professor, 4 Senior Lecturers and 3 Lecturers. There were also several Associate Lecturers and at any particular time there were between 15 and 20 postgraduate candidates for MSc and PhD degrees.

1.9 Exhibited to me and marked with the letters "KFB-1" is a copy of my curriculum vitae. I have supervised the research projects of twelve PhD graduates and shared the supervision of a further five PhD students and numerous MSc graduates. I worked in very close cooperation with these students. To the best of my knowledge, nine of the above PhD students had completed their degrees before I joined the pharmaceutical industry in 1988 and a tenth was essentially complete. The nature of the research that we were conducting at that time can be judged from the titles of publications 1 to 44. Of course not all the research was published but the published work is typical. These research students were all enrolled as Pharmaceutics PhD students but the subjects of their research often involved collaboration with other disciplines. I have published about 67 papers almost all of which have appeared in international, peer reviewed journals and have given many presentations and abstracts at conferences.

1.10 My early research involved investigating the nature of interactions of drugs and other small molecules with macromolecules of synthetic and natural origin. This work principally involved physical pharmaceutics. My

- 3 -

Kenneth F Brown

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

experience in this research area is helpful in understanding polymeric materials and the nature and significance of intermolecular interactions in dosage form design.

1.11    I have also conducted research and have extensive experience in postgraduate teaching of practical and theoretical aspects of dissolution kinetics.    This research and scholarship is most valuable in understanding the diffusional processes involved in the release and absorption of drugs from immediate release and controlled release dosage forms.    Many of my publications describe biopharmaceutical studies of the determinants of distribution and disposition of drugs in the body and the influence of disease states and stress conditions on that disposition.    Many of the studies make use of pharmacokinetic concepts for the interpretation of the experimental findings and significance. Eleven of my publications report direct investigations of pharmacokinetics and clinical pharmacokinetics.    Those will be apparent from reading of my curriculum vitae (KFB-1).

1.12    Pharmaceutics, has been the focus of my academic and professional career.    Since 1965 I have worked as an academic and in private industry and led or been part of research groups that have undertaken research in a range of areas including physical pharmacy, dosage form design and formulation, bioavailability, drug metabolism and pharmacokinetics.

1.13    Further, as a research scientist and the leader of an active research group, the Professor of Pharmaceutics at the University of Sydney and the Medical and Technical Director of 3M Pharmaceuticals, I was required to have and to maintain a strong working knowledge of the Australian and international scientific literature concerning pharmaceutical research and development.

1.14    I have been a long term member of a number of research societies, including the Australasian Pharmaceutical Science Association (of which I was President from 1992 to 1998) and The Australasian Society of Clinical and Experimental Pharmacologists.    Details of the committees and Boards that I have been involved with over the years are provided in my curriculum vitae (KFB-1).

- 4 -

## 2    MY INSTRUCTIONS

2.1    I have previously been provided with a copy of a document entitled "*Guidelines for Expert Witnesses in Proceedings in the Federal Court of Australia*" and I am aware of my obligations as an expert in these proceedings.

2.2    MM's Patent Attorneys have also provided me with copies of the following documents:

2.2.1    The patent specification accompanying Australian Patent Application 735113 (AU-B-87145/98) in the name of MM, entitled "Opioid Formulations For Treating Pain" ("the Patent Specification");

2.2.2    The Statutory Declaration of Stephan A Schug that was executed on 22 June 2003 ("the Schug Declaration").

2.3    I have been asked to review the above documents and address a number of matters concerning the Patent Specification:

2.3.1    Whether "the maximum plasma concentration ($C_{max}$) being from about 2.6 to 3.4 times the plasma concentration at 24 hours ($C_{24}$)" (as mentioned in claim 1 of the Patent Specification) is disclosed elsewhere in the Patent Specification;

2.3.2    comment on what information the Patent Specification contains in relation to the production of a formulation and its use as mentioned in claim 1 of the Patent Specification; and

2.3.3    comment on what the information in the Patent Specification informs me about the duration of effect of the formulations referred to as Example 1 and Example 3 in the Patent Specification.

I have done this and my comments are set out in this statutory declaration.

2.4    In this statutory declaration I refer to and discuss a number of documents. I am informed by the patent attorneys representing MM in these proceedings that a copy of each of the documents that I discuss in this declaration has already or will be separately filed and served in relation to this opposition.

- 5 -

## 3    THE PATENT SPECIFICATION

3.1    I am informed by the patent attorneys for MM that the Patent Specification claims an earliest priority date of 23 November 1993.

3.2    The Patent Specification describes a method of treating pain in human subjects by administration of a controlled release opioid formulation with 24 hour efficacy. Claim 1 in the Patent Specification reads:

> *A method of effectively treating pain in humans, comprising orally administering to a human patient on a once-a-day basis an oral sustained release opioid pharmaceutical composition comprising a plurality of inert pharmaceutical beads coated with an analgesically effective amount of an opioid analgesic, said opioid coated beads overcoated with an effective amount of at least one hydrophobic polymer selected from the group consisting of a pharmaceutically acceptable acrylic polymer, a hydrophobic cellulosic material, and combinations thereof, said pharmaceutical composition providing a time to maximum plasma concentration $T_{(max)}$ from about 2 to 8 hours and a maximum plasma concentration $C_{(max)}$ which is from about 2.6 to 3.4 times the plasma level of said opioid in said patient at 24 hours after single administration of the dosage form.*

3.3    Claim 1 in the Patent Specification relates to a method of treating pain in a human subject using a controlled release opioid formulation that is effective when administered once a day.    Claim 1 alone provides a substantial amount of information concerning the controlled release formulation in terms of:

(i)    its physical structure *i.e.* it is designed for oral administration and incorporates inert pharmaceutical beads coated with opioid and then overcoated with a controlled release coating with particular constituents; and

(ii)    its performance, *in vivo*, *i.e.* upon administration it releases its opioid in a way that enables once daily dosing and in a manner that results in a plasma concentration curve with a profile that reflects an effective amount of opioid 24 hours after administration, a $T_{(max)}$ from about 2 to 8 hours, a $C_{max}/C_{24}$ ratio of about 2.6 to 3.4 after single administration.

- 6 -

3.4    Based on the data in the Patent Specification, the formulations, referred to as Example 1 and Example 3 in the Patent Specification, meet the requirements set out in claim 1 in terms of the structure and performance characteristics I mention above at paragraph 3.3. Furthermore, there is other information in the Patent Specification that would assist me to produce and test a range of controlled release formulations according to claim 1 and have them assessed *in vivo* in patient trials to assess their performance. I will discuss this in more detail in the next section of my declaration.

## 4    THE SCHUG DECLARATION

4.1    I have been asked to read the Schug Declaration and comment on the matters it raises concerning the ratio of $C_{max}/C_{24}$ recited in the claims of the Patent Specification and what information the Patent Specification provides concerning the production of controlled release formulations for treating pain in human subjects when administered on a once a day basis according to claim 1 in the Patent Specification. I have done this and my comments are set out below.

$C_{max}/C_{24}$

4.2    In paragraph 18 of the Schug Declaration is a description of how the values of $C_{max}/C_{24}$ referred to were calculated for MS Contin® and Examples 1, 2 and 3 using the plasma concentration – time data in Table 6 and Table 13 of the Patent Specification. Table 6 contains mean (±SD) plasma concentration-time data obtained by averaging the plasma concentrations obtained in ten individual males who participated in the single dose, four-way crossover pharmacokinetic/pharmacodynamic trial described on page 30 to 32 of the Patent Specification. Similarly Table 13 contains mean (±SD) plasma concentration-time data obtained from averaging the data of thirteen individual males who participated in the single dose three-way crossover trial described on page 42 of the Patent Specification. Each individual subject of each trial had blood sampled at the twenty four hour time point, thus the mean values of $C_{24}$ calculated from the ten subjects of Table 6 and the thirteen subjects of Table 13 respectively are true mean values. However, $C_{max}$ values are not determined in the same way. Each of the ten individuals of the first trial and the thirteen individuals of the second trial would exhibit a unique $C_{max}$ which depends on individual pharmacokinetic determinants including at

-7-

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

PUR0912031

least gastrointestinal transit, rates of absorption, distribution and elimination.

4.3    The mean value of $C_{max}$ is correctly obtained by determining the individual values of $C_{max}$ and then determining the average. It is my understanding that such values of $C_{max}$ for MS Contin® (fasted), Example 2 (fasted), Example 1 (fasted) and Example 1 (fed) are shown in Table 7 of the Patent Specification. These values differ significantly from those obtained by Professor Schug on page 5 of the Schug Declaration from observation of the group mean plasma concentrations.

4.4    Similarly mean values of $C_{max}$ for the thirteen individuals who received MS Contin® (fasted) and Example 3 (fed) are, I believe, shown in Table 14 and are also significantly different from those obtained by Professor Schug on page 5 of the Schug Declaration. I have thus calculated values of $C_{max}/C_{24}$ for Examples 1 and 3 respectively using the $C_{max}$ values in Table 7 and Table 14 and the mean values of $C_{24}$ from Table 6 and Table 13 respectively and these are set out in the table hereunder at paragraph 4.5.

4.5    The formulations referred to as Examples 1 and 3 in the Patent Specification have a physical structure in accordance with claim 1 [see pages 28-30 and 40-42]. These formulations were administered to human subjects for clinical evaluation and performed in accordance with claim 1 as follows:

| Feature | Example 1 (values correct to one decimal point) | Example 3 (fed) (values correct to one decimal point) |
|---|---|---|
| $T_{max}$ 2-8 hours | 5.9 and 6.9 hours [Table 7] | 8.0 hours [Table 14] |
| $C_{max}/C_{24}$ | 3 and 3.4 | 2.6 |

- 8 -

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER                    PUR0912032

**Information in the Patent Specification concerning the production of controlled release formulations**

4.6    At November 1993, the general approach to the design of controlled release formulations was to:

    4.6.1    use information concerning the active agent such as dose, half-life, absorption etc and design and produce a range of formulations that would, theoretically, be expected to release the active agent at a rate and in a manner that would be suitable for use *in vivo*;

    4.6.2    assess the formulations *in vitro* to ascertain whether the formulations reproducibly release the active ingredient appropriately for *in vivo* purposes; and

    4.6.3    assess the formulations that pass the *in vitro* tests *in vivo* through the use of appropriately designed clinical trials.

4.7    The problem with the above process, that still exists today, is that although *in vitro* trials can be used as an initial screen they are not indicative of *in vivo* performance. Thus, the design of controlled release formulations generally involves the design and testing of multiple candidate formulations to arrive at a suitable formulation for use in human subjects.

4.8    I have been asked to comment on what controlled release opioid formulations, as referred to in claim 1 in the Patent Specification, I could have designed, produced and tested at November 1993 using the information in the Patent Specification and trials and experimentation that were routinely used by those in the controlled release formulation field at the time.

4.9    As I mentioned above, claim 1 provides information concerning the controlled release formulation administered to subjects on a once a day basis. In addition to the information in claim 1, other parts of the Patent Specification provide further information concerning the formulation as follows:

    4.9.1    a range of opioids are described at line 20, page 11 to line 29 page 12;

- 9 -

4.9.2  inert pharmaceutical beads are described at lines 11-14 on page 14;

4.9.3  hydrophobic overcoats that retard release of the active agent are described at line 24 page 14 to line 18 page 18;

4.9.4  approaches for modifying the release profile of a given formulation are described at: lines 24 page 14 to line 8 page 15; lines 19-29 on page 18; line 32 page 19 to line 8 page 20; line 34 page 20 to line 32 page 21; and line 15 page 25 to line 12 page 26.

4.10  With the above in mind at 23 November 1993, using the information in the Patent Specification, the following could have been completed without undue experimentation:

4.10.1  produce a range of opioid controlled release formulations that met the physical characteristics in claim 1 and included a controlled release coating that would have been expected to enable the formulations to meet the *in vivo* criteria in claim 1;

4.10.2  subject the candidate formulations to *in vitro* testing and select those that would have been likely to meet the *in vivo* criteria in claim 1; and

4.10.3  subject the candidate formulations selected from the previous step to *in vivo* testing to identify those that met the *in vivo* criteria ($T_{max}$, duration of effect and $C_{max}/C_{24}$) in claim 1.

4.11  Whilst the information in claim 1 of the Patent Specification is all that would have been required to carry out the above process at 1 July 1993, the information in the Patent Specification, concerning Examples 1 and 3, would also have assisted me in designing alternative formulations. Although both these formulations include an immediate release morphine component I could have used these formulations to design and test other formulations without an immediate release layer that would still meet the *in vivo* performance characteristics in claim 1.

4.12  Particular data concerning Examples 1 and 3 in the Patent Specification that would have been useful include the data from the clinical studies and

- 10 -

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER                    PUR0912034

the *in vitro* data in Tables 3 and 10 that I could have used as a guide for assessing other formulations *in vitro*.

**Duration of Effect**

4.13    I have also been asked to review the clinical data concerning Examples 1 and 3 in the Patent Specification and comment on whether they are indicative of the formulations being suitable for administration on a once a day basis. I have done this and my comments are provided hereunder.

Examples 1 and 3

4.14    Examples 1 and 3 were tested in clinical studies using MS Contin®, a controlled release morphine preparation that I understand can be used to effectively treat pain when administered every 8-12 hours, as the reference formulation or comparator. The data generated are contained, in part, in Tables 4-7, 11-14 and Figures 9 and 10.

4.15    Using the data in Tables 6 and 13 I have estimated the following morphine plasma concentrations.

| Morphine Formulation/time point | Morphine Plasma Concentration (ng/ml) | Source of data |
|---|---|---|
| MS Contin® at 12 hours | 1.7 (fasted) | Table 6 |
| Example 1 at 24 hours | 1.7 (fed) 1.8 (fasted) | Table 6 |
| MS Contin® at 12 hours | 1.58 (fasted) | Table 13 |
| Example 3 at 24 hours | 2.1 (fed) | Table 13 |

4.16    The data in the above table show that the 24 hour morphine plasma levels in subjects receiving Example 1 or 3 were the same or higher than the 12 hour morphine plasma levels in subjects receiving MS Contin®. On the basis that MS Contin® is effective for up to 12 hours, I believe the data provide good evidence that the formulations of Example 1 and 3 have an extended therapeutic duration of effect of about 24 hours.

- 11 -

4.17   Furthermore, the data concerning Examples 1 and 3 are based on 30mg of morphine.   If higher morphine plasma levels were desired using the formulations of Example 1 or 3 this could be achieved by increasing the dose of morphine in the formulation.   I was unaware of the formulations of Examples 1 and 3 at 23 November 1993, but had I been aware and had access to the other information and data in the Patent Specification, preparing a controlled release formulation with an increased amount of morphine, relative to the formulation of Example 1 or 3, to achieve higher morphine plasma levels over a 24 hour period would have been a reasonably simple exercise.

AND I make this solemn declaration by virtue of the Statutory Declarations Act, 1959 and subject to the penalties provided by that Act for the making of false statements in statutory declarations, conscientiously believing the statements contained in this declaration to be true in every particular.

DECLARED at: Sydney, New South Wales this 1st day of June 2005

**KENNETH FREDERICK BROWN**

BEFORE me:

**Philip Kerr**
**Solicitor**
**The Chifley Tower**
**2 Chifley Square**
**Sydney NSW 2000**

- 12 -

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER                PUR0912036

COMMONWEALTH OF AUSTRALIA

*(Patents Act 1990)*

**IN THE MATTER OF:** Australian
Patent Application 735113 (87145/98).
In the name of: Mundipharma Medical
GmbH

**- and -**

**OPPOSITION THERETO BY:**
Grunenthal GmbH under Section 59 of
the Patents Act.

**ANNEXURE**

This is Annexure KFB-1 referred to in my Statutory Declaration made this 1st
day of June 2005.

_____
**KENNETH FREDERICK BROWN**

WITNESS:    _____

**Philip Kerr**
**Solicitor**

_____
**Allens Arthur Robinson**
**Patent & Trade Marks Attorneys**
Chifley Tower          DX 105 Sydney
2 Chifley Square       Tel 02 9230 4000    Fax 02 9230 5333
Sydney, NSW, 2000      Ref 205465059

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER    PUR0912037



**Present Address**         209 Burraneer Road, Coomba, NSW. 2428

**Date & Place of Birth**  12 February 1942, Goulburn, NSW. Australia


**Degrees**                BPharm, University of Sydney, 1963

                           MPharm, University of Sydney, 1965

                           PhD, University of Sydney, 1968


**Present Activities**     Consultant Pharmaceutical Scientist in Pharmaceutics – part time

**Positions Held**

1992-Apr 2000:  Professor of Pharmaceutics, Faculty of Pharmacy, College of Health
                Sciences, University of Sydney

1988-1992       Medical and Technical Director, 3M Pharmaceuticals, 3M Health Care
                Group, 9-15 Chilvers Road, Thornleigh NSW 2120

1976-1988       Senior Lecturer in Pharmaceutics, Department of Pharmacy, University of
                Sydney

1969-1976       Lecturer in Pharmaceutics, Department of Pharmacy, University of Sydney

1968            Postdoctoral Research Fellow, Department of Pharmaceutics, State
                University of New York at Buffalo, NY, USA

1966-1967       Research Student, supported by the Pharmaceutical Society of NSW,
                Research Trust, University of Sydney

1963-1965       Teaching Fellow, Department of Pharmacy, University of Sydney

## Overseas Experience

| | |
|---|---|
| 1988-1992 | While employed by 3M Pharmaceuticals, numerous overseas trips of 2 to 3 weeks duration for global R&D planning meetings in USA, and UK, Auckland, Tokyo, Singapore, Bangkok and Manila. |
| 1985 | Visiting Scientist (6 months), Departement de Pharmacologie, Faculte de Medecine, Universite de Paris XII, Creteil, Paris, France (0.5 yr) |
| 1975 | Visiting Lecturer, School of Pharmacy, University of Manchester, UK (1 yr) |
| 1968 | Postdoctoral Fellow, Department of Pharmaceutics, SUNY, Buffalo, NY, USA (1 yr) |

## Specialist Fields

Physical pharmaceutics; solids, liquids, disperse systems, surface chemistry;

Design, formulation and evaluation of pharmaceutical dosage forms;

Biopharmaceutics; pharmacokinetics; drug metabolism;

Inhalation aerosols;

Topical therapies;

Immunosuppressants.

## Specific Research Areas

Inhalation drug delivery;

Biopharmaceutics, drug metabolism and pharmacokinetics of inhaled glucocorticoids;

Clinical pharmaceutics of immunosuppressant drugs in transplant recipients;

Plasma protein, blood binding of drugs and their influences on drug disposition;

Interactions between drugs and macromolecules of synthetic and biological origin;

Dissolution kinetics of drugs from solid oral dosage forms.

## Research Supervision

I have supervised the research projects of twelve PhD graduates and co-supervised a further five PhD students and numerous MSc candidates.

## Industry Experience

While employed at 3M Pharmaceuticals I was responsible for all technical and medical matters for the support of the company's marketed products and the development of new products for Australia, New Zealand and South East Asia. At the time of my resignation in 1992 I was manager of a department of 27 staff in 4 subsidiary departments.

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

3

## Memberships

I have been a long term member of the following:

Pharmaceutical Society of Australia

Australasian Pharmaceutical Science Association (President 1992-1998)

Australasian Society for Clinical and Experimental Pharmacology and Toxicology

Australian Society for Medical Research

University of Sydney Club (President 1994)

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

4

# PUBLICATIONS

## Research Articles

1.  Bjaastad, S.G. F, Brown, K.F. (1964). Z-Values and the solubilization of camphor by Tween 20. *Aust. J. Pharm.*, **45**, Suppl. 116s-117s.

2.  Mitchell, A.G., Brown, K.F. (1966). Interaction of preservatives with cetomacrogol. *J. Pharm. Pharmac.*, **18**, 115-125.

3.  Brown, K.F., Guttman, D.E. F, Anderson, A.S. (1969). Interference by surface-active agents with the 4-aminoantipyrine determination of hexachlorophene and other phenols. *J. Pharm. Sci.*, **58**, 1393-1398.

4.  Crooks, M.J., Brown, K.F. (1973). A note on the solubilization of preservative mixtures by cetomacrogol. *J. Pharm. Pharmac.*, **25**, 281-284.

5.  Brown, K.F., Crooks, M.J. (1973). Dynamic dialysis method for estimating the binding of preservatives to nonionic surfactants. *Pharm. Acta Helv.*, **48**, 494-503.

6.  Crooks, M.J., Brown, K.F. (1973). Binding of sulphonylureas to serum albumin. *J. Pharm. Sci.*, **62**, 1904-1906.

7.  Crooks, M.J., Brown, K.F. (1974). Competitive interactions of preservative mixtures with cetomacrogol. *J. Pharm. Pharmac.*, **26**, 235-242.

8.  Crooks, M.J., Brown, K.F. (1974). Interaction of chloroxylenol and methyl p-hydroxybenzoate with sodium lauryl sulphate. *Aust. J. Pharm. Sci.*, **NS 3**, 93-94.

9.  Crooks, M.J., Brown, K.F. (1974). Interaction of sulphonylureas with serum albumin. *J. Pharm. Pharmac.*, **26**, 304-311.

10. Brown, K.F., Crooks, M.J. (1974). Binding of sulphonylureas to serum albumin I I. The influence of salt and buffer composition on tolbutamide and glyburide. *Canad. J. Pharm. Sci.*, **9**, 75-77.

11. Page, M.A., Anderson, R.A., Brown, K.F., Roberts, M.S. (1974). The availability of sodium salicylate from enteric coated tablets. *Aust. J. Pharm. Sci.*, **NS 3**, 95-99.

12. Crooks, M.J., Brown, K.F. (1975). Interaction of glipizide with human serum albumin. *Blochem. Pharmacol.*, **24**, 298-299.

13. Veng Pederson, P., Brown, K.F. (1975). Dissolution profile in relation to initial particle distribution. *J. Pharm Sci.*, **64**, 1192-1195.

14. Veng Pederson, P., Brown, K.F. (1975). Size distribution effects in multiparticulate dissolution. *J. Pharm. Sci.*, **64**, 1981-1986.

15. Veng Pederson, P., Brown, K.F. (1976). Isotropic dissolution of non-spherical particles. *J. Pharm. Sci.*, **65**, 1437-1442.

16. Veng Pederson, P., Brown, K.F. (1976). Experimental evaluation of three single-particle dissolution models for multiparticulate systems. *J. Pharm. Sci.*, **65**, 1442-1447.

5

17.  Brown, K.F., Crooks, M.J. (1976). Displacement of tolbutamide, glibenclamide and chlorpropamide from serum albumin by anionic drugs. *Biochem. Pharmacol.*, **25**, 1175-1178.

18.  Veng Pederson, P., Brown, K.F. (1977). General class of multiparticulate dissolution models. *J. Pharm. Sci.*, **66**, 1435-1438.

19.  Veng Pederson, P., Crooks, M.J. & Brown, K.F. (1977). Method of obtaining drug-macromolecule binding parameters from dynamic dialysis data. *J. Pharm. Sci.*, **66**, 1458-1461.

20.  Whitlam, J.B., Crooks, M.J., Brown, K.F., Veng Pederson, P. (1979). Binding of nonsteroidal anti-inflammatory agents to proteins. I. ibuprofen-serum albumin interaction. *Biochem. Pharmacol.*, **28**, 678-683.

21.  Whitlam, J.B., Brown, K.F. (1980). Computation of multiclass drug protein binding parameters. *Internat. J. Pharm.*, **5**, 49-58.

22.  Whitlam, J.B., Brown, K.F. Crooks, M.J., Room, G.R.W. (1981). Transsynovial distribution of ibuprofen in arthritic patients. *Clin. Pharmacol. Ther.*, **29**, 487-492.

23.  Whitlam, J.B., Brown, K.F. (1981) Ultrafiltration in serum protein binding determinations. *J. Pharm. Sci.*, **70**, 146-150.

24.  Ridd, M.J., Brown, K.F., Moore, R.G., McBride, W.G., Nation. R.L. (1982). Diazepam plasma binding in the perinatal period: Influence of nonesterified fatty acids. *Eur. J. Clin. Pharmacol.*, **22**, 153-160.

25.  Ridd, M.J., Brown, K.F., Moore, R.G., Nation, R.L. (1982). Drug plasma binding and nonesterified fatty acids: Methodologic considerations. *Internat. J. Pharmaceutics*, 11, 11-20.

26.  Walker, J.S., Shanks, C.A., Brown, K.F. (1983). Determinants of d-tubocurarine plasma protein binding in health and disease. *Anesth. Analg.*, **62**, 870-874.

27.  Shanks, C.A., Ramzan. M.I., Walker, J.S., Brown, K.F. (1983). Gallamine disposition in open-heart surgery involving cardiopulmonary bypass. *Clin. Pharmacol. Ther.*, **33**, 792-799.

28.  Walker, J.S., Shanks, C.A., Brown, K.F. (1983). Alcuronium kinetics and plasma concentration-effect relationship. *Clin. Pharmacol. Ther.*, **33**, 510-516.

29.  Walker, J.S., Shanks, C.A., Brown, K.F. (1983). Alcuronium kinetics in patients undergoing cardiopulmonary bypass surgery. *Brit. J. Clin. Pharmacol.*, **15**, 237-244.

30.  Asali, L.A., Nation, R.L., Brown, K.F. (1983). Determination of naloxone in blood by high-performance liquid chromatography. *J. Chromatog. Biomed. Applic.*, **278**, 329-335.

31.  Ridd, M.J., Brown, K.F., Nation, R.L., Collier, C.B. (1983). Differential transplacental binding of diazepam: Causes and implications. *Euro. J. Clin. Pharmacol.*, **24**, 595-601.

32.  Pearce, G.A., Brown, K.F. (1983). Heat inhibition of *in vitro* lipolysis and $^{14}$C-ibuprofen protein binding in plasma from heparinized uraemic subjects. *Life Sciences,* 33, 1457-1466.

33.  Walker, J.S., Shanks, C.A., Brown, K.F. (1984). Altered disposition of d-tubocurarine during cardiopulmonary bypass surgery. *Clin. Pharmacol. Ther.*, **35**, 686-694.

34.  Asali, L.A., Brown, K.F. (1984). Protein binding of naloxone in adult and foetal plasma. *Euro. J. Clin. Pharmacol.*, **27**, 459-463.

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

35. Evans, M.A., Shanks, C.A., Brown, K.F., Triggs, E.J. (1985). Pharmacokinetic and pharmacodynamic modelling with pancuronium. *Euro. J. Clin. Pharmacol.*, **26**, 243-250.

36. Gross, A.S., Brown, K.F. (1985). Plasma protein binding of ritodrine in Nnonpregnant women and at parturition. *Euro. J. Clin. Pharmacol.*, **28**, 479-481

37. Evans, M.A., Brown, K.F., Imperial, E., Triggs, E.J. (1985). Pharmacokinetics of tocainide hydrochloride in healthy volunteers and elderly patients with ventricular arrhythmias. *J. Pharm. Pharmac.*, **37**, suppl. 38P.

38. Tett, S.E., Cutler, D.J., Brown, K.F. (1985). HPLC assay of hydroxychloroquine and metabolites in blood and plasma. *J. Chromatog. Biomed. Applic.*, **344**, 241-248.

39. Tett, S.E., Cutler, D.J., Brown, K.F. (1986). Removal of an endogenous fluorescent compound from urine to allow quantification of low concentrations of hydroxychloroquine and metabolites by HPLC. *J. Chromatog. Biomed. Applic.*, **383**, 236-238.

40. Gross, A.S., Brown, K.F., Lambert, J.A., Nation, R.L. (1987). Determination of ritodrine hydrochloride in blood and plasma by high-performance liquid chromatography with fluorescence detection. *J. Chromatoq: Biomed Applic.*, **416**, 400-408.

41. Walker, J.S., Shanks, C.A., Borton, C., Brown, K.F. (1987). Alcuronium pharmacodynamics in dogs: effect-concentration relationships in the diaphragmatic and limb muscles. *J. Pharm. Pharmac.*, **39**, 614,-620.

42. Tett, S.E., Cutler, D.J., Day, R.O., Brown, K.F. (1988). Dose ranging study of the pharmacokinetics of hydroxychloroquine following intravenous administration to healthy volunteers. *Brit. J. Clin. Pharmacol.*, **26**, 303-315.

43. Tett, S.E., Cutler, D.J., Day, R.O., Brown, K.F. (1989). Bioavailability of hydroxychloroquine tablets in healthy volunteers. *Brit. J. Clin. Pharmacol.*, **27**, 771-779.

44. Ridd, M.J., Brown, K.F., Nation, R.L. & Collier, C.B. (1996). The Disposition and Placental Transfer of Diazepam in Caesarean Section. *Clin. Pharmacol. Ther.*, **45**, 506-512.

45. Li, Y.N, Tattam, B. Brown, K.F., Seale, J.P. (1996). Determination of epimers 22R and 22S of budesonide in human plasma by high-performance liquid chromatography-atmospheric pressure chemical ionization mass spectrometry. *Journal of Chromatography B: Biomedical Applications*, **683**, 259-268.

46. Akhlaghi, F., McLachlan, A., Keogh, A., Brown, K. F. (1997). Effect of simvastatin on cyclosporine unbound fraction and apparent blood clearance in heart transplant *recipients*. *Br. J. Clin. Pharmacol.*, **44**, 537-542.

47. Li, Y.N,. Tattam, B.N., Brown, K.F., Seale, J.P. (1997). A sensitive method for the quantification of fluticasone propionate in human plasma by high-performance liquid chromatography/atmospheric pressure chemical ionisation mass spectrometry. *Journal of Pharmaceutical & Biomedical Analysis.*, **16**, 447-452.

48. Foe, K., Brown, K.F., Seale, J.P. (1998). Decomposition of beclomethasone propionate esters in human plasma. *Biopharmaceutics & Drug Disposition*, **19**, 1-8.

49. Foe, K., Cheung, H.T., Tattam, B.N., Brown, K.F., Seale, J.P. (1998). Degradation products of beclomethasone dipropionate in human plasma. *Drug Metabolism & Disposition*, **26**, 132-137.

50.   Akhlaghi, F., Ashley, J.J., Keogh, A., Brown, K.F. (1998). Indirect estimation of the unbound
      fraction of cyclosporine in plasma. *Therapeutic Drug Monitoring*, **20**, 301-308.

51.   Smith, K.J., Chan, H.-K., Brown, K.F. (1998). Influence of flow rate on aerosol particle size
      distributions from pressurized and breath-actuated inhalers. *Journal of Aerosol Medicine*, **11**,
      231-245.

52.   Akhlaghi, F., Keogh, A., Brown, K.F. (1999). Unbound cyclosporine and allograft rejection
      after heart transplantation. *Transplantation*, **67**, 54-59.

53.   Akhlaghi, F., Ashley, J.J., Keogh, A., Brown, K.F. (1999). Cyclosporine plasma unbound
      fraction in heart and lung transplant recipients. *Therapeutic Drug Monitoring*, **21,** 8-16

54.   Namkung-Matthai, H., Seale, J.P., Brown, K., Mason, R. (1999). Comparative effects of anti-
      inflammatory corticosteroids in human bone-derived osteoblast-like cells. *European
      Respiratory Journal*, In press (accepted August 9, 1998)

55.   Feddah, M., Brown, K.F., Gipps, E., Davies, N. (2000). In-vitro characterisation of metered
      dose inhaler versus dry powder inhaler glucocorticoid products: Influence of inspiratory flow
      rates. *Journal of Pharmacy and Pharmaceutical Sciences*, 3, (3): 317-324.

56.   Foe, K., Cutler, D.J., Brown, K.F., Seale, J.P. (2000). Metabolism kinetics of beclomethasone
      propionate esters in human lung homogenates. *Pharmaceutical Research*, **17**, (8), 1007-
      1012.

57.   Seeto, C., Namkung-Matthai, H., Jayrams, S., Foe, K., Brown, K.F, Hughes, J.M, Mason, R.,
      Armour, C., Seale, J.P. (2000). Differential potency of beclomethasone esters *in vitro* on
      human T-lymphocye cytokine production and osteoblast activity. Journal of Pharmacy and
      Pharmacology, **52**, (4), 417-423.

58.   Foe, K., Brown, K.F, Seale, J.P. (2000). Comparative kinetics of metabolism of
      beclomethasone propionate esters in human lung homogenates and plasma. *Journal of
      Pharmaceutical Sciences*, **89**, (9), 1143-1150.

59.   Minto, C., Li, Y.N., Tattam, B., Brown, K., Seale, J.P, Donnelly, R. (2000). Pharmacokinetics
      of epimeric budesonide and fluticasone propionate after repeat dose inhalation – intersubject
      variability in systemic absorption from the lung. *British Journal of Clinical Pharmacology,* **50**,
      116-124.

60.   Feddah, M.R., Brown, K.F. Gipps,E M., Davies, N.M. (2000). In-vitro characterisation of
      metered-dose inhaler versus dry powder inhaler glucocorticoid products: Influence of
      inspiratory flow rates. *Journal of Pharmacy and Pharmaceutical Sciences,* **3,** 317- 324

61.   Teng, X.W., Foe, K., Brown, K.F, Cutler, D.J, Davies, N.M. (2001). High performance liquid
      chromatographic analysis of mometasone furoate and its degradation products. Application
      to *in vitro* degradation studies. *Journal of Pharmaceutical and Biomedical Analysis*, **26,** 313-
      319.

62.   Li, Y., Tattam, B., Brown, K.F., Seale, J.P. (2001). Simultaneous quantification of epimeric
      budesonide and fluticasone propionate by liquid chromatography atmospheric pressure
      chemical ionisation tandem mass spectrometry. *Journal of Chromatography:* **B, 761***, 177-185*

8

63. Feddah, M.R , Brown, K.F , Gipps, E.M., Davies, N.M. (2001) Influence of respiratory spacer devices on aerodynamic particle size distribution and fine particle mass from beclomethasone metered dose inhalers *Journal of Aerosol Medicine,* **14,** (4) 477-485

64. Zahir, H., Nand, R.A., Brown, K.F., Tattam, B.N., McLachlan, A.J. (2001) Validation of methods to study the distribution and protein binding of tacrolimus in blood. *J. Pharmacol Toxicol Methods* **46,** 27-35

## Reviews

65. Brown, K.F. (1970). Pharmaceutical reviews, 1969. *Aust. J. Pharm.,* **51,** suppl. s49-s54.

66. Brown, K.F. (1971). Anaemias and their treatment. *Aust. J. Pharm.,* **52,** 449-453.

67. Brown, K.F. (1971). Pharmaceutical reviews, 1970. *Aust. J. Pharm.,* **52,** suppl. s33-s39.

## Abstracts and Presentations

1. Brown, K.F., Bjaastad, S.G. (1963). Measurement of z-values in solutions of nonionic surfactants, ANZAAS, Canberra.

2. Brown, K.F., Mitchell, A.G. (1966). Interaction of preservatives with cetomacrogol, ANZAAS, Melbourne.

3. Brown, K.F., Guttman, D.E., Anderson, A.S. (1969). Interference by colloidal materials with the 4-aminoantipyrine colorimetric method for estimating phenols, ANZAAS, Adelaide.

4. Brown, K.F. (1971). Some biopharmaceutical implications of complexation, ANZAAS., Brisbane.

5. Crooks, M.J., Brown, K.F. (1971). Interaction of preservative mixtures with a nonionic surfactant, ANZAAS, Brisbane.

6-8. I co-authored three papers presented by others at ANZAAS in Perth (1973).

9. Brown, K.F., Elworthy, P.H. (1977). Fluorescent probes in surfactant systems, Aust. Pharm. Sci. Assoc., Melbourne.

10. Whitlam, J.B., Crooks, M.J., Brown, K.F. (1977). Studies on serum protein binding of ibuprofen, Aust. Pharm. Sci. Assoc., Melbourne.

11. Whitlam, J.B., Brown, K.F. (1979). Ultrafiltration and equilibrium dialysis - their reliability in whole serum binding, Aust. Sci. Clin. Exp. Pharmacol., Otago, NZ.

12. Ridd, M.J., Moore, R.G., Brown, K.F., McBride, W.G. (1979). Influence of labour on the plasma protein binding of diazepam in humans, Aust. Sci. Clin. Pharmacol., Otago, NZ.

13. *Brown, K.F. (1979) Dissolution methodology. Invited lecture to National Symposium on Dissolution Testing conducted by Aust. Pharm. Sci. Assoc., (Nov.)

14. Olsen, W.A ,Brown, K.F. (1980) Dynamic dialysis of aqueous chlorhexidine diacetate solutions. Abstract *Aust. J. Pharm. Sci.,* **9,** 54.

15. Brown, K.F., Ridd, M.J , Nation, R.L., Moore, R.G., McBride, W.G. (1980) Diazepam binding

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER                    PUR0912045

in the plasma of parturient women. Abstract *Aust. J. Pharm. Sci.,* **9**, 56.

16.  Whitlam, J.B., Brown, K.F., Crooks, M.J. (1980) Transsynovial distribution of ibuprofen in arthritic patients. Abstract *Aust. J. Pharm. Sci.,* **9**, 58.

17.  Pearce, G.A., Brown, K.F. (1981) Plasma binding of ibuprofen in uraemia and haemodialysis. Abstract *Aust. J. Pharm. Sci.,* **10**, 47.

18.  Whitlam, J.B., Brown, K.F. (1981) Thermodynamic analysis of arylpropionic acid anti-inflammatory drug interactions with human serum albumin. Abstract *Aust. J. Pharm. Sci.,* **10**, 46.

* invited presentation

19.  Ridd, M.J., Brown, K.F., Moore, R.G., Nation, R.L. (1981) Artefacts in blood and plasma handling in binding methods. Abstract *Aust. J. Pharm. Sci.,* **10**, 46.

20.  Walker, J.S., Shanks, C.A., Brown, K.F. (1981) Alcuronium kinetics during cardiopulmonary bypass. Abstract *Aust. J. Pharm. Sci.,* **10**, 49.

21.  Pearce, G.A., Brown, K.F., Roberts, D.C.K. (1982) Heparin activated lipolysis in haemodialysis and quinidine plasma binding. Aust. Pharm. Sci. Assoc., Sydney.

22.  Olsen, W.A., Brown, K.F. (1982) Dialysis kinetics of chlorhexidine salts in aqueous solutions of electrolytes. Aust. Pharm. Sci. Assoc., Sydney.

23.  Asali, L.A., Brown, K.F., Nation, R.L. (1982) Analysis of naxolone in the blood of apnoeic infants. Aust. Pharm. Sci. Assoc., Sydney.

24.  Roberts, D.C.K., Pearce, G.A., Brown, K.F. (1982) Uraemic hypertriglyceridaemia:associations with drug binding. Australian Atherosclerosis Group, 9th Annual Scientific Meeting, Melbourne, May.

25.  Gross, A.S., Brown, K.F. (1983) Plasma protein binding of ritodrine. Aust. Pharm. Sci. Assoc., Perth.

26.  Asali, L.A., Brown, K.F. (1983) Naxolone binding in adult and foetal plasma. Aust. Pharm. Sci. Assoc., Perth.

27.  Asali, L.A., Brown, K.F., Handelsman, D.J., Fiamer, H.E. (1984) Absence of cardiovascular effects of high dose naxolone in healthy and uraemic subjects. Aust. Soc. Clin. Exp. Pharmacol. Melbourne.

28.  Gross, A.S., Baird-Lambert, J.A., Brown, K.F. (1985) Distribution of ritodrine in whole blood at parturition. Aust. Soc. Clin. Exp. Pharmacol., Brisbane (1985).

29.  Tett, S.E., Cutler, D.J., Brown, K.F., Day, R.O. (1985) Hydroxychloroquine pharmacokinetics:the importance of experimental design. Aust. Pharm. Sci. Assoc., Brisbane.

30.  Brown, K.F., Evans, M.A., Imperial, E., Triggs, E.J. (1985) Pharmacokinetics of tocainide hydrochloride in healthy volunteers and elderly patients with ventricular arrhythmias. Presented to Brit. Pharm. Conf., Leeds (Sept.).

31. * Research Seminar: Drug plasma protein binding and its influence on the distribution of ibuprofen and diazepam. Departement de Pharmacologie, Faculte de Medecine, Universire de Paris XII, Creteil, Paris (Nov 1985) [contact Prof. J.P. Tillement].

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

32.  Research Seminar: Drug plasma protein binding: The influence of stress and disease conditions. School of Pharmacy, University of Leuven, B-3000 Leuven, Belgium (Dec. 1985) [contact Prof. Renaat Kinget, Campus,G. asthuisberg O & N].

33. * Research Seminar: (Title as for 32), School of Pharmacy, Brighton Polytechnic, Brighton, UK (13th Jan. 1986) [contact Dr C. Marriott].

34.  Research Seminar: (Title as for 32), School of Pharmacy, the University of Bath,Bath, UK (l4th Jan. 1986) [contact Prof. John Rees].

* invited presentation

35. * Research Seminar: (Title as for 32), The Welsh School of Pharmacy, University of Cardiff, UK (17th Jan. 1986) [contact Prof. I. Kellaway].

36. * Drug plasma protein binding in disease and pregnancy.  Conference on Albumin Structure and Function, Department of Pharmaceutical Chemistry, School of Pharmacy, University of Utrecht 113th Feb. 1986) [organiser Prof. L.H.M. Janssen].

37. * Research Seminar: (Title as for 32), Faculte de Farmacie, Laboratoire de Biophysique, Universite d'Aix-Marseille 2, Marseille, France, 17th Feb. 1986 as part of a 2 day visit [contact Prof. Claudette Briand].

38. * Brown, K.F. Influence of disease and stress conditions on the plasma protein binding of drugs. General overview presented to Alumni Association, Pharmacy Practice Foundation, University of Sydney (10th June, 1986).

39. * Brown, K.F. Methodology for the determination of plasma drug concentrations. Presentation to IVth Annual Symposium on Advances in Therapeutic Drug Monitoring, Sebel Town House. Organised by the Department of Clinical Pharmacology, University of New South Wales (October, 1986).

40. * Brown, K.F.  Dissolution testing – Why bother?  Does 'bio-inequivalence' exist? Presentation to Symposium on Questions in Pharmaceutical Analysis. Roy. Aust. Chem. Inst., Pharm, Sci, Grp.. (25th March, 1987).

41.  Tett, S.E., Cutler, D.J., Brown, K.F., Day, R.O. (1987) Bioavailability of hydroxychloroquine. IUPHAR – World Congress of Pharmacology – Sydney, August.

42.  Li, Y.N., Tattam, B., Brown, K.F., Seale, J.P.  Determination of 22R,S epimers of glucocorticosteroid budesonide in human plasma by HPLC, *Proceedings of the Australasian Society of Clinical & Experimental Pharmacologists and Toxicologists (ASCEPT),* December, 1994, Auckland, New Zealand.

43.  Li, Y.N., Tattam, B, Brown, K.F., Seale, J.P. Plasma protein binding of glucocorticosteroid budesonide. *Australasian Pharmaceutical Science Association (APSA),* December, 1994, Auckland, New Zealand.

44.  Li, Y.N., Tattam, B., Brown, K.F., Seale, J.P.  Determination of (22R,S) budesonide in human plasma by liquid chromatography-atmospheric chemical ionization mass spectrometry. *Proceedings of the Australasian Society of Clinical & Experimental Pharamcologists and Toxicologists (ASCEPT),* December, 1995, Adelaide, Australia.

45.  Foe, K. and Brown, K. F. A kinetic study of the degradation of beclomethasone propionate esters *in vitro.*  Oral presentation, *The Australian Pharmaceutical Associations (APSA)*

*Scientific Meeting*, December 1995, Adelaide, Australia. Abstract published in *The Australian Journal of Hospital Pharmacy*, **26**, 511 (1996).

46. Li, Y.N., Tattam, B., Brown, K.F., Seale, J.P. A sensitive method for quantification of fluticasone propriate in human plasma by high-performance liquid chromatograph-atmospheric chemical ionization mass spectrometry. *Australasian Pharmaceutical Science Association (APSA)*, December, 1996, Melbourne, Australia.

\* invited presentation

47. Foe, K., Tattam, B., Cheung, H.T., Seale, J.P., Brown, K.F. Identification and characterisation of degradation products of beclomethasone dipropionate in human plasma. Poster presentation, *The Australasian Pharmaceutical Science Association (APSA) Scientific Meeting*, December, 1996, Melbourne, Australia. Abstract published in *The Australian Journal of Hospital Pharmacy*, **26**, (suppl. 1), S46 (1996).

48. Winning, J., Awad, V., Campbell, D., Brown, K.F. Current research-syringe driver admixtures. Policy and Practice. *South-Eastern Region Branch of the Association of Palliative Care Nurses Conference* Diversity in palliative care. Held at Rydges Resort Eagle Hawk Hill, Canberra, 6th December 1996.

49. Awad, V., Brown, K.F., Campbell, D., Winning, J. The stability and compatibility of morphine sulphate injection and other injectable drugs used in palliative care. *Australian Journal of Hospital Pharmacy*, **26**, (suppl 1), December 1996.

50. Winning, J., Awad, V., Campbell, D., Brown, K.F. The stability and compatibility of injectable drug combinations in palliative care: Rational guidelines for use. *Australian Association for Hospice and Palliative Care Inc.* 4th National Conference, National Convention Centre, Canberra, 17-19th September 1997.

51. Awad, V., Brown, K.F., Campbell, D., Winning, J., The stability and compatibility of morphine sulphate with injectable drug formulations used by subcutaneous infusion in palliative care. *Australian Society of Hospital Pharmacists,* 23rd Federal Conference, Adelaide, 13-17th November 1997

52. Li, Y.N., Tattam, B., Brown, K.F., Seale, J.P. Pharmacokinetic profiles of epimeric budesonide and fluticasone propionate in healthy subjects. *Australasian Pharmaceutical Science Association (APSA),* December 1997, Sydney, Australia.

53. Foe, K., Brown, K.F , Seale, J.P. Comparative kinetics of metabolism of beclomethasone propionate esters in human plasma and lung cytosol *in vitro*. Oral presentation, *The Australasian Pharmaceutical Science Association (APSA) Scientific Meeting*, December 1997, Sydney, Australia. Abstract published in *The Scientific Program and Abstracts Book of APSA*, **35** (1997).

54. Foe, K., Cutler, D.J., Brown, K.F., Seale, J.P. Kinetics of beclomethasone propionate esters in human lung cytosol *in vitro*. Oral presentation, *The Australasian Society of Clinical and Experimental Pharmacologists and Toxicologists (ASCEPT) 31st Annual Scientific Meeting*, December 1997, Canberra, Australia. Abstract published in *The Proceedings of ASCEPT*, **4**, 36 (1997).

55. Foe, K., Cutler, D.J., Brown, K.F., Seale, J.P. Interindividual variability in activation of

12

beclomethasone dipropionate in human lung cytosol *in vitro*. Poster presentation, *The Thoracic Society of Australia & New Zealand (TSANZ) Annual Scientific Meeting,* March 1998, Adelaide, Australia. Abstract published in *The Program and Abstracts Book of TSANZ,* P23 (1998).

56. Brown, K.F., Foe, K., Cutler, D.J., Seale, J.P. Metabolism kinetics at beclomethasone propionate esters in human plasma and lung cytosol *in vitro*. Oral presentation, *2nd World Meeting on Pharmaceutics, Biopharmaceutics and Pharmaceutical Technology APGI/APV,* May 1998, Paris, France.

57. Teng, X.W., Foe, K., Brown, K.F. Investigations of metabolism kinetics of mometasone furoate in human lung and plasma *in vitro*. Oral presentation, *The College of Health Sciences and The Medical Foundation Research Conference,* October 1998, Leura, Australia

58. Foe, K., Brown, K.F., Seale, J.P. Metabolism kinetics of beclomethasone propionate esters in human liver and lung *in vitro*. Oral presentation, *The College of Health Sciences and The Medical Foundation Research Conference,* October 1998, Leura, Australia. Abstract published in *The Conference Book,* 23-25, (1998).

59. Foe, K., Cutler, D.J., Brown, K.F., Seale, J.P. Characterisation of the kinetics of beclomethasone propionate esters in human liver *in vitro*. Oral presentation, *Conjoint Meeting of the The Australasian Society of Clinical and Experimental Pharmacologists and Toxicologists (ASCEPT) and The Australasian Pharmaceutical Association (APSA),* December 1998, Hobart, Australia. Abstract published in *The Proceedings of ASCEPT,* 5, 34, (1998).

60. Foe, K., Cutler, D.J., Brown, K.F. Seale, J.P. Comparative metabolism kinetics of beclomethasone propionate esters in human liver, lung and plasma *in vitro*. Oral presentation, *Conjoint Meeting of the The Australasian Society of Clinical and Experimental Pharmacologists and Toxicologists (ASCEPT) and The Australasian Pharmaceutical Association (APSA),* December 1998, Hobart, Australia. Abstract published in *The Proceedings of ASCEPT,* 5,62, (1998).

61. Teng, X.W., Foe, K., Brown, K.F. Metabolism kinetics of mometasone furoate in human lung and human plasma *in vitro*. Poster presentation, *Conjoint Meeting of the The Australasian Society of Clinical and Experimental Pharmacologists and Toxicologists (ASCEPT) and The Australasian Pharmaceutical Science Association (APSA),* December 1998, Hobart, Australia. Abstract published in *The Proceedings of ASCEPT,* 5, 101 (1998).

62. Foe, K., Brown, K.F., Seale, J.P. Metabolism kinetics of beclomethasone propionate esters in the homogenates of human lung and liver, whole blood and plasma *in vitro*. Poster presentation, *The Thoracic Society of Australia & New Zealand (TSANZ) Annual Scientific Meeting,* March 1999, Canberra, Australia. Abstract published in *Respirology,* 4 (suppl.), A26 (1999).

In addition to those listed above, I have presented research seminars to the Departments of Pharmacy at the Universities of Manchester, Queensland and Tasmania, Department of Pharmacology, and the Heart Research Institute, University of Sydney and the Departments of Biomedical Engineering and Clinical Pharmacology at the University of New South Wales. I have been a member of the NH&MRC's panel of assessors and I have served as referee for a number of journals including J. Pharmacokin. Biopharm., J. Pharm. Pharmac., Life Sciences, Aust. J. Pharm. Sci. and Aust. J. Hosp. Pharm.

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

13

I was President of the Australasian Pharmaceutical Science Association from 1992 to 1998 and was convenor of the organising committee of the two day International Conference, "Advances in the Delivery of Therapeutic and Diagnostic Agents" in December, 1992. The latter meeting was jointly sponsored by the international Controlled Release Society, the Australasian Pharmaceutical Scientists Association, the Royal Australian Chemical Institute, had numerous international speakers and about 160 participants.

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER    PUR0912050

# EXHIBIT J

*Transcript for New Zealand.*

NEW ZEALAND PATENTS ACT 1953

Document #: 123971

IN THE MATTER OF New Zealand
Patent Application No. 260408 in
the name of Euro-Celtique S.A.

AND

IN THE MATTER of an Opposition
under Section 21 by Grünenthal
GmbH

## COUNTER STATEMENT

We, Euro-Celtique S.A., of 122 Boulevard de la Petrusse, Luxembourg,
respond to the opposition of Grünenthal GmbH against our New
Zealand Patent Application 260,408 in the following terms:

Interest

1.    The interest of the opponent as a potential infringer is not denied.

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER                    NAPP0267588

2

26 February 1997

Novelty

2.      The claimed invention has novelty.   In each of EP 147780, US
        5073379 or US 3065143 there is no disclosure of a product in
        accordance with any one of claims 1 to 16, 34, or 35, nor is there a
        disclosure of a process in accordance with any one of claims 17 to
        33 or 36.   More particularly, none of the cited documents discloses
        a controlled release tramadol product having the specified in-vitro
        dissolution rate characteristics.

2.0     Tramadol is a known analgesic which was invented by the
        Opponent in the 1960's and which has been marketed since 1977.
        Until the present invention, it was always a normal release
        preparation, where highly soluble tramadol hydrochloride is
        quickly released and rapidly assimilated into the body to provide
        relief of acute pain.   In contrast, the present invention provides a
        controlled release form of tramadol which can be formulated as a
        product to be given twice or once a day, to provide longer pain
        relief.   Claim 1 defines the product in the following manner:

        "A controlled release preparation comprising
        tramadol or a pharmaceutically acceptable salt
        thereof for oral administration, having an in-vitro
        dissolution rate (measured as herein defined) as set
        forth below:

| TIME | % RELEASED (BY WEIGHT) |
|------|------------------------|
| 1    | 0-50                   |
| 2    | 0-75                   |
| 4    | 3-95                   |
| 8    | 10-100                 |
| 12   | 20-100                 |

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

| 16 | 30-100 |
| 24 | 50-100 |
| 36 | >80 |

" .

Nothing turns on the point, but we assert that this claim and the other claims are entitled to a priority date which is earlier than the date on which the complete specification was filed.   Claim 34 clearly takes the first priority date of 10 May 1993, and in general the remaining claims take the third date of 09 March 1994.   The Opponent advances no reason for denial of entitlement to priority, and without substantiation his denial must be set aside.


2.1    The cited EP 147780 describes and claims a composition of matter for oral, rectal or vaginal administration comprising a core tablet or granules of a therapeutically effective amount of at least one therapeutic agent selected from various specified classes of agents, and a polyvinyl coating on the core tablet or granules, with the amounts of therapeutic agent and polyvinyl alcohol falling within given ranges.   Tramadol is mentioned in a very long list of possible therapeutic agents, but is not employed in any of the examples.   There is no data in the specification relating to *in vitro* dissolution rates.   The Applicants will show by evidence that a practical attempt to prepare a composition in accordance with the teaching of EP 147780, and using tramadol, gives a product with no real sustained release properties.   More specifically, the Applicants will show that the teaching in EP 147780 gives a controlled release preparation for which the *in vitro* dissolution

4
26 February 1997

rate does not fall within the ranges given in Claim 1 and does not
fall within the other independent claims of the present patent
application.   Accordingly, EP 147780 does not anticipate the
present invention.

2.2    US 5073379 describes the continuous preparation of solid
pharmaceutical forms.   The process is essentially directed at a
more efficient process for producing already known formulations
based on extruded polymer melts containing an active compound.
The process is not directed especially at controlled release
products.   Tramadol is mentioned as a possible active compound
among a list of about two hundred active compounds, but there is
no example which employs tramadol.   The formulations of this
document are not particularly concerned with controlled release,
as can be seen from the data given in Table 1 where the majority of
the formulations prepared are rapid or instant release.   There is no
disclosure in this document that tramadol is to be used to prepare
a controlled release formulation, and in particular there is no
disclosure that tramadol is to be used to prepare a formulation
with a particular release rate.   Accordingly, US 5073379 does not
anticipate the present invention.

2.3    US 3065143 relates to a sustained release tablet.   There is no
mention of tramadol.   Accordingly there is no way in which the
disclosure of US 3065143 can anticipate the present invention.

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER                    NAPP0267591

5
26 February 1997

2.4    We can be certain of the novelty of the present invention by
applying the notional infringement test.   None of EP 143780, US
5073379 or US 3065143 contains a clear description of, or clear
instructions to do or make, something that will infringe the present
claims if carried out after the grant of the patent.   It can not be said
that carrying out the directions contained in the prior art will
inevitably result in something being made or done which will
constitute an infringement of the present claims.   There is
therefore no lack of novelty.   Indeed, there is no signpost upon the
road towards the present invention, and certainly it can not be said
that any of the prior art documents have planted a flag at the
destination which is now claimed.   The invention is novel.


Inventive Step

3.    The claimed invention involves an inventive step.   Nothing in EP
147,780, US 5073379, US 3065143, GB 2196848, GB 1405088, EP
249347 or Page 1306, section 6233-w of Martindale The Extra
Pharmacopoeia, 29th edition (1989) leads the skilled man to the
claimed invention.   There has been no prior use in New Zealand
which leads the skilled man to the claimed invention.

3.0    Inventive step can not be in doubt.   Tramadol has been
commercially available for a long time.   Controlled release
compositions of other drugs have been commercially available for

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

6
26 February 1997

a long time.   There was nothing which indicated that it was
obvious to produce a controlled release tramadol which was suited
for at least 12-hourly dosing.   Why choose to work with tramadol?
When properly viewed at the priority date of the present
invention, there is no disclosure in the cited references which
indicates to the skilled man that the way forward is to make a
tramadol preparation in accordance with the present invention.   It
is only with knowledge of the present invention that it becomes
possible to point to certain passages among the literature, and
attempt to construct an argument.   As the Applicants will
demonstrate, there was literature on tramadol where the whole
emphasis was on normal release preparations, and there was a
wealth of literature on controlled release preparations where there
was no suggestion to employ tramadol.   There is no
recommendation that tramadol is the suitable candidate for the
production of a controlled release preparation.

3.1    The cited EP 147,780 concerns a proposal for preparing a drug
delivery system which uses polyvinyl alcohol as a coating material.
Tramadol is mentioned in EP 147780, but only as one possible drug
in a list encompassing five hundred or more active substances.
Further, none of the Examples employs tramadol.   Tramadol
occurs simply as a passing mention in a shopping list and is not
being presented seriously as a potential candidate for formulation.
There is no reason except knowledge of the present invention
which will lead the skilled person to pick out tramadol from the

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER                    NAPP0267593

other listed drugs.   Indeed, as we have mentioned at paragraph
2.1, the Applicants will show by evidence that a practical attempt
to prepare a composition in accordance with the teaching of EP
147780, and using tramadol, gives a product with no real sustained
release properties.   The teaching of EP 147780 does not provide an
effective controlled release tramadol preparation, and it surely
does not begin to point the skilled man towards the present
invention.

3.2   US 5073379 is even further from the present invention.   Indeed,
although the Opponent includes this document among those cited
against inventive step, he refers to it only once in the paragraphs
23 to 69 of his Statement of Case.   For the time being, we observe
that there really is nothing in US 5073379 which might point the
skilled man to arrive at the present invention.   US 5073379 is
concerned with the continuous preparation of solid pharmaceutical
forms, and it does not give to the skilled man any indication that
he might achieve a commercially important product by preparing a
controlled release tramadol preparation.

3.3   US 3065143 describes a wide variety of formulations with a wide
variety of in vitro release rates, some of which may fall within the
presently claimed release rate range.   There is nothing in this US
specification which suggests the use of tramadol as an active
ingredient, and there is certainly nothing which leads to the
present invention.   As is evident from US 3065143, controlled

8

26 February 1997

release matrix materials have been known since 1970. Tramadol is even older. It is surely indicative of an inventive step that the techniques for making controlled release formulations have been available for so long, and yet no one had conceived of the idea of employing tramadol to give an effective preparation suited for at least 12-hourly dosing. Indeed, tramadol is a compound which was very familiar to the Opponents who had extensive knowledge of its potential and characteristics, and yet with the wide dissemination of the techniques for making controlled release formulations, they did not see the possibility of making an effective controlled release tramadol preparation. In short, if the invention was obvious, why was the invention not made earlier? More especially, why was the invention not made and disseminated by the Opponent?

3.4    GB 2196848 is concerned with a controlled release hydromorphone preparation. The fact that similar matrixes and similar release profiles might be known for hydromorphone provides no scientific basis for alleging that it was obvious to employ them for a tramadol preparation. The Applicants will produce evidence to show that it is a facile simplification to place emphasis on the similarity in solubility of hydromorphone hydrochloride and tramadol. To the contrary, there are a wide variety of factors which influence the pharmacokinetic and pharmacodynamic balance of a drug and which determine whether a particular *in vitro* release profile will give a desired effectiveness *in vivo*.

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER                NAPP0267595

Identical *in vitro* rates for different drugs do not guarantee identical *in vivo* performance profile. Until the present patent application was published, there was no way to know what *in vitro* dissolution rates for tramadol might give 12 hour to 24 hour *in vivo* analgesic effect. Having regard to their respective pharmacokinetic and pharmacodynamic performances, there is no justification for relying upon the release profiles of formulations of hydromorphone hydrochloride to predict what *in vitro* release rate for tramadol might be suited for a 12 hour analgesic effect. Put bluntly, it is not possible to predict that a desired *in vivo* performance will be achieved by adoption of a given *in vitro* release rate. Moreover, the focus on any similarity of release rates does not in itself provide any sound basis for asserting that it was obvious to manufacture a preparation in accordance with the present invention. What in the prior art points the skilled man to the present invention?

3.5    GB 1405088 concerns a slow release formulation and was published in 1975. It does not advance the case of the Opponent in any way. More specifically, there is nothing in GB 1405088 which provides the missing impetus to elect to take the drug tramadol and to prepare a controlled release preparation in accordance with the present invention.

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER    NAPP0267596

3.6    EP 249347 is a controlled release dihydrocodeine composition.  As
       with hydromorphone, there is no scientific basis for asserting that
       the use of a known formulation of a narcotic opioid such as
       dihydrocodeine will be appropriate for an entirely different, non-
       narcotic compound such as tramadol.

3.7    Page 1306, section 6233-w of Martindale The Extra Pharmacopoeia,
       29th edition (1989) reports that hydromorphone hydrochloride has
       a solubility in water of 1 in 3.  Such knowledge of water solubility
       in no way provides a reason to equate tramadol with
       hydromorphone hydrochloride when it comes to a consideration of
       formulating a controlled release preparation.  Although solubility
       is a factor, it is only one factor among many others, including
       dissociation constants, partition coefficients, drug distribution
       between compartments, possible active metabolites and so forth.
       The argument presented by the Opponent is simplistic and based
       on pure hindsight.  Even then, to raise such an argument misses
       the crucial point.  Prior to the date of the present patent
       application, the skilled man had not considered tramadol to be a
       drug suited for formulating as a controlled preparation for use at
       least 12-hourly.

3.8    Thus, the inventive concept is a controlled release preparation of
       tramadol for at least 12 hour administration.  To this end, the
       release is tailored to provide appropriate levels of pain relief to the
       recipient over the time period.  Before the invention, no-one had

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER                    NAPP0267597

appreciated that a particularly useful preparation might be made using tramadol.

The Opponent has not cited any document which addresses, discloses or even foreshadows the relationship between *in vitro* release and desired *in vivo* activity. Accordingly any combination of documents relied upon by the opponent will be void of this particular feature. The applicant has identified an area of subject matter in which improved and useful results may be obtained. The invention is not obvious.

3.9    No details have been given of the prior use in New Zealand upon which the Opponent seeks to rely. In the absence of proof, there can be no case to answer that the invention might be obvious in the face of such a use. For the present, we assert that the present invention has an inventive step over any prior use which might be proved.

Invention

4.    The subject of each claim of the complete specification is an invention within the meaning of the Act. There is no strength in the points raised by the Opponent, and there can be no doubt that the claimed product, and the claimed process, is related to a

12
26 February 1997

manner of new manufacture within the meaning of Section 2 of the
Act. The claimed subject matter is a not mere collocation, and is
substantially more than a mere admixture of non-co-operating
components. We will provide evidence to show that the
claimed subject matter relates to a new and useful vendible
product.


## Description


5. The complete specification sufficiently and fairly describes the
invention and the method by which it is to be performed.


5.1 The pedantic points raised by the Opponent do not truly go to the
adequacy of the description for a skilled man who is minded to
succeed in making an effective controlled release tramadol
preparation. Indeed, in attempting to attack the description, the
Opponent is effectively contradicting what he has to say in relation
to lack of inventive step. The specification is to be read by the
skilled man. Given his familiarity with the general technique of
preparing controlled release preparations, and given the guidance
provided in the present specification, there is no difficulty to
perform the invention of the Claims.

13
26 February 1997

5.2    The Applicants will provide evidence to show that the complete
       specification can be clearly understood by the skilled person who
       can draw upon his common general knowledge and upon the
       description in the present patent application.


Request

6.     We ask for the opposition to be dismissed, and for grant of Letters
       Patent.   We also request an award of costs in favour of the
       Applicant.

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER                     NAPP0267600

# EXHIBIT K



FROMMER LAWRENCE & HAUG LLP

New York                          www.flhlaw.com
745 Fifth Avenue
New York, NY 10151                Washington, DC
Telephone: (212) 588-0800         Tokyo
Fax: (212) 588-0500

February 5, 2008                  **Robert E. Colletti**
                                  rcolletti@flhlaw.com

·

**VIA ELECTRONIC MAIL**

Sona De, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, New York 10036

Re:   *Purdue et al. v. Par Pharmaceutical et al.*
      FLH Reference No. 540572-521

Dear Sona:

We are in the process of reviewing the large volume of documents produced by Purdue and
Napp. Unfortunately, it does not appear that Purdue and Napp produced all documents
responsive to our requests. We do not appear to have the documents identified below. If these
documents were produced, please identify them by production number. If these documents were
not produced, please produce them or explain why they are being withheld.

- The two abandoned patent applications which claim the benefit of the patent-in-suit and
  their prosecution histories, i.e., U.S. Patent Application Nos. 09/239,092 and 09/507,806.

- The prosecution histories for each corresponding foreign counterpart of the patent-in-suit.
  We note that certain foreign counterpart patents to the patent-in-suit have been produced
  but without their corresponding file histories.

- The November 25, 1998 expert report of Professor Alexander Florence. We have located
  Professor Florence's supplemental report, but not the initial expert report.

- The July 8, 1994 tramadol license agreement between Grunenthal GmbH and G.D. Searle
  & Co. Ltd. An amendment to this agreement has been produced (NAPP044052), but the
  original agreement has not been located.

Finally, please confirm that Purdue and Napp produced all documents from foreign litigations
related to controlled-release tramadol. For example, we have not located the complete files from

Sona De, Esq.
February 5, 2008
Page 2

the *Napp Pharmaceutical Group Ltd. v. Asta Medica Ltd.* U.K. litigation and the *Temmler Pharma GmbH v. Euro-Celtique S.A.* German litigation.

Sincerely,

*Robert E. Colletti*

Robert E. Colletti

cc:    Frederick L. Cottrell, Esq.
       Mary W. Bourke, Esq.
       Richard D. Kirk, Esq.

# EXHIBIT L

**FLH** FROMMER LAWRENCE & HAUG LLP

New York                  www.flhlaw.com
745 Fifth Avenue
New York, NY 10151        Washington, DC
Telephone: (212) 588-0800  Tokyo
Fax: (212) 588-0500

February 11, 2008

Robert E. Colletti
rcolletti@flhlaw.com

**VIA ELECTRONIC MAIL**
**AND FIRST CLASS MAIL**

Sona De, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, New York 10036

Re:   *Purdue et al. v. Par Pharmaceutical et al.*
      FLH Reference No. 540572-521

Dear Sona:

This is a follow-up to my February 5, 2008 letter (copy attached) regarding deficiencies in the Purdue/Napp document production. Further to my letter it has become apparent that Purdue/Napp has not produced the full scope of documents from foreign litigations involving controlled-release tramadol. As just one example, Napp has not produced all the exhibits to the supplemental expert report of John Tasker Fell. Please let me know when we can expect a response to my initial letter

Sincerely,

Robert E. Colletti

Robert E. Colletti

Encl.
cc:   Frederick L. Cottrell, Esq. (e-mail only)
      Mary W. Bourke, Esq. (e-mail only)
      Richard D. Kirk, Esq. (e-mail only)
      Robert J. Goldman, Esq. (e-mail only)

EXHIBIT M



FROMMER LAWRENCE & HAUG LLP

New York                    www.flhlaw.com
745 Fifth Avenue
New York, NY 10151          Washington, DC
Telephone: (212) 588-0800   Tokyo
Fax: (212) 588-0500

February 21, 2008                            **Robert E. Colletti**
                                             rcolletti@flhlaw.com

**VIA ELECTRONIC MAIL**
**AND FIRST CLASS MAIL**

Sona De, Esq.                       Richard D. Kirk, Esq.
Ropes & Gray LLP                    The Bayard Firm
1211 Avenue of the Americas         222 Delaware Avenue, Suite 900
New York, New York 10036            P.O. Box 25130
                                    Wilmington, Delaware 19899


Robert J. Goldman, Esq.             Mary W. Bourke, Esq.
ROPES & GRAY LLP                    Connolly Bove Lodge & Hutz LLP
525 University Avenue               The Nemours Building
Suite 300                           1007 North Orange St.
Palo Alto, California 94310         P.O. Box 2207
                                    Wilmington, Delaware 19899


Re:   *Purdue et al. v. Par Pharmaceutical et al.*
      FLH Reference No. 540572-521

Dear Counsel:

My February 5 and February 11 letters regarding deficiencies in the Purdue/Napp ("Purdue")
document production remain unanswered. It appears that the requested abandoned CIP patent
applications as well as the initial report of Professor Florence were produced in the documents
we subpoenaed from Davidson, Davidson & Kappel. We still await responses, however, to our
other concerns. Please identify by production number the prosecution history for each
corresponding foreign counterpart of the patent-in-suit or explain why these documents are being
withheld. The prosecution history for the German priority document, namely DE 43 15 525,
should be produced immediately. Moreover, please confirm that plaintiffs have produced all
documents from foreign litigations and oppositions related to controlled-release formulations of
tramadol.

Next Monday, we intend to file a motion requesting Judge Farnan to issue a Letter of Request.
The Letter of Request seeks a deposition of Eric-Paul Paques of Grunenthal GmbH and certain
documents. Please let us know by 12:00 p.m. on Monday if the plaintiffs will oppose this
motion.

February 21, 2008
Page 2

Attached is a courtesy copy of a subpoena for documents that we are today serving on Grunenthal USA Inc. Also attached is a Rule 30(b)(6) notice of deposition to Biovail. Finally, enclosed are notices of deposition for Robert Kaiko and Benjamin Oshlack.

Before we notice the depositions of the inventors listed on the face of the patent-in-suit I would like to discuss the location and timing of the depositions. It was previously indicated that these depositions would take place in the UK and Germany. Please let me know a convenient time for a short telephone conference on Monday next week.

Sincerely,

*Robert E. Colletti*

Robert E. Colletti

Enclosures
cc:    Frederick L. Cottrell, Esq. (with enclosures)
       Rodger D. Smith II, Esq. (with enclosures)

# EXHIBIT N

Mar 12 15:47:50 EST 2008



# US6254887 Family Legal Status Report - 340 members found

Codes shown:   All | Positive | Negative

| Jump | Publication | Title | Filed | ApplNo |
|---|---|---|---|---|
| | ZA9502013A | PHARMACEUTICAL PREPARATION | 1995-03-10 | ZA1995000002103 |
| | ZA9409296A | Sustained release compositions and a method of preparing pharmaceutical compositions | 1994-11-23 | ZA1994000009296 |
| | ZA9407742A | Orally administrable opioid formulations having extended duration of effect | 1994-10-04 | ZA1994000007742 |
| | ZA9404773A | Sustained release compositions and a method of preparing pharmaceutical compositions and a method of preparing pharmaceutical compositions | 1994-07-01 | ZA1994000004773 |
| | ZA9404599A | Opioid formulations having extended controlled release | 1994-06-27 | ZA1994000004599 |
| | ZA9402959A | Controlled release formulation | 1994-04-28 | ZA1994000002959 |
| | ZA9206587A | Stabilized controlled release formulations having acrylic polymer coating | 1992-07-29 | ZA1992000006587 |
| | ZA9201366A | STABILIZED CONTROLLED RELEASE SUBSTRATE HAVING A COATING DERIVED FROM AN AQUEOUS DISPERSION OF HYDROPHOBIC POLYMER | 1992-02-25 | ZA1992000001366 |
| Status | US20060269603A1 | Controlled release tramadol formulations | 2006-05-16 | US2006000435015 |
| | US20030054032A1 | Stabilized controlled release substrate having a coating derived from an aqueous dispersion of hydrophobic polymer | 2001-11-12 | US2001000054726 |
| | US20020081333A1 | Orally administrable opioid formulations having extended duration of effect | 2001-06-26 | US2001000891882 |
| Status | US20010036477A1 | Controlled release tramadol formulation | 2001-03-06 | US2001000800204 |
| | US20010019725A1 | Sustained release compositions and a method of preparing pharmaceutical compositions | 2000-12-19 | US2000000740732 |
| Status | US7074430 | Controlled release tramadol tramadol formulation | 2001-03-06 | US2001000800204 |
| | US6572885 | Orally administrable opioid formulations having extended duration of effect | 2001-06-26 | US2001000891882 |
| | US6326027B1 | | | |
| Status | US6326027 | Controlled release formulation | 1995-05-24 | US1995000449772 |
| | US6316031B1 | | | |
| | US6316031 | Stabilized controlled release substrate having a coating derived from an aqueous dispersion of hydrophobic polymer | 1999-12-22 | US1999000469478 |
| | US6294195 | Orally administrable opioid formulations having extended duration of effect | 1999-09-07 | US1999000390719 |
| | US6254887B1 | | | |
| Status | US6254887 | Controlled release tramadol | 1996-07-10 | US1996000677798 |
| | US6162467 | Sustained release compositions and a method of preparing pharmaceutical compositions | 1999-08-09 | US1999000370270 |
| | US6143353 | Controlled release formulations coated with aqueous dispersions of acrylic polymers | 1997-03-11 | US1997000816023 |
| | US6143328 | Sustained release compositions and a method of preparing pharmaceutical compositions | 1999-03-08 | US1999000264399 |
| Status | US6143322 | Method of treating humans with opioid formulations | 1997-04-08 | US1997000838368 |

| | | |
|---|---|---|
| 2005-10-28 | RENW + | Renewal |
| 2002-11-22 | RENW - | Renewal |

NO0942477A:

| Gazette date | Code | Description (remarks)    List all possible codes for NO |
|---|---|---|
| 2002-11-04 | FC2A - | Printed rejected and laid open patent application |

NO0313124B1:

| Gazette date | Code | Description (remarks)    List all possible codes for NO |
|---|---|---|
| 2006-01-23 | ERR | Erratum (I PATENTTIDENDE NR. 01/05 BLE PATENT NR. 313124 FEILAKTIG KUNNGJORT TRADT UT AV KRAFT. PATENTET ER FORTSATT I KRAFT ) (I PATENTTIDENDE NR. 01/05 BLE PATENT NR. 313124 FEILAKTIG KUNNGJORT TRADT UT AV KRAFT  PATENTET ER FORTSATT I KRAFT.) |
| 2005-01-03 | MM1K - | Lapsed by not paying the annual fees |

HU9402807A0.

| Gazette date | Code | Description (remarks)   List all possible codes for HU |
|---|---|---|
| 2006-06-28 | TH4A | Erratum |

HU9401478A0:

| Gazette date | Code | Description (remarks)   List all possible codes for HU |
|---|---|---|
| 1998-01-28 | DFC4 | Cancellation of temporary prot. due to refusal |

HU0218673B:

| Gazette date | Code | Description (remarks)   List all possible codes for HU |
|---|---|---|
| 2006-06-28 | TH4A | Erratum |

HU0075703A2:

| Gazette date | Code | Description (remarks)   List all possible codes for HU |
|---|---|---|
| 1998-01-28 | DFC4 | Cancellation of temporary prot. due to refusal |

HU0074916A2:

| Gazette date | Code | Description (remarks)   List all possible codes for HU |
|---|---|---|
| 2006-06-28 | TH4A | Erratum |

HK1005687A1:

| Gazette date | Code | Description (remarks)   List all possible codes for HK |
|---|---|---|
| 2004-12-15 | PF + | Patent in force |

HK1005686A1.

| Gazette date | Code | Description (remarks)   List all possible codes for HK |
|---|---|---|
| 2004-12-15 | PF + | Patent in force |

GB2288117A:

| Gazette date | Code | Description (remarks)   List all possible codes for GB |
|---|---|---|
| 1996-07-31 | WAP - | Application withdrawn, taken to be withdrawn or refused ** after publication under section 16(1) |

GB2287880A8:

| Gazette date | Code | Description (remarks)   List all possible codes for GB |
|---|---|---|
| 1996-07-24 | WAP - | Application withdrawn, taken to be withdrawn or refused ** after publication under section 16(1) |

| 2002-05-08 | 17P + | Request for examination filed ( 2001-12-20 ) |
|---|---|---|
| 2002-05-08 | AK + | Designated contracting states in an application without search report. (AT BE CH DE DK ES FR GB GR IE IT LI LU MC NL PT SE ) |
| 2002-05-08 | AX + | Extension of the european patent to (SI PAYMENT 20011220) (SI PAYMENT 20011220) |
| 2002-05-08 | AC | Divisional application (art. 76) of. ( EP00630646 ) |

EP0729751TD:

| Gazette date | Code | Description (remarks)    List all possible codes for EP |
|---|---|---|
| 2007-08-15 | 18R - | Refused ( 2007-05-30 ) |
| 2005-07-13 | RIN1 | Inventor (correction) MILLER, RONALD BROWN |
| 2005-07-13 | RIN1 | Inventor (correction) LESLIE, STEWART THOMAS |
| 2005-07-13 | RIN1 | Inventor (correction) MALKOWSKA, SANDRA THERESE ANTOINETTE |
| 2005-07-13 | RIN1 | Inventor (correction) SMITH, KEVIN JOHN |
| 2005-07-13 | RIN1 | Inventor (correction) WIMMER, WALTER |
| 2005-07-13 | RIN1 | Inventor (correction) WINKLER, HORST |
| 2005-07-13 | RIN1 | Inventor (correction) HAHN, UDO |
| 2005-07-13 | RIN1 | Inventor (correction) PRATER, DEREK ALLAN |
| 2004-01-21 | RAP1 | Applicant reassignment (correction) (New owner: EURO-CELTIQUE S.A. ) |
| 1999-08-11 | 17Q + | First examination report ( 1999-06-28 ) |
| 1997-03-13 | DET | DE: translation of patent claims |
| 1996-11-15 | EL + | FR: translation of claims filed |
| 1996-10-15 | ITCL + | IT: translation for ep claims filed ( STUDIO ASSOC  MARIETTI & PIPPARELLI) |
| 1996-09-04 | 17P + | Request for examination filed ( 1996-02-20 ) |
| 1996-09-04 | AK + | Designated contracting states in an application with search report: (AT BE CH DE DK ES FR GB GR IE IT LI LU NL PT SE ) |
| 1996-09-04 | AC | Divisional application (art. 76) of: ( EP00699436 ) |

EP0729751A1:

| Gazette date | Code | Description (remarks)    List all possible codes for EP |
|---|---|---|
| 2007-08-15 | 18R - | Refused ( 2007-05-30 ) |
| 2005-07-13 | RIN1 | Inventor (correction) MILLER, RONALD BROWN |
| 2005-07-13 | RIN1 | Inventor (correction) LESLIE, STEWART THOMAS |
| 2005-07-13 | RIN1 | Inventor (correction) MALKOWSKA, SANDRA THERESE ANTOINETTE |
| 2005-07-13 | RIN1 | Inventor (correction) SMITH, KEVIN JOHN |
| 2005-07-13 | RIN1 | Inventor (correction) WIMMER, WALTER |
| 2005-07-13 | RIN1 | Inventor (correction) WINKLER, HORST |
| 2005-07-13 | RIN1 | Inventor (correction) HAHN, UDO |
| 2005-07-13 | RIN1 | Inventor (correction) PRATER, DEREK ALLAN |
| 2004-01-21 | RAP1 | Applicant reassignment (correction) (New owner: EURO-CELTIQUE S.A. ) |
| 1999-08-11 | 17Q + | First examination report ( 1999-06-28 ) |
| 1997-03-13 | DET | DE. translation of patent claims |
| 1996-11-15 | EL + | FR: translation of claims filed |
|  |  | IT: translation for ep claims filed ( STUDIO ASSOC  MARIETTI |