## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PURDUE PHARMA PRODUCTS L.P.,    :
NAPP PHARMACEUTICAL GROUP LTD.,  :
BIOVAIL LABORATORIES INTERNATIONAL :
SRL, and ORTHO-MCNEIL, INC.        :
                               :
      Plaintiffs,              :
                               :     CASE NUMBER: 07-255-JJF
   v.                       :
                               :
PAR PHARMACEUTICAL, INC. and PAR    :
PHARMACEUTICAL COMPANIES, INC.    :
                               :
      Defendants.           :

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO QUASH SUBPOENA

**SEITZ, VAN OGTROP & GREEN, P.A.**
**JAMES S. GREEN, SR., ESQ. (DE0481)**
**jgreen@svglaw.com**
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE  19899
(302) 888-0600

Attorneys for Grünenthal, USA, Inc.

Of Counsel:

Dale H. Hoscheit
Joseph M. Skerpon
Banner & Witcoff, Ltd.
1100 13th Street, N.W.
Suite 1200
Washington, D.C.  20005-4051
(202) 824-3000

65213 v1

I.       **INTRODUCTION**

This Memorandum is in support of the Motion to Quash the subpoena for the deposition of Grünenthal USA, Inc. issued from this court and served May 19, 2008 (Exhibit 1)1.  For the reasons identified below this subpoena imposes an undue burden on Grünenthal USA, Inc.

The subpoena for the deposition of Grünenthal USA (USA) seeks testimony regarding subjects that have no relevance to any disputed issues in this lawsuit.   Instead this subpoena is part of an on-going effort by Par Pharmaceuticals to circumvent a ruling by the Southern District of New York in a misguided attempt to obtain documents of Grünenthal GmbH (GmbH) through its U.S. subsidiary, Grünenthal USA (USA).  Not willing to abide a ruling by this court on Par's Motion for Issuance of Letters Rogatory, Par served a subpoena on USA for production of documents by USA and GmbH from the New York District Court. (New York Subpoena)(Exhibit 2) (USA is a Delaware corporation,  Par could have filed the earlier subpoena in this court but chose not to.)    USA answered the subpoena stating that it has none of the requested documents and that it did not have custody or control of the requested GmbH documents. (Exhibit 3)  Indeed, GmbH has refused to produce the requested documents. (Exhibit 4)

On April 10, 2008, after the Motion for Issuance of Letters Rogatory was fully briefed before this Court, Par moved in the New York District Court to compel the production of essentially the same documents in the possession or control of GmbH, (Exhibit 5 and Exhibit 2). The District Court, Judge Batts, upon notice that the same matter was the subject of a Letters Rogatory Motion before this court, ruled on May 12 that it was appropriate to defer to the Judge permanently assigned to the case.

---

1 References are to Exhibits attached to the Declaration of Dale H. Hoscheit dated May 28, 2008.

> "It is appropriate for this Court to defer to the Judge permanently assigned to this case where the subpoena before this Court is merely duplicative of another effort, before the primary Court, to obtain the same documents". (Exhibit 6)

Par now seeks testimony of USA as part of its continuing efforts to argue that it is entitled to obtain GmbH documents under the New York subpoena served on USA.    That is the only purpose for the deposition of USA that Par seeks to compel by subpoena, since USA has no information regarding any disputed issues in the lawsuit.

Neither GmbH nor USA is involved in the subject cause of action, neither will obtain any financial benefit from the litigation, and neither manufactures or markets any controlled released tramadol products in the US.  Indeed, USA does not manufacture, market or sell any product. Neither the deposition that Par seeks, nor the documents Par ultimately hopes to obtain have any connection to USA's business of supporting clinical trials none of which relate to tramadol. Subjecting USA to deposition so that Par can attempt to circumvent the New York Court's ruling on Par's subpoena for documents and this Court's ruling on Par's Motion for Issuance of Letters Rogatory imposes an undue burden on USA and should not be permitted.  Par's subpoena should be quashed.

## II.    BACKGROUND

### A.  Grünenthal USA and Grünenthal GmbH

It is undisputed that, USA was incorporated in 2001 (Exhibit 7) and has only fourteen (14) employees.  As shown in the Dun & Bradstreet Report filed and relied on by Par in New York, (Exhibit 8), and as confirmed by the Passerelli Declaration (Exhibit 9), USA's business is limited to operational support for U.S. clinical trials and U.S. regulatory expertise when needed. None of those activities involve tramadol.  It does not manufacture or service any product; it

does not market any product; and it does not sell any product.  The activities of USA do not require or involve access to GmbH internal documents in the ordinary course of business, much less internal GmbH documents from a time period many years before USA was even incorporated.

USA has its own board of directors.  Ms. JoAnn Passerelli, an employee of USA only, is the Senior Operational Officer of USA.  The current president of USA is Dr. Eric-Paul Paques.  Exhibit 7 and 9) Dr. Paques is the only member of USA's three-member board, who is also on the four-member executive board of GmbH.  (Exhibit 10) Dr. Paques is not a member of the family that owns GmbH and is only one of four GmbH board members.  USA's business is limited to activities completely unrelated to tramadol or to the type of documents requested.  USA has no need for the documents requested and does not have the legal or practical right to obtain those documents particularly when the requested documents are from a time period years before USA even existed.

### B.  Subpoena Subject Matter

The subpoena requests testimony related to the structure and operation of USA.  Those are matters that do not involve any issue of the present litigation.  It is being pursued by Par in its continuing effort to obtain the GmbH documents requested in its New York subpoena, even though those same documents are also being requested in its Motion for Letters Rogatory in this court.

### C.  The New York Subpoena

The New York subpoena (Exhibit 2) involves document requests that parallel the requests of Par's Motion for Letters Rogatory before this court.  (Compare Exhibit 2 with Exhibit 5).  The primary thrust of the document requests is directed to documents in the early and mid 1990's,

long before USA even existed, and as demonstrated in the Memorandum in Opposition to the New York Motion, are neither relevant nor likely to lead to relevant documents.

## III.    <u>ARGUMENT</u>

Two prior decisions of this very court, *Playboy Entertainment Group, Inc. v. United States*, 1997 WL 873550 (D.Del 1997), and *Power Integrations, Inc., v. Fairchild Semiconductor International, Inc.,* 233 F.R.D. 143 (D.Del. 2005), argue strongly in support of this Motion to Quash.  Each involved unsuccessful attempts to reach documents of a parent through its subsidiary.

Here, as in *Playboy* and in *Power Integration,* there is no basis to assert that USA can access the requested documents in the normal course of business.  USA's mission is to follow clinical trials (none of which involve tramadol) and the requested documents primarily relate to a time period years before USA existed.  Merely to state these facts demonstrates the lack of right or practical ability to obtain the requested documents.

Still other relevant factors for determining "control" identified in *Playboy* include the non-party's connection to the transaction at issue, and whether the non-party will receive benefit of a favorable litigation outcome.  Here, neither USA nor GmbH market any slow-release tramadol product in the US and neither will receive a benefit from a favorable litigation outcome.

Par's subpoena for testimony represents an effort by Par to resurrect its unsuccessful attempt to secure documents from USA through the New York subpoena.  This Court should not allow USA to be subjected to the burden of appearing for a deposition when the facts for denying the underlying document requests are so clear.

IV.     <u>**CONCLUSION**</u>

The subpoena should be quashed.

Respectfully Submitted,

**SEITZ, VAN OGTROP & GREEN, P.A.**

<u>**/s/ James S. Green, Sr.**</u>
**JAMES S. GREEN, SR., ESQ. (DE0481)**
**jgreen@svglaw.com**
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE  19899
(302) 888-0600
        Attorneys for Grünenthal, USA, Inc.

Dated:  May 29, 2008

Of Counsel:
Dale H. Hoscheit
Joseph M. Skerpon
Banner & Witcoff, Ltd.
1100 13th Street, N.W.
Suite 1200
Washington, D.C.  20005-4051
(202) 824-3000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PURDUE PHARMA PRODUCTS L.P.,  :
NAPP PHARMACEUTICAL GROUP LTD., :
BIOVAIL LABORATORIES INTERNATIONAL:
SRL, and ORTHO-MCNEIL, INC.   :
             :
  Plaintiffs,        :
             :  CASE NUMBER: 07-255-JJF
  v.            :
             :
PAR PHARMACEUTICAL, INC. and PAR :
PHARMACEUTICAL COMPANIES, INC.  :
             :
  Defendants.       :

## DECLARATION OF DALE H. HOSCHEIT IN SUPPORT
## NON-PARTY GRÜNENTHAL USA, INC.'S MOTION TO QUASH SUBPOENA

I, Dale H. Hoscheit, hereby declare pursuant to 28 USC §1746 that:

1. Exhibit 1 is a true and correct copy of the Subpoena issued from this court and served May 19, 2008.

2. Exhibit 2 is a true and correct copy of the New York Subpoena.

3. Exhibit 3 is a true and correct copy of Grünenthal USA's Response.

4. Exhibit 4 is a true and correct copy of Letter dated April 7, 2008 from Dale Hoscheit (Banner & Witcoff) to Robert Colletti (Frommer, Lawrence & Haug)

5. Exhibit 5 is a true and correct copy of Identification and Description of Documents included in Par's Request for Letters.

65208 v1

6. Exhibit 6 is a true and correct copy of May 12, 2008 Order Denying Defendants Motion to Compel re Subpoena in a Civil Case directed to Non-Party Grünenthal USA, Inc.

7. Exhibit 7 is a true and correct copy of Grünenthal USA, Inc Articles of Incorporation dated September 18, 2001.

8. Exhibit 8 is a true and correct copy of February 14, 2008 Dunn & Bradstreet Report for Grünenthal USA, Inc.

9. Exhibit 9 is a true and correct copy of Joann Passerelli Declaration with Attachment, dated April 28, 2008.

10. Exhibit 10 is a true and correct copy of an excerpt from Grünenthal GmbH's website entitled "Executive Board."

Date: May 28, 2008

By: _____
Dale H. Hoscheit

2

# EXHIBIT 1

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PURDUE PHARMA PRODUCTS L.P., NAPP PHARMACEUTICAL GROUP LTD., BIOVAIL LABORATORIES INTERNATIONAL SRL, and ORTHO-MCNEIL, INC., Plaintiffs, | SUBPOENA IN A CIVIL CASE |
| v. | CASE NUMBER: 07-255-JJF |
| PAR PHARMACEUTICAL, INC. and PAR PHARMACEUTICAL COMPANIES, INC., Defendants. | |

TO:    Grünenthal USA Inc.
       1 Pluckemin Way
       Bedminster, NJ 07921

☐    YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF PRODUCTION | COURTROOM |
|---|---|
| | DATE AND TIME: |

☒    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition to be recorded by stenographic and/or videographic means in the above case.  See Schedule A, attached hereto.

| PLACE OF DEPOSITION: Frommer Lawrence & Haug LLP, 745 Fifth Avenue, New York, NY 10151 | DATE AND TIME: 9:30 am, May 30, 2008 |
|---|---|

☐    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Schedule A, attached hereto.

| PLACE OF PRODUCTION | DATE AND TIME: 11:00 a.m., May 30, 2008 |
|---|---|

☐    YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES: | DATE AND TIME: |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| Issuing Officer's Signature and Title (Indicate if attorney for Plaintiff or Defendant) ATTORNEY FOR DEFENDANTS: *Robert E. Colletti* | Date: May 19, 2008 |
|---|---|
| Issuing Officer's Name, Address, and Phone Number Robert E. Colletti, Frommer Lawrence & Haug LLP, 745 Fifth Avenue, NY, NY 10151, (212) 588-0800 | |

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                    DATE                                          SIGNATURE OF SERVER

                                                            _____
                                                            ADDRESS OF SERVER

### Rule 45, Federal Rules of Civil Procedure, Subdivisions C, D & E, as amended on December 1, 2006.

(c) Protection of Persons Subject to Subpoena.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) Duties in Responding to Subpoena.

(1)(A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2)(A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.

Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## DEFINITIONS AND INSTRUCTIONS

1.      The form of the responses to Par Pharmaceutical, Inc.'s and Par Pharmaceutical Companies, Inc.'s (collectively "Par") discovery requests shall comply with Rules 26 through 37 of the Federal Rules of Civil Procedure, as applicable.

2.      Par's discovery requests shall be deemed to seek responses as of the date they are served. Any additional responsive information, documents, or things that become known to Grünenthal USA Inc. up to and including the time of trial shall be furnished to Par within a reasonable time after becoming known. Moreover, if Grünenthal USA Inc. acquires any information, documents, or things that require an answer to be enlarged, diminished, or otherwise modified, such information, documents, or things shall be supplied to Par within a reasonable time after they are acquired.

3.      The term "Plaintiffs" shall mean and include Purdue Pharma Products L.P., Napp Pharmaceutical Group Ltd., Biovail Laboratories International SRL, and Ortho-McNeil, Inc., any predecessor or successor company or individual, and any corporation or other business entity (whether or not a separate legal entity) subsidiary to, or affiliated with Plaintiffs (including Euro-Celtique S.A. and Mundipharma International Limited), as well as all present and former principals, partners, directors, owners, officers, members, employees, agents, representatives, consultants, and attorneys of Plaintiffs or any affiliated corporation or business entity and any other persons under the control of Plaintiffs.

4.      The phrase "Grünenthal" shall mean and include Grünenthal USA Inc., any predecessor or successor company or individual, and any corporation or other business entity (whether or not a separate legal entity) subsidiary to, or affiliated with Grünenthal (including Grünenthal GmbH), as well as all present and former principals, partners, directors, owners,

officers, members, employees, agents, representatives, consultants, and attorneys of Grünenthal or any affiliated corporation or business entity and any other persons under the control of Grünenthal.

5.     The term "PTO" shall mean the United States Patent and Trademark Office.

6.     The term "document" shall have the comprehensive meaning, in the broadest sense available pursuant to Rule 34(a) of the Federal Rules of Civil Procedure.

7.     The term "thing" shall mean any physical specimen or tangible item including but not limited to samples, prototypes, mock-ups, test equipment, production equipment, tools, dies, molds, models, three-dimensional illustrations of physical or chemical phenomena and montages of physical items.

8.     The phrase "the '887 patent" shall mean United States Patent No. 6,254,887 entitled "Controlled release tramadol," which issued on July 3, 2001.

9.     The term "communication" shall refer to any exchange or transfer of information between two or more persons or entities, whether written, oral, or in any other form.

10.    The term "concerning" shall mean comprising, containing, constituting, embodying, evidencing, discussing, reflecting, relating to, referring to, or identifying.

11.    The term "person" shall mean any natural person.

12.    The term "prior art" encompasses by way of example and without limitation the subject matter described in each and every subdivision of 35 U.S.C. § 102 and 35 U.S.C. § 103.

13.    The term "and" and "or" shall both be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of a discovery request.  The use of a verb in any of these shall be construed as the use of

the verb in all other tenses; and the singular form shall be deemed to include the plural and vice versa.

      14.    If Grünenthal objects to producing and withholds from production any information, documents, or things requested herein on grounds of attorney-client privilege, work-product immunity or otherwise, Par requests that Grünenthal provide, before the return date, a list identifying any withheld documents, things, or portions thereof.

      15.    If any documents or things requested to be produced herein have been lost, discarded, destroyed, or are otherwise unavailable for any reason, they should be identified as completely as possible, by stating without limitation: the pertinent information requested in the preceding paragraph, the date of disposal, the manner of disposal, the reason for disposal, any person, firm or corporation who has possession, custody, or control of a partial or complete copy of such document, and the identity of all persons who participated in the destruction or discarding or who have knowledge of the data and circumstances surrounding the destruction or discarding the document or thing.

      16.    Par requests that any purportedly privileged document containing nonprivileged matter be produced with the purportedly privileged portion redacted.

3

## SCHEDULE A

1.    The history of Grünenthal USA Inc., including but not limited to its ownership, its reasons for incorporating, and its business in the United States.

2.    The legal and corporate relationship between Grünenthal USA Inc. and Grünenthal GmbH.

3.    Communications between Grünenthal USA Inc. and Grünenthal GmbH regarding Grünenthal USA Inc.'s business in the United States.

4.    The appointment, employment, or placement of any Grünenthal GmbH employee or former employee at Grünenthal USA Inc.

5.    The employment history of Dr. Eric-Paul Paques with Grünenthal USA Inc. and Grünenthal GmbH.

6.    The employment history of Sebastian Wirtz with Grünenthal USA Inc. and Grünenthal GmbH.

7.    Grünenthal USA Inc.'s revenue and profits since its incorporation in the United States.

8.    Grünenthal USA Inc.'s seeking and obtaining of information from Grünenthal GmbH.

9.    The organizational structure of Grünenthal USA Inc.

4

# EXHIBIT 2

# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

PURDUE PHARMA PRODUCTS L.P.,
NAPP PHARMACEUTICAL GROUP LTD.,
BIOVAIL LABORATORIES INTERNATIONAL
SRL, and ORTHO-MCNEIL, INC.,
Plaintiffs,

**SUBPOENA IN A CIVIL CASE**

**CASE NUMBER:** 07-255-JJF

v.

PAR PHARMACEUTICAL, INC. and PAR
PHARMACEUTICAL COMPANIES, INC.,
Defendants.

TO:   Grunenthal USA, Inc.
      1 Pluckemin Way
      Bedminster, NJ 07921

☐    YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF PRODUCTION | COURTROOM |
|---|---|
| | DATE AND TIME: |

☐    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION: Frommer Lawrence & Haug LLP, 745 Fifth Avenue, New York, NY 10151 | DATE AND TIME: |
|---|---|

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  See Schedule A, attached hereto.

| PLACE OF PRODUCTION: Frommer Lawrence & Haug LLP, 745 Fifth Avenue, New York, NY 10151 | DATE AND TIME: 11:00 a.m., March 11, 2008 |
|---|---|

☐    YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES: | DATE AND TIME: |
|---|---|

      Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| Issuing Officer's Signature and Title (Indicate if attorney for Plaintiff or Defendant) ATTORNEY FOR DEFENDANTS, *Robert E. Colletti* | Date: February 21, 2008 |
|---|---|

Issuing Officer's Name, Address, and Phone Number
Robert E. Colletti, Frommer Lawrence & Haug LLP, 745 Fifth Avenue, NY, NY 10151, (212) 588-0800

## DEFINITIONS AND INSTRUCTIONS

1.      The form of the responses to Par Pharmaceutical, Inc.'s and Par Pharmaceutical Companies, Inc.'s (collectively "Par") discovery requests shall comply with Rules 26 through 37 of the Federal Rules of Civil Procedure, as applicable.

2.      Par's discovery requests shall be deemed to seek responses as of the date they are served. Any additional responsive information, documents, or things that become known to Grunenthal USA, Inc. up to and including the time of trial shall be furnished to Par within a reasonable time after becoming known. Moreover, if Grunenthal USA, Inc. acquires any information, documents, or things that require an answer to be enlarged, diminished, or otherwise modified, such information, documents, or things shall be supplied to Par within a reasonable time after they are acquired.

3.      The term "Plaintiffs" shall mean and include Purdue Pharma Products L.P., Napp Pharmaceutical Group Ltd., Biovail Laboratories International SRL, and Ortho-McNeil, Inc., any predecessor or successor company or individual, and any corporation or other business entity (whether or not a separate legal entity) subsidiary to, or affiliated with Plaintiffs (including Euro-Celtique S.A. and Mundipharma International Limited), as well as all present and former principals, partners, directors, owners, officers, members, employees, agents, representatives, consultants, and attorneys of Plaintiffs or any affiliated corporation or business entity and any other persons under the control of Plaintiffs.

4.      The phrase "Grunenthal" shall mean and include Grunenthal USA, Inc., any predecessor or successor company or individual, and any corporation or other business entity (whether or not a separate legal entity) subsidiary to, or affiliated with Grunenthal (including Grunenthal GMBH), as well as all present and former principals, partners, directors, owners,

officers, members, employees, agents, representatives, consultants, and attorneys of Grunenthal or any affiliated corporation or business entity and any other persons under the control of Grunenthal.

5.    The term "PTO" shall mean the United States Patent and Trademark Office.

6.    The term "document" shall have the comprehensive meaning, in the broadest sense available pursuant to Rule 34(a) of the Federal Rules of Civil Procedure.

7.    The term "thing" shall mean any physical specimen or tangible item including but not limited to samples, prototypes, mock-ups, test equipment, production equipment, tools, dies, molds, models, three-dimensional illustrations of physical or chemical phenomena and montages of physical items.

8.    The phrase "the '887 patent" shall mean United States Patent No. 6,254,887 entitled "Controlled release tramadol," which issued on July 3, 2001.

9.    The term "communication" shall refer to any exchange or transfer of information between two or more persons or entities, whether written, oral, or in any other form.

10.    The term "concerning" shall mean comprising, containing, constituting, embodying, evidencing, discussing, reflecting, relating to, referring to, or identifying.

11.    The term "person" shall mean any natural person.

12.    The term "prior art" encompasses by way of example and without limitation the subject matter described in each and every subdivision of 35 U.S.C. § 102 and 35 U.S.C. § 103.

13.    The term "and" and "or" shall both be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of a discovery request. The use of a verb in any of these shall be construed as the use of

2

the verb in all other tenses; and the singular form shall be deemed to include the plural and vice versa.

14.    If Grunenthal objects to producing and withholds from production any information, documents, or things requested herein on grounds of attorney-client privilege, work-product immunity or otherwise, Par requests that Grunenthal provide, before the return date, a list identifying any withheld documents, things, or portions thereof.

15.    If any documents or things requested to be produced herein have been lost, discarded, destroyed, or are otherwise unavailable for any reason, they should be identified as completely as possible, by stating without limitation: the pertinent information requested in the preceding paragraph, the date of disposal, the manner of disposal, the reason for disposal, any person, firm or corporation who has possession, custody, or control of a partial or complete copy of such document, and the identity of all persons who participated in the destruction or discarding or who have knowledge of the data and circumstances surrounding the destruction or discarding the document or thing.

16.    Par requests that any purportedly privileged document containing nonprivileged matter be produced with the purportedly privileged portion redacted.

## SCHEDULE A

1.      All documents concerning patent opposition proceedings filed by Grunenthal to oppose Plaintiffs' patents or patent applications directed to a controlled-release formulation for tramadol including, but not limited to, prior art, declarations, expert reports, experiments, and agreements.

2.      All documents concerning Grunenthal's patent opposition proceedings against Napp Pharmaceutical Holdings Limited (including Napp Research Centre Ltd. and Mundipharma) including, but not limited to, prior art, declarations, expert reports, experiments, and agreements concerning a controlled-release formulation for tramadol.

3.      All documents concerning agreements from 1985 to the present between Grunenthal and Plaintiffs concerning a controlled-release formulation for tramadol including, but not limited to, supply, distribution, license, and settlement agreements.

4.      All documents concerning Grunenthal's research and development of controlled-release formulations of tramadol.

5.      Documents sufficient to show when Grunenthal began formulating controlled-release tramadol formulations including, but not limited to, Grunenthal's once-a-day and twice-a-day controlled-release tramadol formulations.

6.      Documents sufficient to show when Grunenthal first manufactured, used, sold or offered to sell a controlled-release tramadol formulation.

7.      Documents sufficient to show when Grunenthal first informed any person outside of Grunenthal about Grunenthal's controlled-release tramadol formulations including, but not limited to, Grunenthal's once-a-day and twice-a-day controlled-release tramadol formulations.

4

8.    Documents sufficient to show Grunenthal's formulation for Tramal Long, Tramal SR, and Zydol SR.

9.    Documents sufficient to show when Grunenthal first marketed Tramal Long, Tramal SR, and Zydol SR.

10.    Any patent opinions or analyses provided by Plaintiffs to Grunenthal concerning a controlled-release formulation for tramadol.

11.    All publications disclosing controlled-release formulations for tramadol prior to May 10, 1994.

# EXHIBIT 3

IN THE UNITED STATES PATEND DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PURDUE PHARMA PRODUCTS.,
NAPP PHARMACEUTICAL GROUP LTD.,          SUBPOENA IN A CIVIL CASE
BIOVAIL LABORATORIES INTERNATIONAL
SRL, and ORTHO-MCNEIL, INC.,             CASE NUMBER: 07-255-JJF
Plantiffs,

                    -v-

PAR PHARMACEUTICAL, INC. and PAR
PHARMACEUTICAL COMPANIES, INC.
Defendant.

## GRÜNENTHAL USA'S RESPONSE TO SUBPOENA

Grünenthal USA responds to the subpoena served on February 25, 2008 by Par

Pharmaceuticals, Inc. and Pharmaceutical Companies, Inc. in the subject Civil Action as follows.

**General Objections**

Grünenthal USA objects to the definition of "Grünenthal" in the subpoena as being unduly

broad. That definition, for example, includes the parent, Grünenthal G.m.b.H. Grünenthal USA,

established in 2001, is a separate corporation and does not function as an agent of Grünenthal G.m.b.H.

The documents of Grünenthal G.m.b.H. are not within the custody or control of Grünenthal USA. See,

e.g.: *Securities and Exchange Commission v. Credit Bank Corp., Ltd.*, 194 F.R.D 469 (SD NY 2000)

Grünenthal USA further objects to the categories of the subpoena as being unduly broad

and burdensome. The styled action is a patent infringement suit brought by Purdue Pharma Products

L.P. et al. against Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc. under Miller et al.

United States Patent 6,254,887 with the claims directed to a controlled release oral pharmaceutical

preparation containing tramadol. The suit is an ANDA suit that in no way involves Grünenthal USA.

Grünenthal USA is not involved with the marketing, sale, or distribution of any tramadol product in the

United States. The drug, tramadol, is the subject of U.S. patent 3,652,589, long since expired.

There has been no showing that any information sought by this subpoena is relevant to the issues in the litigation or, to the extent possibly relevant to an ANDA suit, there has been no showing that such information is not also available from the other parties or public records.

Grünenthal USA also objects to the categories of the subpoena insofar as they are not limited to non-confidential or non-trade secret information.

**Response to Request for Documents**

Without in any way waiving any of the above objections:

Grünenthal USA objects to category 8 because it seeks information already available from public records:  See eg:

http://emc.medicines.org.uk/emc/assets/c/html/displaydoc.asp?documentid=16394

http://emc.medicines.org.uk/emc/assets/c/html/displaydoc.asp?documentid=16374

http://emc.medicines.org.uk/emc/assets/c/html/displaydoc.asp?documentid=16470

http://emc.medicines.org.uk/emc/assets/c/html/displaydoc.asp?documentid=16471

Grünenthal USA states that there are no documents within its possession or control that fall within the categories 1-7 or 9-11 of the subpoena.

Respectfully Submitted,

Dale H. Hoscheit
Banner & Witcoff, Ltd.
1100 13th Street, N.W.
Suite 1200
Washington, D.C.  20005-4051
(202) 824-3000

Attorneys for Grünenthal USA, Inc.

## CERTIFICATE OF SERVICE

I, Dale H. Hoscheit, certify that on this 10th day of March 2008 a copy of the foregoing

"Grünenthal USA's Response to Subpoena" was served via first-class mail' postage prepaid on:

Dale H. Hoscheit

---

FROMMER LAURENCE & HAUG LLP
Robert E. Colletti
745 Fifth Avenue
New York, New York 10151
*Attorneys for Defendants*
   *Par Pharmaceuticals Inc.*
   *Par Pharmaceutical Companies, Inc.*

---

CONNOLLY BOVE LODGE & HUTZ LLP
Mary W. Bourke (#2356)
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
*Attorneys for Plaintiff*
   *Ortho-McNeil, Inc.*

---

MORRIS, NICHOLS, ARSHT, & TUNNELL LLP
Jack B. Blumenfeld (#1041)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
*Attorneys for Plantiffs*
   *Purdue Pharma Products L.P.*
   *And Napp Pharmaceutical Group Ltd.*

---

THE BAYARD FIRM
Rickard D. Kirk (#922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
*Attorneys for Plaintiff*
   *Biovail Laboratories International, SRL*

---

RICHARDS, LAYTON & FINGER P.A.
Frederick L. Cottrell, III (#2555)
Steven J. Fineman (#4025)
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
*Attorneys for the Defendant*
   *Par Pharmaceutical, Inc. and*
   *Par Pharmaceutical Companies, Inc.*

# EXHIBIT 4



1100 13TH STREET, N.W.
SUITE 1200
WASHINGTON, DC 20005-4051

TEL: 202.824.3000
FAX: 202.824.3001
www.bannerwitcoff.com

April 7, 2008

Mr. Robert E. Colletti
FROMMER LAWRENCE & HAUG, LLP
745 Fifth Avenue
New York, NY 10151

> Re:     Purdue/Napp et al. v. Par Pharmaceutical, Inc., et al.
>         C.A. No. 07-255(JJF), 07-414(JJF), 07-666(JJF)

Dear Rob:

This is a follow-up to our telephone conversation of April 3rd and to your letters of March 25 and April 2.

As a threshold matter, your information regarding Grunenthal USA set forth in your letter of March 25 is incorrect. Mr. Wirtz is not the chief executive of Grunenthal USA, nor is he CEO of Grunenthal GmbH. There is no CEO of Grunenthal GmbH. Instead there is, as you note, a four member executive committee at Grunenthal GmbH.

Grunenthal USA (hereinafter "USA) does not have custody or control over the GmbH documents you requested. USA is not the alter ego of GmbH; it is not involved in the marketing, sale or distribution of any tamadol product in the US. Neither USA nor GmbH has any relation to the subject U.S. cause of action and the documents you request, from a time period years before USA was even founded, have no relation to USA's business activity.

Frankly, I was surprised at the breadth of the requests set forth in your letter of April 2, particularly in light of our telephone conversations. Consistent with its position in the past, Grunenthal GmbH has declined to produce the requested documents. In this regard see my letter of April 15, 2004 to Daniel G. Brown of your firm.

CHICAGO, IL
WASHINGTON, DC
BOSTON, MA
PORTLAND, OR

Mr. Robert E. Colletti
FROMMER LAWRENCE & HAUG, LLP
Page 2

It is a matter of public record that US Patent 5,601,842, assigned to Grunenthal GmbH, contains claims to a sustained release tramadol product. As the patent shows, the German application priority was filed September 3, 1993, after the May 10, 1993 priority application for the patent in suit. Moreover, the relevant GmbH U.S. application was not filed until September 2, 1994, again after the May 10, 1994 U.S. filing date to which that activity does not constitute prior art or prior invention as you seem to suggest. I remain at a loss to understand the relevance of your requests.

Yours truly,

Dale H. Hoscheit, Esq.

DHH/jmw

# EXHIBIT 5

12. **Identification and Description of Documents Sought From Dr. Paques:**

1. All agreements between Grunenthal and any of the plaintiffs (affiliates and related companies including, but not limited to, Napp Research Centre Ltd., Mundipharma, and Euro-Celtique) concerning tramadol.

2. All settlement agreements between Grunenthal and any of the plaintiffs (affiliates and related companies including, but not limited to, Napp Research Centre Ltd., Mundipharma, and Euro-Celtique), concerning a controlled-release formulation for tramadol.

3. All documents including, but not limited to, memoranda, responses, communications, prior art, declarations, expert reports, and agreements from each opposition proceeding involving Grunenthal concerning a controlled-release formulation for tramadol.

4. Documents sufficient to show when Grunenthal first made a controlled-release formulation for tramadol.

5. Documents sufficient to show when Grunenthal first made Tramal Long.

6. Documents sufficient to show when Grunenthal first made Tramal SR.

7. Documents sufficient to show when Grunenthal first made Zydol SR.

8. All publications discussing controlled-release tramadol formulations prior to 1995.

9. Agreements showing the current commercial relationship between plaintiffs (including Mundipharma) and Grunenthal, concerning controlled-release tramadol formulations.

This Court requests that the German Court order Dr. Paques to bring all documents identified to the date scheduled for the witness hearing.

13. **List of Questions to be Posed to Dr. Paques at his Witness Hearing**

A. **Topic No. 1: Introductory Questions**

These questions are important to learn the witness' qualifications, experience, the circumstances under which he learned of the request for his testimony, and his preparation for his testimony. This information may important in determining the witness' competence and credibility (i.e., the weight the Court should give to the witness' testimony).

**List of specific questions:**

1. Please state your full name.

10

# EXHIBIT 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X

PURDUE PHARMA PRODUCTS L.P.,
NAPP PHARMACEUTICAL GROUP LTD.,
BIOVAIL LABORATORIES INTERNATIONAL
SRL, and ORTHO-MCNEIL, INC.,

        Plaintiffs,

   - against -

PAR PHARMACEUTICAL, INC., and PAR
PHARMACEUTICAL COMPANIES, INC.,

        Defendants.

------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: May 12, 2008

M8-85 (DAB)
MEMORANDUM & ORDER

DEBORAH A. BATTS, United States District Judge

    This is a miscellaneous action on a Motion to Compel Non-Party Grunenthal USA Inc. to comply with a subpoena served by Defendants on February 25, 2008.  To date Grunenthal USA has refused to produce the requested documents stating, _inter alia_, that the documents sought are the documents of their corporate parent, Grunenthal GmbH, a German company, and not within the control of Grunenthal U.S.A.  (Def. Mot. to Compel at Ex. B.)

    The Court is aware that Defendants are simultaneously "seeking documents and a deposition of Grunenthal GmbH though a motion for issuance of a letter of request pursuant to the Hague Convention."  (_Id._ at 1.)  According to Grunenthal, "that application has been fully briefed and submitted for decision by Judge Farnan," in Delaware.  (Opp. to Mot. to Compel at 1.)

Judge Farnan is the judge assigned the entire matter currently

pending in the United States District Court for the District of

Delaware.  (Case No: 07-Civ-255 (JJF) Dist. of Delaware.)

Therefore, the Court is unpersuaded by Defendants argument that

the matter is urgent "since fact and expert discovery are set to

close on May 15th."  (Rep. Mem. of Law at 10.)

   It is appropriate for this Court to defer to the Judge

permanently assigned to this case where the subpoena before this

Court is merely duplicative of another effort, before the primary

Court, to obtain the same documents.


Dated:     New York, New York

           May 12, 2008

                                    Deborah A. Batts
                              United States District Judge


2

# EXHIBIT 7

ATTACHMENT A

AUG 06 2003 15:52 FR BU? SS SERVICES     609 984 6708 TO 9538?    0

**STATE OF NEW JERSEY**
**DIVISION OF REVENUE**

PO Box 308
Trenton, NJ 08615

## PUBLIC RECORDS FILING FOR NEW BUSINESS ENTITY

Fill out all information below INCLUDING INFORMATION FOR ITEM 11, and sign in the space provided. Please note that once filed, this form constitutes your original certificate of incorporation/formation/registration/authority, and the information contained in the filed form is considered public. Refer to the instructions for delivery/return options, filing fees and field-by-field requirements. Remember to remit the appropriate fee amount. Use attachments if more space is required for any field, or if you wish to add attachments for the public record.

FILED

AUG 5 2003

1. Business Name:
Grunenthal USA, Inc.

2. Type of Business Entity:     F R
(See Instructions for Codes, Page 21, Item 2)

3. Business Purpose: Development of pharmaceutical
(See Instructions) state, new products

4. Stock (Domestic Corporations Only – Total Shares):

5. Duration (if Indefinite or Perpetual, Leave Blank):

6. State of Formation/Incorporation (Foreign Entities Only):
Delaware

7. Date of Formation/Incorporation (Foreign Entities Only):
September 18, 2001

8. Contact Information:
Registered Agent Name: The Corporation Trust Company

Registered Office
(Must be a New Jersey address with street address)
Street 820 Bear Tavern Road.
City West Trenton, New Jersey     Zip 08628

Main Business or Principal Business Address
Street One Pluckemin Way
City Bedminster     State NJ     Zip 07921-1522

9. Management (Domestic Corporations and Limited Partnerships Only)
• For-Profit and Professional Corporations list initial Board of Directors, minimum of 1;
• Domestic Non-Profits list Board of Trustees, minimum of 3;
• Limited Partnerships list all General Partners.

| Name | Street Address | City | State | Zip |
|------|---------------|------|-------|-----|
| | | | | |
| | | | | |

The Signatures below certify that the business entity has complied with all applicable filing requirements pursuant to the laws of the State of New Jersey.

10. Incorporators (Domestic Corporations Only, minimum of 1)

| Name | Street Address | City | State | Zip |
|------|---------------|------|-------|-----|

010909381

** Signature(s) for the Public Record (See instructions for information on Signature Requirements)

| Signature | Name | Title | Date |
|-----------|------|-------|------|
| (signed) | Dr. Eric-Paul Paques | President | 7/31/03 |

1285227
2465407

TOTAL P.02

AUG 05 2003 16:27
AUG-06-2003  15:46     609 984 6708     97%     609 538 1130     PAGE.02     P.02

# EXHIBIT 8



**Decide with Confidence**

# Comprehensive Report

To save report(s) to your PC, click here for instructions.

📄 Print this Report

Copyright 2008 Dun & Bradstreet - Provided under contract for the exclusive use of subscriber 001061498L

Report Printed: FEB 14 2008

# Overview

**BUSINESS SUMMARY**

**GRUNENTHAL USA, INC**
    (FOREIGN PARENT: GMBH , AACHEN, GERMANY)
**1 Pluckemin Way**
**Bedminster, NJ 07921**

**D&B D-U-N-S Number:**    13-380-9181



**D&B's Credit Limit Recommendation**
How much credit should you extend?
· Learn More                    › View Now

**Payment Trends Profile**
Payment trends and industry benchmarks
        › Jump to Payment Trends

This is a **single location.**

| | |
|---|---|
| **Telephone:** | 908 306-0024 |
| **Chief executive:** | SABASTIN WIRTZ, PRINCIPAL |
| **Year started:** | 2003 |
| **Employs:** | 15 |
| **History:** | INCOMPLETE |
| **SIC:** | 8249 |
| **Line of business:** | Clinical steady center |

**Credit Score Class:** 2

Moderate risk of severe payment delinquency over next 12 months



**Financial Stress Class:** 1

Low risk of severe financial stress over the next 12 months



**12-Month D&B PAYDEX®:** 80

When weighted by dollar amount, payments to suppliers average generally within terms.

| | |
|---|---|
| **D&B Rating:** | **ER6** |
| **Number of employees:** | ER6 is **10 to 19** employees. |



## EXECUTIVE SUMMARY

The **Financial Stress Class of 1** for this company shows that firms with this classification had a failure rate of 1.2% (120 per 10,000), which is lower than the average of businesses in D&B's database

The **Credit Score class of 2** for this company shows that 4.6% of firms with this classification paid one or more bills severely delinquent, which is lower than the average of businesses in D&B's database.

| Predictive Scores | This Business | Comments |
|---|---|---|
| Financial Stress Class | 1 | Failure Rate lower than the average of businesses in D&B's database |
| Financial Stress Score | 1490 | Highest Risk: 1,001; Lowest Risk: 1,875 |
| Credit Score Class | 2 | Probability of Severely Delinquent Payment is lower than the average of businesses in D&B's database. |
| Credit Score | 538 | Highest Risk: 101; Lowest Risk: 670 |
| **Other Key Indicators** | | |
| PAYDEX Scores | generally within terms | Pays more promptly than the average for its industry of 3 days beyond terms |
| Industry Median | 3 days beyond terms | |
| Present management control | 5 years | |
| UCC Filings | UCC filing(s) are not reported for this business | |
| Public Filings | No record of open Suit(s), Lien(s), or Judgment(s) in the D&B database | |
| History | Is incomplete | |

## CREDIT CAPACITY SUMMARY

**D&B Rating:**          **ER6**

 **Number of employees:** ER6 indicates **10 to 19 employees.**

Certain lines of business, primarily banks, insurance companies and government entities, do not lend themselves to classification under the D&B Rating system. Instead, we assign these types of businesses an Employee Range symbol based on the number of people employed. No other significance should be attached to this symbol. The ERN should not be interpreted negatively. It simply means we do not have information indicating how many people are employed at this firm. For more information, see the D&B Rating Key.

| # of Employees Total: | 15 | Payment Activity:<br>(based on 13 experiences) | |
|---|---|---|---|
| | | Average High Credit: | $216 |
| | | Highest Credit: | $5,000 |
| | | Total Highest Credit: | $6,950 |

---

Jump to:

Overview    |    Payments    |    Public Filings    |    History & Operations    |    Banking & Finance

# Scores  ☑ D&B EXCLUSIVE

## FINANCIAL STRESS SUMMARY

The Financial Stress Summary Model predicts the likelihood of a firm ceasing business without paying all creditors

In full, or reorganization or obtaining relief from creditors under state/federal law over the next 12 months. Scores were calculated using a statistically valid model derived from D&B's extensive data files.

**Financial Stress Class:** **1**    

Low risk of severe financial stress, such as a bankruptcy, over the next 12 months.

### Incidence of Financial Stress

Among Businesses with this Class:        1.20% (120 per 10,000)
Average of Businesses in D&B's Database: 2.60% (260 per 10,000)

**Financial Stress National Percentile:** **95** (Highest Risk: 1; Lowest Risk: 100)

**Financial Stress Score:** **1490** (Highest Risk: 1,001; Lowest Risk: 1,875)

The Financial Stress Score of this business is based on the following factors:

- Payment information in the D&B files indicates no slow payment(s) nor negative comment(s).
- No record of open suit(s), lien(s), or judgment(s) in the D&B files.
- Control age or date entered in D&B files indicates higher risk.

### Notes:

- The Financial Stress Class indicates that this firm shares some of the same business and financial characteristics of other companies with this classification. It does not mean the firm will necessarily experience financial stress.
- The Incidence of Financial Stress shows the percentage of firms in a given Class that discontinued operations with loss to creditors. The Average Incidence of Financial Stress is based on businesses in D&B's database and is provided for comparative purposes.
- The Financial Stress National Percentile reflects the relative ranking of a company among all scorable companies in D&B's file.
- The Financial Stress Score offers a more precise measure of the level of risk than the Class and Percentile. It is especially helpful to customers using a scorecard approach to determining overall business performance.
- All Financial Stress Class, Percentile, Score and Incidence statistics are based on sample data from 2004.



**Financial Stress Norms Comparison (%)**

| Norms | National % |
|---|---|
| This Business | 95 |
| Region:<br>**MIDDLE ATLANTIC** | 50 |
| Industry:<br>**PERSONAL AND CONSUMER SERVICES** | 47 |
| Employee Range:<br>**10-19** | 63 |
| Years in Business:<br>**3-5** | 42 |

Region=MIDDLE ATLANTIC
Industry=PERSONAL AND CONSUMER SERVICES
Employee Range=10-19
Years in Business=3-5

This business has a Financial Stress Percentile that shows:

- Lower risk than other companies in the same region.
- Lower risk than other companies in the same industry.
- Lower risk than other companies in the same employee size range.
- Lower risk than other companies with a comparable number of years in business.

## CREDIT SCORE CLASS SUMMARY

The Credit Score Class predicts the likelihood of a firm paying in a severely delinquent manner (90+ Days Past Terms) over the next twelve months. It was calculated using statistically valid models and the most recent payment information in D&B's files.

|  | High | Moderate | Low |
|---|---|---|---|

**Credit Score Class: 2**

```
5      4      3      2      1
```

Moderate risk of severe payment delinquency over next 12 months.

### Incidence of Delinquent Payment

Among Companies with this Class:                          4.60%
Average Compared to Businesses in D&B's Database: 20.10%

**Credit Score Percentile: 90** (Highest Risk: 1; Lowest Risk: 100)

**Credit Score: 538** (Highest Risk: 101; Lowest Risk: 670)

The Credit Score of this business is based on the following factors:

- Payment information in the D&B files indicates no slow payment(s) nor negative comment(s).
- No record of open suit(s), lien(s), or judgment(s) in the D&B files.
- Control age or date entered in D&B files indicates higher risk.

**Notes:**

- The Credit Score Class indicates that this firm shares some of the same business and payment characteristics of other companies with this classification. It does not mean the firm will necessarily experience delinquency.
- The Incidence of Delinquent Payment is the percentage of companies with this classification that were reported 90 days past due or more by creditors. The calculation of this value is based on an inquiry weighted sample.
- The Percentile ranks this firm relative to other businesses. For example, a firm in the 80th percentile has a lower risk of paying in a severely delinquent manner than 79% of all scorable companies in D&B's files.
- The Credit Score offers a more precise measure of the level of risk than the Class and Percentile. It is especially helpful to customers using a scorecard approach to determining overall business performance.
- All Credit Class, Percentile, Score and Incidence statistics are based on sample data from 2004.

| Norms | National % |
|---|---|
| This Business | 90 |
| Region: **MIDDLE ATLANTIC** | 47 |
| Industry: **PERSONAL AND** | 46 |



**Credit Score Norms Comparison (%)**

Region=MIDDLE ATLANTIC
Industry=PERSONAL AND CONSUMER SERVICES
Employee Range=10-19
Years in Business=3-5

**CONSUMER SERVICES**

| | |
|---|---|
| Employee Range: **10-19** | 66 |
| Years in Business: **3-5** | 50 |

This business has a Credit Score Percentile that shows:

- Lower risk than other companies in the same region.
- Lower risk than other companies in the same industry.
- Lower risk than other companies in the same employee size range.
- Lower risk than other companies with a comparable number of years in business.

**Jump to:**

Overview    |    Scores    |    Public Filings    |    History & Operations    |    Banking & Finance

## Payments ☑ D&B EXCLUSIVE

### PAYMENT TRENDS

| | | | | |
|---|---|---|---|---|
| Total Payment Experiences in D&B's File: 13 | | Current PAYDEX is: | 80 | equal to generally within terms |
| Payments Within Terms: (not dollar weighted) | 100% | Industry Median is: | 78 | equal to 3 days beyond terms |
| Total Placed For Collection: | 0 | Payment Trend currently is: | ⟷ | unchanged, compared to payments three months ago |
| Average Highest Credit: | $216 | | | |
| Largest High Credit: | $5,000 | Indications of slowness can be the result of dispute over merchandise, skipped invoices, etc. Accounts are sometimes placed for collection even though the existence or amount of the debt is disputed. | | |
| Highest Now Owing: | $1,000 | | | |
| Highest Past Due: | $0 | | | |

### PAYDEX Scores

Shows the D&B PAYDEX scores as calculated on the most recent 3 months and 12 months of payment experiences.

The D&B PAYDEX is a unique, dollar weighted indicator of payment performance based on up to payment experiences as reported to D&B by trade references. A detailed explanation of how to read and interpret PAYDEX scores can be found at the end of this report.



**3-Month D&B PAYDEX: 80**
When weighted by dollar amount, payments to suppliers average within terms.

Based on payments collected over last 3 months.



**12-Month D&B PAYDEX: 80**
When weighted by dollar amount, payments to suppliers average generally within terms.

Based on payments collected over last 12 months.

**PAYDEX Yearly Trend**

**12 Month PAYDEX Scores Comparison to Industry**

|  | 3/07 | 4/07 | 5/07 | 6/07 | 7/07 | 8/07 | 9/07 | 10/07 | 11/07 | 12/07 | 1/08 | 2/08 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| This Business | 80 | 80 | 80 | 74 | 74 | 74 | 74 | 74 | 80 | 80 | 80 | 80 |
| **Industry Quartiles** | | | | | | | | | | | | |
| Upper | 80 | | | 80 | | | 80 | | | 80 | | |
| Median | 77 | | | 78 | | | 78 | | | 78 | | |
| Lower | 70 | | | 70 | | | 70 | | | 70 | | |

Shows the trend in D&B PAYDEX scoring over the past 12 months.



**Last 12 Months**

Based on payments collected over the last 12 months.

- Current PAYDEX for this Business is 80, or equal to generally within terms
- The 12-month high is **80**, or equal to generally within terms
- The 12-month low is **74**, or equal to 9 days beyond terms

**PAYDEX Comparison to Industry**

Shows PAYDEX scores of this Business compared to the Primary Industry from each of the last four quarters. The Primary Industry is Clinical steady center, based on SIC code 8249.

**Quarterly PAYDEX Scores Comparison to Industry**



| Previous Year | 3/06 | 6/06 | 9/06 | 12/06 | | Current Year | 3/07 | 6/07 | 9/07 | 12/07 |
|---|---|---|---|---|---|---|---|---|---|---|
| **This Business** | 78 | 80 | 80 | 80 | | **This Business** | 80 | 74 | 74 | 80 |
| **Industry Quartiles** | | | | | | **Industry Quartiles** | | | | |
| Upper | 80 | 80 | 80 | 80 | | Upper | 80 | 80 | 80 | 80 |
| Median | 77 | 78 | 78 | 77 | | Median | 77 | 78 | 78 | 78 |
| Lower | 69 | 70 | 70 | 70 | | Lower | 70 | 70 | 70 | 70 |



PAYDEX — 100 90 80 70 60 50 40 30 20 UN.

Q1 2007    Q2 2007    Q3 2007    Q4 2007

**Last 12 Months**

Based on payments collected over the last 4 quarters.

**Score Comparison Key:**   ▷ This Business   ▲ Industry upper quartile
                                              ■ Industry median
                                              ▼ Industry lower quartile

- Current **PAYDEX** for this Business is **80**, or equal to generally within terms
- The present industry **median score** is **78**, or equal to 3 days beyond terms.

- Industry upper quartile represents the performance of the payers in the 75th percentile
- Industry lower quartile represents the performance of the payers in the 25th percentile

**Payment Habits**

For all payment experiences within a given amount of credit extended, shows the percent that this Business paid within terms. Provides number of experiences used to calculate the percentage, and the total dollar value of the credit extended.

| $ Credit Extended | % of Payments Within Terms | # Payment Experiences | $ Total Dollar Amount |
|---|---|---|---|



| | | |
|---|---|---|
| Over 100,000 0% | 0 | $0 |
| 50,000-100,000 0% | 0 | $0 |
| 15,000-49,999 0% | 0 | $0 |
| 5,000-14,999 0% | 0 | $0 |
| 1,000-4,999 100% | | $1,000 |
| Under 1,000 100% | 8 | $950 |

Based on payments collected over the last 12 months.

Payment experiences reflect how bills are met in relation to the terms granted. In some instances, payment beyond terms can be the result of disputes over merchandise, skipped invoices, etc.

**PAYMENT SUMMARY**

The Payment Summary section reflects payment information in D&B's file as of the date of this report.

There are 13 payment experiences in D&B's file for the most recent 12 months, with 8 experiences reported during the last three month period.

Below is an overview of the company's dollar-weighted payments, segmented by its suppliers' primary industries:

| | Total Rcv'd (#) | Total Dollar Amts ($) | Largest High Credit ($) | Within Terms (%) | Days Slow <31 (%) | 31-60 (%) | 61-90 (%) | 90> |
|---|---|---|---|---|---|---|---|---|
| **Top industries:** | | | | | | | | |
| Nonclassified | 3 | 600 | 500 | 100 | 0 | 0 | 0 | 0 |
| Telephone communictns | 2 | 150 | 100 | 100 | 0 | 0 | 0 | 0 |
| Photocopying service | 2 | 50 | 50 | 100 | 0 | 0 | 0 | 0 |
| Misc business service | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Help supply service | 1 | 1,000 | 1,000 | 100 | 0 | 0 | 0 | 0 |
| Misc equipment rental | 1 | 100 | 100 | 100 | 0 | 0 | 0 | 0 |
| Short-trm busn credit | 1 | 50 | 50 | 100 | 0 | 0 | 0 | 0 |
| **Other payment categories:** | | | | | | | | |
| Cash experiences | 0 | 0 | 0 | | | | | |
| Payment record unknown | 1 | 5,000 | 5,000 | | | | | |
| Unfavorable comments | 0 | 0 | 0 | | | | | |
| **Placed for collections:** | | | | | | | | |
| With D&B | 0 | 0 | 0 | | | | | |
| Other | 0 | N/A | 0 | | | | | |
| Total in D&B's file | 13 | | 5,000 | | | | | |

The highest **Now Owes** on file is $1,000 The highest **Past Due** on file is $0

Accounts are sometimes placed for collection even though the existence or amount of the debt is disputed. Indications of slowness can be result of dispute over merchandise, skipped invoices, etc.

**PAYMENT DETAILS**

**Detailed payment history**

| Date Reported (mm/yy) | Paying Record | High Credit ($) | Now Owes ($) | Past Due ($) | Selling Terms | Last Sale Within (months) |
|---|---|---|---|---|---|---|
| 01/08 | Ppt | 1,000 | 1,000 | 0 | | 1 mo |
| | Ppt | 50 | 0 | 0 | | 4-5 mos |
| 12/07 | Ppt | 500 | 0 | 0 | | 1 mo |
| | Ppt | 100 | 100 | 0 | | 1 mo |
| | Ppt | 50 | 50 | | | 1 mo |
| | Ppt | 0 | 0 | | | 1 mo |
| 11/07 | Ppt | 50 | 50 | | | 4-5 mos |
| | Ppt | 50 | 50 | | | 4-5 mos |
| 09/07 | Ppt | 100 | 100 | | Lease Agreemnt | 6-12 mos |
| 07/07 | Ppt | 50 | 0 | 0 | | 6-12 mos |
| 02/07 | (011) | 5,000 | 0 | 0 | | 6-12 mos |
| 12/06 | Ppt | 0 | 0 | 0 | | 6-12 mos |
| | Ppt | 0 | 0 | 0 | | 6-12 mos |

Each experience shown is from a separate supplier. Updated trade experiences replace those previously reported.

---

**Jump to:**

Overview   |   Scores   |   Payments   |   History & Operations   |   Banking & Finance

# Public Filings

### PUBLIC FILINGS

A check of D&B's public records database indicates that no filings were found for GRUNENTHAL USA, INC at 1 Pluckemin Way, Bedminster NJ.

D&B's extensive database of public record information is updated daily to ensure timely reporting of changes and additions. It includes business-related suits, liens, judgments, bankruptcies, UCC financing statements and business registrations from every state and the District of Columbia, as well as select filing types from Puerto Rico and the U.S. Virgin Islands.

D&B collects public records through a combination of court reporters, third parties and direct electronic links with federal and local authorities. Its database of U.S. business-related filings is now the largest of its kind.

### GOVERNMENT ACTIVITY

**Activity summary**

| | |
|---|---|
| Borrower (Dir/Guar): | NO |
| Administrative debt: | NO |
| Contractor: | NO |
| Grantee: | NO |
| Party excluded from federal program(s): | NO |

**Possible candidate for socio-economic program consideration**

| | |
|---|---|
| Labor surplus area: | N/A |
| Small Business: | YES (2008) |
| 8(A) firm: | N/A |

The details provided in the Government Activity section are as reported to Dun & Bradstreet by the federal government and other sources.

---

**Jump to:**

Overview    |    Scores    |    Payments    |    Public Filings    |    Banking & Finance

## History & Operations

**HISTORY**

The following information was reported **11/08/2007**:

**Officer(s):**    SABASTIN WIRTZ, PRINCIPAL

**DIRECTOR(S):**    THE OFFICER(S)

Corp orate details available.

Business started 2003.

SABASTIN WIRTZ. Antecedents are undetermined.

**OPERATIONS**

11/08/2007

| | |
|---|---|
| **Description:** | Subsidiary of GMBH, Greglerstrassee 6, . |
| | GMBH Greglerstrassee 6, Aachen, Germany, D-52099. |
| | Operates a clinical steady on drugs. |
| **Employees:** | 15 which includes officer(s). |
| **Facilities:** | Leases premises in building. |
| **Location:** | Suburban business section on well traveled highway. |

**SIC & NAICS**

**SIC:**
Based on information in our file, D&B has assigned this company an extended 8-digit SIC. D&B's use of 8-digit SICs enables us to be more specific to a company's operations than if we use the standard 4-digit code.

The 4-digit SIC numbers link to the description on the Occupational Safety & Health Administration (OSHA) Web site. Links open in a new browser window.

82490300    Medical training services

**NAICS:**
611519  Other Technical and Trade Schools

**Jump to:**

Overview    |    Scores    |    Payments    |    Public Filings    |    History & Operations

## Banking & Finance

**KEY BUSINESS RATIOS**

D&B has been unable to obtain sufficient financial information from this company to calculate business ratios. Our check of additional outside sources also found no information available on its financial performance.
To help you in this instance, ratios for other firms in the same industry are provided below to support your analysis of this business.

**Based on this number of establishments:** 14

### Industry Norms based on 14 establishments

|  | This Business | Industry Median | Industry Quartile |
|---|---|---|---|
| **Profitability** |  |  |  |
| **Return on Sales** | UN | 4.0 | UN |
| **Return on Net Worth** | UN | 12.5 | UN |
| **Short-Term Solvency** |  |  |  |
| **Current Ratio** | UN | 2.6 | UN |
| **Quick Ratio** | UN | 2.2 | UN |
| **Efficiency** |  |  |  |
| **Assets Sales** | UN | 76.6 | UN |
| **Sales / Net Working Capital** | UN | 6.3 | UN |
| **Utilization** |  |  |  |
| **Total Liabs / Net Worth** | UN | 35.2 | UN |

UN = Unavailable

**FINANCE**

**11/08/2007**

Sources contacted declined information on November 5, 2007.

**CUSTOMER SERVICE**

If you have questions about this report, please call our Customer Resource Center at 1.800.234.3867 from anywhere within the U.S. If you are outside the U.S. contact your local D&B office.

*** Additional Decision Support Available ***

Additional D&B products, monitoring services and specialized investigations are available to help you evaluate this company or its industry. Call Dun & Bradstreet's Customer Resource Center at 1.800.234.3867 from anywhere within the U.S. or visit our website at www.dnb.com.

---

Copyright 2008 Dun & Bradstreet - Provided under contract for the exclusive use of subscriber 001061498L

# EXHIBIT 9

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PURDUE PHARMA PRODUCTS L.P.,<br>NAPP PHARMACEUTICAL GROUP LTD<br>BIOVAIL LABORATORIES INTERNATIONAL<br>SRL, and ORTHO-MCNEIL, INC.<br><br>     Plaintiffs,<br><br>v.<br><br>PAR PHARMACEUTICAL, INC. and PAR<br>PHARMACEUTICAL COMPANIES, INC.<br><br>     Defendants. | SUBPOENA IN A CIVIL CASE<br><br>DOCKET NO. M8-85<br><br>Case pending in the District of Delaware –<br>Case No. 07-255-JJF |

### DECLARATION OF JOANN PASSERELLI

I, JoAnn Passerelli, hereby declare:

1.   THAT I am a U.S. citizen residing at 317 Hoover Avenue, Edison, New Jersey 08837;

2.   THAT I am the Senior Operational Officer for Grünenthal USA and have held that position for the past two (2) years. For a year prior to that I was head of Accounting and Finance;

3.   THAT Mr. Sebastian Wirtz is not now and has never been an officer or principal of Grünenthal USA;

4.   THAT Dr. Eric-Paul Paques is and has been President of Grünenthal USA since its incorporation in 2001 (see Attachment A). He is the only one of the three member board of Grünenthal USA who is also a member of the four member Executive Board of Grünenthal GmbH.

1

5.      THAT Grünenthal USA, a corporation with fourteen (14) employees, does not manufacture or service any product, nor does it market or sell any product. Its business is to provide operational support for clinical trials and provide U.S. regulatory expertise when needed. None of these activities involves any tramadol product;

6.      THAT Grünenthal USA does not have custody or control of the Grünenthal GmbH documents requested by the subpoena. Grünenthal GmbH was provided Schedule A of the subpoena but denied a request from Grünenthal USA to provide the requested documents.

7.      I declare under penalty of perjury that the foregoing is true and correct.

Date: 4·28·08                    By: _JoAnn Passerelli_
                                     JoAnn Passerelli

2

AUG 06 2003 15:52 FR BU~ SS SERVICES    609 984 6708 TO 9538~ ~0    ATTACHMENT A

**STATE OF NEW JERSEY**
**DIVISION OF REVENUE**

PO Box 308
Trenton, NJ 08625

## PUBLIC RECORDS FILING FOR NEW BUSINESS ENTITY

Fill out all information below INCLUDING INFORMATION FOR ITEM 11, and sign in the space provided. Please note that once filed, this form constitutes your original certificate of incorporation/formation/registration/authority, and the information contained in the filed form is considered public. Refer to the instructions for delivery/return options, filing fees and field-by-field requirements. Remember to remit the appropriate fee amount.Use attachments if more space is required for any field, or if you wish to add attachments for the public record.

AUG 5 2003

1. Business Name:
Grunenthal USA, Inc.

2. Type of Business Entity: __F R__
(See Instructions for Codes, Page 21, Item 2)

3. Business Purpose: Development of pharmaceutical
(See Instructions) Drugs, products

4. Stock (Domestic Corporations Only - Total Shares):

5. Duration (If Indefinite or Perpetual, Leave Blank):

6. State of Formation/Incorporation (Foreign Entities Only):

7. Date of Formation/Incorporation (Foreign Entities Only):
September 18, 2001

Delaware

8. Contact Information:
Registered Agent Name: The Corporation Trust Company

Registered Office
(Must be a New Jersey address with street address)

Street 820 Bear Tavern Road

City West Trenton, New Jersey    Zip 08628

Main Business or Principal Business Address

Street One Fluckemin Way

City Bedminster State NJ Zip 07921-1522

9. Management (Domestic Corporations and Limited Partnerships Only)
- For-Profit and Professional Corporations list initial Board of Directors, minimum of 1;
- Domestic Non-Profits list Board of Trustees, minimum of 3;
- Limited Partnerships list all General Partners.

| Name | Street Address | City | State | Zip |
|---|---|---|---|---|
| | | | | |
| | | | | |

The signatures below certify that the business entity has complied with all applicable filing requirements pursuant to the laws of the State of New Jersey.

10. Incorporators (Domestic Corporations Only, minimum of 1)

| Name | Street Address | City | State | Zip |
|---|---|---|---|---|
| | | | | |

*O10090938I*

** Signature(s) for the Public Record (See instructions for information on Signature Requirements)

| Signature | Name | Title | Due |
|---|---|---|---|
| | Dr. Eric-Paul Pâques | President | 7/31/03 |

1285227
2465407

TOTAL P.02

# EXHIBIT 10

 **Grünenthal - Press**

### Executive Board

📄 PDF Download

Wolfgang Becker is responsible for Marketing and Sales worldwide. Stefan Genten is head of the Financial and Controlling division with responsibility for Legal and IT. Prof. Eric-Paul Pâques, PhD, is in charge of the Research and Development division and global alliances. Sebastian Wirtz is in charge of Human Resources, Production & Technology and Corporate Supply Chain Management.

### Wolfgang Becker
### Marketing and Sales

Wolfgang Becker was born in Camburg / Saale, Germany, in 1956. He began his career in consumer good industry as Product Manager for Proctor & Gamble. Since 1987 he has worked for the pharmaceutical industry, for example as Marketing Director at Rhône-Poulenc Rorer in Cologne. He held additional positions as Director of the Business Unit Allergology/Asthma/Dermatology and Head Business Unit Care Innovation for Aventis Pharma Germany in Bad Soden, Germany. Wolfgang Becker joined Grünenthal GmbH in 2002 as Head of Grünenthal Germany. He was appointed Grünenthal member of the Executive Board for Marketing and Sales in 2007. Wolfgang Becker holds a degree in psychology from the University of Marburg, Germany.

### Stefan Genten
### Finance, Controlling, Legal and IT

Stefan Genten was born in Aachen, Germany, in 1968. He graduated in business administration, economics, political science and sociology at the University of Aachen in 1993. Stefan Genten started his career with Rheinbraun AG, Cologne, as a business trainee before moving on to a managerial position in corporate accounting. He switched to RWE AG's corporate headquarters in Essen in 1998, starting out in Central Corporate Controlling as head of investment controlling for RWE's Construction division (Hochtief Group) and later also taking over as head of corporate planning/strategic issues. He became deputy divisional president of Central Corporate Controlling in July 2000. Stefan Genten switched to Grünenthal GmbH in June 2001 as authorized signatory and divisional president of Financial and Controlling. In January 2005 he was appointed a Grünenthal GmbH member of the Executive Board with global responsibility for finance, controlling, legal and IT.

### Prof. Eric-Paul Pâques PhD
### Research, Development and Global Alliances

Prof. Eric-Paul Pâques, PhD, was born in Namur, Belgium, in 1954. He studied chemistry at Université Catholique de Louvain and obtained his doctoral degree at the age of 25, supervised by Prof. R. Huber (Max Planck Institute for Biochemistry, Munich) and Prof. R. R. Crichton (Louvain). Prof. Pâques, PhD, switched to Behringwerke AG in Marburg in 1980 and worked there as head of Research until 1993. He obtained a postdoctoral degree in 1990 and accepted a professorial teaching post at the University of Louvain, a position in which he is active to this day. He also lectures at the University of Aachen and has done so since 2000. He was president of the Research and Development division of Grünenthal GmbH from 1994 to 1997. Prof. Pâques, PhD, was appointed Grünenthal member of the Executive Board for Research & Development and Alliances in 1998.

### Sebastian Wirtz

**Human Resources, Production & Technology and Corporate Supply Chain Management**

Sebastian Wirtz was born in Aachen, Germany, in 1970. He graduated as a civil engineer from Aachen Institute of Technology. Having completed his training, he accepted a position as chief engineer on the construction of the new Rhine Bridge at the Ilverich crossing point near Düsseldorf. He was project manager in charge of the construction of Grünenthal GmbH's new training centre from 2000 to 2003. Starting in January 2003, Sebastian Wirtz completely reorganized Grünenthal GmbH's corporate logistics structure. Sebastian Wirtz was appointed Grünenthal GmbH member of the Executive Board in January 2005, putting him in charge of the Human Resources, Production & Technology and Corporate Supply Chain Management divisions.

© 2008 Grünenthal   All rights reserved.                                            April 08, 2008

<u>**CERTIFICATE OF SERVICE**</u>

     I, James S. Green, Esquire, hereby certify that on the 29th day of May, 2008, I served the

following counsel:

     Via CM/ECF:

| | |
|---|---|
| CONNOLLY BOVE LODGE & HUTZ LLP | RICHARDS, LAYTON & FINGER P.A. |
| Mary W. Bourke (#2356) | Frederick L. Cottrell, III (#2555) |
| The Nemours Building | Steven J. Fineman (#4025) |
| 1007 N. Orange Street | One Rodney Square |
| Wilmington, DE  19899 | Wilmington, DE  19899 |
| Attorneys for Plaintiff Ortho-McNeil, Inc. | Attorneys for Defendant Par |
| | Pharmaceutical, Inc. and or the Par |
| | Pharmaceutical Companies, Inc. |
| | |
| MORRIS, NICHOLS, ARSHT, & TUNNELL LLP | THE BAYARD FIRM |
| Jack B. Blumenfeld (#1041) | Rickard D. Kirk (#922) |
| Rodger D. Smith II (#3778) | 222 Delaware Avenue, Suite 900 |
| 1201 N. Market Street | Wilmington, DE  19899-5130 |
| Wilmington, DE  19899-1347 | Attorneys for Plaintiff |
| Attorneys for Plaintiffs | Biovail Laboratories International, SRL |
| Purdue Pharma Products L.P. | |
| And Napp Pharmaceutical Group Ltd. | |

     Via Federal Express:

Robert E. Colletti
FROMMER LAURENCE & HAUG LLP
745 Fifth Avenue
New York, New York  10151
Attorneys for Defendants
Par Pharmaceuticals Inc
Par Pharmaceutical Companies, Inc

/s/  James S. Green, Sr.
_____
James S. Green, Sr. (DE0481)
jgreen@svglaw.com

63565 v1