**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|   |   |
|---|---|
| PURDUE PHARMA PRODUCTS L.P., NAPP PHARMACEUTICAL GROUP LTD., BIOVAIL LABORATORIES INTERNATIONAL, SRL, and ORTHO-MCNEIL, INC., <br><br> Plaintiffs/Counterclaim-defendants, <br><br> v. <br><br> PAR PHARMACEUTICAL, INC. and PAR PHARMACEUTICAL COMPANIES, INC., <br><br> Defendants/Counterclaim-plaintiffs. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 07-255-JJF (CONSOLIDATED) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO RE-OPEN FACT DISCOVERY AND TO EXTEND DATES FOR EXPERT DISCOVERY**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com
*Attorneys for Plaintiffs/Counterclaim-defendants*
  *Purdue Pharma Products L.P. and Napp*
  *Pharmaceutical Group Ltd.*

BAYARD, P. A.
Richard D. Kirk (#922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 429-4208
*Attorneys for Plaintiff*
  *Biovail Laboratories International, SRL*

CONNOLLY BOVE LODGE & HUTZ LLP
Mary W. Bourke (#2356)
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
*Attorneys for Plaintiff Ortho-McNeil, Inc.*

June 16, 2008

# TABLE OF CONTENTS

Page

I. NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

II. SUMMARY OF ARGUMENT ....................................................................................... 1

III. STATEMENT OF FACTS .............................................................................................. 5

    A. Plaintiffs produced approximately three million pages of documents before the January 4, 2008 deadline ordered by the Court ........................................ 5

        1. Purdue/Napp ............................................................................................. 5

        2. Ortho ......................................................................................................... 6

        3. Biovail ...................................................................................................... 6

    B. Depositions ......................................................................................................... 6

        1. Par's depositions of plaintiffs began in March, approximately when noticed by Par, not in April as Par incorrectly argues .......................... 7

        2. Par refused proffered dates for depositions on the grounds that only one partner at Par's New York law firm was capable of taking these depositions ................................................................................ 7

        3. Plaintiffs noticed depositions of Par in March but Par produced no witnesses before May 7 ................................................................... 8

        4. The parties stipulated to extend the fact discovery cutoff from May 15 to June 5 by shortening the period for expert depositions ............................................................................................... 8

        5. After the agreed-upon extension of fact discovery, instead of completing the depositions already noticed, Par noticed five additional depositions, at least two of which were untimely .......................... 9

        6. The depositions that remain to be taken .................................................. 9

IV. ARGUMENT .................................................................................................................. 11

    A. Fact discovery should not be re-opened ............................................................ 11

    B. Par's proposal to extend fact discovery would prejudice pre-trial preparations ......................................................................................................... 12

    C. If the Court decides to extend discovery, then the pretrial and trial dates should also be reset ................................................................................... 13

V. CONCLUSION ............................................................................................................... 14

I.      **NATURE AND STAGE OF THE PROCEEDINGS**

On June 12, 2008, defendants ("Par") moved: (1) to re-open fact discovery, which, by stipulated order, had closed on June 5 except for post-cutoff depositions that had previously been agreed-to; (2) to compel production of certain documents withheld on the grounds of privilege; and (3) to extend the dates for expert discovery established by this Court's October 10, 2007 Scheduling Order and already extended once by Stipulated Order. (D.I. 152, 23, 130). Par's motion was noticed for the Court's July 11 motion day. Also on June 12, Par e-mailed the Court and asked for expedited consideration of its motion with respect to expert discovery dates on the grounds that, under the Scheduling Order, initial expert reports are due on June 20, before Par's motion will be heard.

On June 13, the Court directed Par to file a formal request "regarding expert reports" and plaintiffs to respond on June 16. (Court's 6/13/08 email to parties' counsel). Ignoring the Court's instruction limiting the subject of the request to the issue of expert reports, Par's June 13 request also addressed the issue of re-opening fact discovery. Plaintiffs submit this brief in opposition.

II.      **SUMMARY OF ARGUMENT**

1.      Fact discovery should not be re-opened. Under the Scheduling Order, the cut-off date was May 15. (D.I. 23). In a stipulated order entered on May 16, 2008, fact discovery was extended by three weeks to June 5, 2008 "unless otherwise agreed upon by the parties or ordered by the Court." (D.I. 130).

2.      Par's request to extend expert discovery ignores the compromise that Par expressly agreed to in May. To avoid changing the schedule for pretrial and trial, the parties agreed in May to extend the deadlines for submitting expert reports and also to shorten the time for expert depositions from six weeks to three. (Compare D.I. 23 with D.I. 130). Par proposed a

1

longer extension. Plaintiffs did not agree to that extension because it would adversely affect the preparation of the pretrial order. (Goldman Decl., Ex. A at p.1, ¶ 3). Par now seeks the Court's assistance in obtaining the longer extension that plaintiffs would not agree to by taking time and resources away from plaintiffs' pretrial preparation, notwithstanding their previous agreement with plaintiffs on the first extension in May.

   3. Par's description of the course of fact discovery is misleading and, in several instances, simply wrong. Plaintiffs did not delay document production. Nor did plaintiffs delay in providing witnesses. To the extent that Par has been unable to complete discovery, Par is in large measure the cause of its own problems.

    3.1. Plaintiffs timely met their discovery obligations under the Court's Scheduling Order. Purdue and Napp produced over 2.3 million pages of documents before the Court's January 4, 2008 deadline for document production. Over 43,000 pages, comprising e-mails and other electronic documents from the files of Napp and Mundipharma, were additionally produced by January 30, by agreement of the parties. Ortho completed its production of over 480,000 pages of documents before the January 4, 2008 deadline. Biovail produced over 480,000 pages of documents on January 17, 2008, after confidentiality issues relating to the Protective Order were resolved. (*See infra* p. 6, Goldman Decl., Exs. B-D).

    3.2. Par did not serve any deposition notices until February 26, 2008, requesting witnesses beginning on March 18. Par's statement that no witnesses were produced until April 8 is incorrect. (Par Br. at 2). Depositions by Par began on March 5, 2008 with the deposition of the attorney who prosecuted the patents in suit. The four co-inventors of the patents in suit who are current employees of Napp or Mundipharma were deposed in April and May. Two co-inventors who are no longer employed by Napp or Mundipharma were deposed on

2

May 1 and June 3, all before the agreed-upon extended cutoff date. (*See infra* p. 7; Goldman Decl., ¶ 33).

    3.3 Par constrained itself in the conduct of its depositions, by electing to have all but two of its depositions taken by a single attorney, Mr. Colletti. (Goldman Decl., Ex. V). As a result, Par on several occasions declined dates offered by plaintiffs for depositions, including the Rule 30(b)(6) deposition of Biovail, which was offered for mid-April, but is now scheduled for late July. (*See infra* p. 11).

    3.4. Par's count of "eight more depositions" that are scheduled but remain to be taken includes not just plaintiffs' witnesses, but Par's witnesses as well. (Par Br. at 2). There are only four depositions that Par has yet to take. One is the continued corporate deposition of Ortho pursuant to Rule 30(b)(6), Fed. R. Civ. P. Another is the Rule 30(b)(6) deposition of Biovail. The two remaining Purdue/Napp witnesses are retired Napp employees, co-inventors of the patents in suit, who live in the U.K. The so-called "unscheduled" depositions that Par seeks are (1) witnesses for whom Purdue/Napp and Ortho had offered dates during the discovery period and Par refused to take, or (2) depositions that Par untimely noticed, contrary to Local Rule 30.1. If discovery is not re-opened, Par is not the only party who will have to make do with the discovery as of June 5. Plaintiffs will also not be able to take the depositions of three individual witnesses as well as a Rule 30(b)(6) deposition for which Par has refused to provide dates. (Goldman Decl., ¶ 8; Exs. E, Z).

    4. Contrary to Par's argument, plaintiffs do not seek to extend the current pretrial or trial dates, provided that the Court maintains the current schedule for expert discovery. The Court has ordered a final pretrial conference for October 16, 2008, with trial to begin on November 10. Par's proposed extensions to discovery cut-off dates would disrupt preparation of the pretrial order, not to mention preparation for trial itself. For example, under Par's proposal,

plaintiffs' draft of the pretrial order would be due 11 days before the close of expert discovery, as seen in the following table. This makes no sense.

| EVENT | CURRENT DATE | PAR'S PROPOSED DATE |
|---|---|---|
| Fact discovery cut off (Stipulated Order, D.I. 130) | June 5, 2008 | July 17, 2008 |
| Opening Expert Reports (Stipulated Order, D.I.130) | June 20, 2008 | July 25, 2008 |
| Rebuttal Expert Reports (Stipulated Order, D.I. 130) | July 22, 2008 | August 22, 2008 |
| Claim construction hearing (Court 6/13/08 Order) | August 1, 2008 | No change |
| Expert discovery cutoff (Scheduling Order, D.I. 23) | August 15, 2008 | September 19, 2008 |
| Plaintiffs serve draft pretrial order (L.R. 16.3(d)(1)) | September 8, 2008 | No change, i.e., September 8, 11 days before the close of expert discovery |
| Par responds to draft pretrial order (L.R. 16.3(d)(2)) | September 23, 2008 | No change, i.e., September 23, four days after expert discovery is concluded |
| Pretrial order filed (L.R. 16.3(d)(4) | October 8, 2008 | No change |
| Final Pretrial Conference (Scheduling Order D.I. 23) | October 16, 2008 | No change |
| Trial (Scheduling Order, D.I. 23) | November 10, 2008 | No change |

5. It is not unusual for some discovery to take place by agreement after a cutoff date. Nevertheless, plaintiffs recognize fact discovery remains to be taken and that some of that discovery will run into July. If the Court is inclined to re-open fact discovery for still more depositions, which is what Par seeks, then the dates for pretrial and trial should also be adjusted. Plaintiffs understand that the Court's current scheduling practice is to schedule expert

4

reports to follow the Court's decision on claim construction, so that the experts have the benefit of that decision, with the pretrial conference and trial to follow in an orderly sequence. Such a schedule in this action would be one way to resolve the current dispute. Plaintiffs respectfully submit that the only other proper way to do so is to deny Par's motion *in toto*, so the parties can complete expert discovery before pretrial submissions and maintain the current pretrial and trial schedule.

### III. STATEMENT OF FACTS

In this action for relief from patent infringement, Napp is a U.K. company where work on the inventions in suit was conducted. The inventors of the patents in suit are employees or former employees of Napp or Mundipharma GmbH ("Mundipharma"). Mundipharma is an associated company of Napp based in Germany and is not a party to this lawsuit. Purdue, a U.S. company associated with Napp, is a co-owner of the patents in suit. Biovail Laboratories International, SRL ("Biovail") holds FDA approval for ULTRAM® ER, the branded drug at issue in this action. (D.I. 78). Ortho-McNeil, Inc. ("Ortho") sells ULTRAM® ER in the United States. (D.I. 78.)

### A. Plaintiffs produced approximately three million pages of documents before the January 4, 2008 deadline ordered by the Court

Par tries to excuse its failure to complete discovery by contending that plaintiffs failed to provide documents in a timely fashion. (Par Br. at 3). The facts are otherwise.

#### 1. Purdue/Napp

As Purdue and Napp told the Court at the September 2007 scheduling conference, document collection, which had already begun, involved interviewing Purdue and Napp personnel and collecting files in three different countries, the U.S., the United Kingdom, and Germany. (Goldman Decl., Ex. G at 3:13-4:3). In compliance with the Court's January 4, 2008

5

deadline for production, Purdue and Napp produced 2.3 million pages of documents by that date. (Goldman Decl., ¶ 30).

An issue arose, however, with respect to a discrete set of foreign electronic documents: e-mails and other electronic documents collected at Napp in the U.K. and non-party Mundipharma in Germany.[1]  On December 19, 2007, Purdue notified Par of the problem. (Goldman Decl., Ex. H).  Purdue undertook to produce these documents by January 30, 2008. (*Id.*; D.I. 33).  Purdue met this commitment, producing an additional 43,000 pages. (Goldman Decl., ¶ 30).

### 2. Ortho

Ortho completed production of over 480,000 pages of documents on January 2, 2008, two days before the court-imposed deadline for document production. (Goldman Decl., Ex. I).

### 3. Biovail

On January 17, 2008, Biovail produced 488,511 pages of documents to Par. (Goldman Decl., Ex. D).  In an abundance of caution, Biovail continued to search for responsive documents.  Accordingly, Biovail produced an additional 35,000 pages of documents on June 4, 2008.  Par cannot show any prejudice from this additional, relatively small, document production, since it occurred weeks before any depositions of Biovail.[2]

---

[1] Most of these documents have marginal relevance to begin with as they are dated in the 2003-2004 time frame (U.K.) or post 1999 (Germany), much later than the development of the claimed inventions (early 90s).  These electronic documents were all archived and there were unanticipated technical problems in accessing the archives.  Moreover, under European privacy laws, those documents required additional review in their native countries before they could be sent for processing and production in the United States. (Goldman Decl. Ex. H).

[2] Par also complains, for the first time, that Biovail was late in responding to Par's second set of interrogatories.  However, Biovail's responses simply direct Par to documents that Par has had in its possession for many months.

6

### B. Depositions

Par next contends that it could not complete depositions on time because plaintiffs withheld their witnesses until April. (Par Br. at 2). That is also incorrect.

#### 1. Par's depositions of Plaintiffs began in March, approximately when noticed by Par, not in April as Par incorrectly argues

Par did not serve its first deposition notices until February 26, 2008. (D.I. 45-47.) The earliest date for which Par *requested* a witness was March 18. (D.I. 46). There were additional constraints on depositions in that the parties tried to schedule as many of the European witnesses as possible for a single trip. (Goldman Decl., Ex. J).

Par contends that no depositions took place until April 8. (Par Br. at 2). That is wrong. Purdue/Napp produced the outside counsel who prosecuted the patents in suit for deposition on March 5, 2008. Two additional Purdue (U.S.) witnesses were deposed in April. The first group of Napp/Mundipharma witnesses – i.e., the inventors of the patents in suit – took place in Europe in the weeks of April 21 and 28. (Goldman Decl., ¶ 31).

#### 2. Par refused proffered dates for depositions on the grounds that only one partner at Par's New York law firm was capable of taking these depositions

One problem that appeared early in discovery was that, although Par wanted to take many depositions, it was unwilling to commit the resources to complete them. On several occasions, Par refused dates for witnesses on the grounds that only one partner at Par's New York counsel, Mr. Colletti, was available to take depositions. Of the 17 depositions taken by Par, only two have been taken by other attorneys at that firm. This, of course, made it impossible to schedule more than one deposition on a given day, which Purdue was ready and able to do.

Because of Par's self-imposed constraints, Par declined offered dates for several witnesses, including the two Purdue/Napp depositions that Par now complains are "unscheduled." (Goldman Decl., Ex. L). Significantly, Par declined an offer to take the Rule

7

30(b)(6) deposition of Biovail in April, and now complains that the deposition has been rescheduled for July. (Par Br. at 6) (Goldman Decl., Exs. S, T).

### 3. Plaintiffs noticed depositions of Par in March but Par produced no witnesses before May 7

Purdue served two Rule 30(b)(6) deposition notices on Par on March 20, 2008 (D.I. 61-62), separating different topics according to subject matter to make it more convenient for Par to designate its witnesses. When Par complained that Purdue was only entitled to a single Rule 30(b)(6) notice, Purdue submitted an amended notice, combining the topics. (D.I. 100). Individual deposition notices were served beginning on April 14, 2008 (D.I. 87-92). Par, however, did not produce a single witness for deposition until May 7, 2008. (Goldman Decl., Ex. M). Purdue has taken 15 depositions of Par witnesses since then, including three witnesses in response to the Rule 30(b)(6) notice. (Goldman Decl., ¶ 34).

### 4. The parties stipulated to extend the fact discovery cutoff from May 15 to June 5 by shortening the period for expert depositions

On May 5, plaintiffs proposed that the parties extend the May 15 fact discovery cutoff to June 5. (Goldman Decl., Ex. A). To do this without changing any of the other pretrial dates, plaintiffs proposed compressing the period for expert depositions from six weeks to three weeks. (*Id.*).

Par sought to have the stipulated extension cover all depositions noticed by a date certain. However, that was not agreed to. (Goldman Decl., Ex. N). The stipulation ultimately agreed to, and ordered by the Court (D.I. 130), stated:

> It is hereby stipulated and agreed, by and among the parties, subject to the approval of the Court, that: (1) the deadline for completing fact discovery is extended until June 5, 2008, unless otherwise agreed upon by the parties or ordered by the Court; (2) the deadline for submitting expert reports on issues on which a party bears the burden of proof is extended until June 20, 2008; and (3) the deadline for submitting rebuttal expert reports is extended until July 22, 2008. All other dates in the Rule 16 Scheduling Order (D.I. 23) remain unchanged.

The parties agreed to extend the deadlines for expert discovery by only three weeks, instead of the longer extension sought by Par. The parties were able to adjust the deadline dates for expert reports by agreeing to shorten the period for expert depositions. (Compare D.I. 23, D.I. 130). Although Par suggested a longer extension, plaintiffs would not agree because it would adversely affect pretrial and trial preparation. Plaintiffs proposed asking the Court to reschedule pretrial and trial dates. Par did not agree to this.

> **5. After the agreed-upon extension of fact discovery, instead of completing the depositions already noticed, Par noticed five additional depositions, at least two of which were untimely**

As agreed, depositions continued after the May 15 cutoff. Par again refused deposition dates proffered by Purdue/Napp.

Instead of focusing on completing the discovery it had already requested, Par continued to try to add to its list of witnesses it wished to depose, serving five additional notices between May 19 and May 30, and attempting to add 13 additional topics to the 30(b)(6) deposition of Napp. (D.I. 132, 133, 137, 142, 146, 147).

Two of those deposition notices, one of a former Napp employee in the U.K. (Mr. Brown) and one of an Ortho employee (Mr. Scanelli), were served on May 30, 2008, less than seven days before the close of discovery, contrary to L.R. 30.1. (D.I. 146-47).

> **6. The depositions that remain to be taken**

Par states that there are eight more depositions currently scheduled and "approximately" ten unscheduled depositions. (Par. Br. 2). That is misleading.

> **(a) Purdue/Napp**

There are only two depositions remaining to be taken of Purdue/Napp witnesses, those of Dr. Ronald Miller and Stewart Leslie, two overseas retired Napp executives who are co-inventors of the patents in suit. Mr. Leslie's deposition, which Par refused to take in April under

9

its "one-examiner" policy, needed to be deferred to July because Mr. Leslie has been recuperating from knee replacement surgery since early June. (Goldman Decl., Ex. Q). To avoid yet another trip to England, the deposition of Dr. Miller, who was traveling in late April/early May, was scheduled for the same week. (*Id.*).

It is plaintiffs' position that Par has waived its request to take the depositions of Dr. Sackler, which was offered twice before the discovery cutoff; Dr. Goldenheim, which was offered once; and the continuation of the Purdue/Napp Rule 30(b)(6) depositions, which were offered for June 9-10. Under the stipulated extension of discovery ordered by the Court, quoted *supra* p. 8, those depositions were not taken before June 5, nor has there been any agreement as to later dates.

### (b)     Ortho

Par served Ortho with its first notice of deposition under Rule 30(b)(6) on April 14, 2008, approximately one month before the court-imposed deadline for fact discovery, and over four months after the completion of document production. The notice contained 19 topics, most of which are, at best, marginally relevant to any issue in this litigation. (D.I. 93).

Ortho provided proposed dates to Par on May 9, 2008. Par immediately accepted the date for one deposition in May, which has been completed. On June 5, 2008, the last day of the extended discovery period and nearly a month after the original dates were proposed, Par accepted the June dates.

The need to move depositions into June is a direct result of Par's delay until the "eleventh hour" in serving its 30(b)(6) notices on Ortho. Moreover, the testimony of Ortho witnesses is completely irrelevant to any issue to which Par has the burden of proof, and thus, the scheduling of the Ortho depositions should not impact the scheduling of the opening expert reports.

### (c)  Biovail

As discussed *supra* p. 7, Par declined to take the 30(b)(6) deposition of Par in April when it was first offered. Par and Biovail again discussed scheduling this deposition in late May. (Goldman Decl, Exs. W, X). At that time, Biovail offered one 30(b)(6) witness for deposition on June 27, 2008, and another 30(b)(6) witness on a date in July. (*Id.*). Par still has not accepted either date.

### (d)  Par

There are three witnesses for whom Par has refused to provide deposition dates: Messrs. Shanmugam, Voleti, and Pandya. (Goldman Decl., Ex. ¶ 8). Of these, Mr. Pandya was scheduled for Monday, May 19th, but Par unilaterally cancelled on the weekend before the deposition without offering any alternate date. (Goldman Decl., Ex. Y).

Par has also refused to provide a 30(b)(6) witness to answer specific questions under noticed topics left unanswered after three 30(b)(6) depositions. Par has not offered any dates for this deposition despite repeated requests from Purdue, both orally and in writing. (Goldman Decl., Ex. F).

If, as plaintiffs contend, fact discovery is over, plaintiffs will not pursue these depositions, but will object to any of the witnesses appearing at trial. If, however, the Court re-opens fact discovery, plaintiffs assume that these witnesses will be covered by whatever order the Court issues.

## IV.   ARGUMENT

### A.  Fact discovery should not be re-opened

There is no sound reason to reopen fact discovery to permit additional depositions not already agreed to. Plaintiffs have not been dilatory either in providing documents or witnesses. Six of the eight co-inventors of the patents in suit have been deposed, as have both of

11

the attorneys who prosecuted those patents. If there were sound defenses to be explored, Par should have discovered them already. Par's desire for more discovery – including its pending motion to compel discovery of additional documents from plaintiffs and its five new deposition notices that were not served until after the parties agreed to extend the fact discovery cutoff – is a tacit admission that Par has been unable to develop substantial defenses, and is continuing to "fish" for discovery in the hope that something will turn up.

Par's problems are largely of its own making. It is not unusual for there to be witnesses whose depositions cannot be completed within the agreed time for fact discovery. But Par has exacerbated this problem at every turn by its insistence that all but two of the many depositions it has taken be taken by a single attorney, *supra* p. 7. This is particularly so with respect to the deposition the 30(b)(6) deposition of Biovail, which was also offered for April and is now scheduled for July. Par declined this and other depositions on the grounds that it had no counsel available to take them¸ *supra* pp. 7, 11. Having made that election, Par should not be heard to complain that the fact discovery period has expired.

The stipulated extension to discovery provided that fact discovery would end by June 5 unless otherwise agreed to. That is what the parties agreed to and it is what the Court ordered. There is no reason to allow Par a second extension on the current record.

### B. Par's proposal to extend fact discovery would prejudice pre-trial preparations

The current schedule for claim construction and trial is set forth in the table on page 4 above. Expert discovery is scheduled to close on August 15. This will allow plaintiffs three weeks to prepare the first draft of the pretrial order, which is due on September 8.

Par's proposal stands orderly pretrial preparation on its head. Under Par's proposal , expert discovery will still be on-going when the first draft of the pretrial order is due. Because the order is to be prepared by plaintiffs, L.R. 16.3(d)(1), it is plaintiffs who will be

12

prejudiced by having to complete this work while still taking and defending expert depositions. Not surprisingly, Par proposes that expert discovery close on September 15, a week before its response to the draft order, L.R. 16.3(d)(2), is due.

### C. If the Court decides to extend discovery, then the pretrial and trial dates should also be reset

At the September 6, 2007 scheduling conference, the Court ordered the parties to be ready for a final pretrial conference on October 16, 2008 and for trial on November 10. Contrary to Par's arguments, plaintiffs have worked diligently to meet that schedule. The Court's schedule can still be met in an orderly way if Par's motion is denied.

If, however, the Court is inclined to re-open fact discovery and to extend the dates for expert discovery, an extension of the pretrial and trial dates is appropriate. Plaintiffs respectfully submit that only such an extension would permit complete and orderly pretrial preparations, which will best facilitate the just disposition of this action. (Rules 1, 16(c), Fed. R. Civ. P.).

## V. CONCLUSION

Par's motion to re-open fact discovery and extend the dates for expert discovery should be denied. In the alternative, the pretrial and trial dates for this action should be reset consistent with any extension that the Court may permit.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:
Robert J. Goldman
Sasha G. Rao
 ROPES & GRAY LLP
 525 University Avenue
 Suite 300
 Palo Alto, California 94301
 (650) 617-4000

Sona De
Richard A. Inz
 ROPES & GRAY LLP
 1211 Avenue of the Americas
 New York, New York 10036
 (212) 596-9000

/s/ Rodger D. Smith II
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com
*Attorneys for Plaintiffs*
  *Purdue Pharma Products L.P.*
  *and Napp Pharmaceutical Group Ltd.*

BAYARD, P. A.

/s/ Richard D. Kirk
Richard D. Kirk (#922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 429-4208
rkirk@bayardfirm.com
*Attorneys for Plaintiff*
  *Biovail Laboratories International, SRL*

14

                CONNOLLY BOVE LODGE & HUTZ LLP

                */s/ Mary W. Bourke*
                Mary W. Bourke (#2356)
                The Nemours Building
                1007 N. Orange Street
                P.O. Box 2207
                Wilmington, DE 19899
                (302) 658-9141
                mbourke@cblh.com
                *Attorneys for Plaintiff*
                  *Ortho-McNeil, Inc.*

June 16, 2008
2370311

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 16, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

    Frederick L. Cottrell, III, Esquire
    Steven J. Fineman, Esquire
    Richards, Layton & Finger, P.A.

    Richard D. Kirk, Esquire
    The Bayard Firm

    Mary W. Bourke, Esquire
    Connolly Bove Lodge & Hutz LLP

    I further certify that I caused to be served copies of the foregoing document on June 16, 2008, upon the following in the manner indicated:

| | |
|---|---|
| Frederick L. Cottrell, III, Esquire<br>Steven J. Fineman, Esquire<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>Wilmington, DE  19801 | *VIA ELECTRONIC MAIL* |
| Edgar H. Haug, Esquire<br>Robert E. Colletti, Esquire<br>Frommer Lawrence & Haug LLP<br>745 Fifth Avenue<br>New York, NY  10151 | *VIA ELECTRONIC MAIL* |
| Richard D. Kirk, Esquire<br>The Bayard Firm<br>222 Delaware Avenue<br>Suite 900<br>Wilmington, DE  19801 | *VIA ELECTRONIC MAIL* |
| Mary W. Bourke, Esquire<br>Connolly Bove Lodge & Hutz LLP<br>The Nermours Building<br>1007 North Orange Street<br>Wilmington, DE  19801 | *VIA ELECTRONIC MAIL* |

                */s/ Rodger D. Smith II*
                _____
                Rodger D. Smith II (#3778)