## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PURDUE PHARMA PRODUCTS L.P.,
NAPP PHARMACEUTICAL GROUP LTD.,
BIOVAIL LABORATORIES INTERNATIONAL,
SRL, and ORTHO-MCNEIL, INC.,

              Plaintiffs/Counterclaim-defendants,

      v.

PAR PHARMACEUTICAL, INC. and
PAR PHARMACEUTICAL COMPANIES, INC.,

             Defendants/Counterclaim-plaintiffs.

C.A. No. 07-255-JJF
(CONSOLIDATED)

### DECLARATION OF SONA DE IN SUPPORT OF PURDUE'S AND NAPP'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF CERTAIN DISCOVERY AND AMEND SCHEDULING ORDER

I, Sona De, declare as follows:

1) I am a partner at the firm of Ropes & Gray LLP. I am resident in Ropes & Gray's New York office, located at 1211 Avenue of Americas, New York, NY 10036. My firm and I are of counsel in this action to plaintiffs Purdue Pharma Products, L.P. ("Purdue") and Napp Pharmaceuticals Group, Ltd. ("Napp"). I am a member of the bar of the State of New York and the State of California, and am admitted to the bar of this Court pro hac vice.

2) I make the following declaration in support of Purdue's and Napp's Opposition to Defendants' Motion to Compel Production of Certain Discovery and Amend Scheduling Order.

3)    I make this declaration on information and belief, based on factual investigations that were performed in the preparation of Purdue's and Napp's opposition to defendants' ("Par's") motion.

4)    Attached as Exhibit A is a true and correct copy of a April 27, 2008 e-mail from Robert Colletti, counsel for Par, to my colleague, Padmaja Chinta.

5)    Attached as Exhibit B is a true and correct copy of a May 9, 2008 e-mail from Ms. Chinta to Mr. Colletti.

6)    Attached as Exhibit C is a true and correct copy of a May 9, 2008 letter from Ms. Chinta to Mr. Colletti.

7)    Attached as Exhibit D is a true and correct copy of a May 23, 2008 letter from my colleague, Thomas Wang, to Mr. Colletti. I understand that the production enclosed with this letter included Napp's raw test results based on the "Merck" reference; as well as memoranda, file notes, and e-mails regarding the tests based on the "Merck" reference.

8)    Attached as Exhibit E is a true and correct copy of a June 2, 2008 e-mail from Mr. Colletti to Ms. Chinta.

9)    Attached as Exhibit F is a true and correct copy of a June 4, 2008 e-mail from Mr. Colletti to Ms. Chinta.

10)    Attached as Exhibit G is a true and correct copy of a June 10, 2008 e-mail from Angus Chen, counsel for Par, to Mr. Wang.

11)    Attached as Exhibit H are true and correct copies of selected pages from the transcript of the September 6, 2007 Scheduling Conference in this case.

12)    Document collection in this case involved three countries: the United States, where Purdue is headquartered; England, where Napp is headquartered; and in Germany,

at Mundipharma GmbH ("Mundipharma"), an associated company of Purdue. In addition, Ropes & Gray, counsel for Purdue and Napp, collected and produced documents from the Davidson, Davidson, and Kappel, LLC ("Davidson") law firm, which prosecuted the patents in suit. Plaintiffs Ortho McNeill and Biovail are represented by other law firms that, upon information and belief, collected and produced documents from those parties.

13)     In response to Par's request to unredact certain pages of Napp's production that related to Napp's experiments based on the Merck reference, as reflected in Exhibit A, Napp reviewed its privilege logs in May 2008. Based on that review, Napp produced additional documents to Par on May 23, 2008, as described in paragraph 7.

14)     During the first week of June 2008, Par asked Napp to produce any documents relating to Napp's Merck experiments from the Davidson privilege log as well as specific Napp documents identified during the depositions of Napp witnesses, as reflected in Exhibits E and F. When Par made this request, counsel for both parties were overseas in London for depositions of Napp's witnesses. The week of June 9, upon returning to the United States, Napp's counsel initiated the task of evaluating whether any Merck testing documents were withheld from the Davidson production and to locate the specific Napp documents requested by Par.

15)     Accordingly, Napp reviewed the Davidson privilege log, which revealed that there were some documents relating to Napp's experiments based on the Merck reference that were initially withheld. Some of these documents were duplicates of documents that Napp had previously produced to Par. Napp also located some of the specific documents requested by Par. These documents will be produced to Par today.

16)    Napp has reviewed all privilege logs – whether of Purdue, Napp, Mundipharma, or Davidson – to search for documents relating to Merck testing conducted by Napp in connection with European patent office proceedings or *Napp v. Asta* litigation that were withheld from production.

17)    I am informed and believe that the development of the inventions claimed in the patents in suit occurred at Napp and Mundipharma in the early to mid-1990s. This meant that most of Purdue and Napp's documents resided outside the U.S. and had to be retrieved from archived storage files. Documents existed in both paper and electronic files. These documents were copied and scanned by an outside vendor and made available to Purdue and Napp in the U.S. starting in November 2007. A vendor in the U.S. further processed these documents to prepare them for review.

18)    Purdue and Napp collected approximately 5.2 million pages from U.K., Germany, and U.S. I understand that more than 70% of these documents were electronic documents. The documents were housed in six distinct databases reflecting how they were collected – paper documents and electronic files from each of the three associated companies. Purdue and Napp had approximately three months to complete reviewing these documents for production.

19)    Given the size of the document collection and the tight time frame, I am informed and believe that Purdue and Napp hired a team of about fifty outside contract attorneys to help review the documents. The team of contract attorneys was trained by Purdue's in-house litigation counsel as well as Ropes & Gray attorneys. The training explained how to identify responsive documents and privileged documents. The training also included instructions on issues specific to this case. I am further informed and believe that the team was also trained on

the mechanics of online document review. Purdue's in-house counsel and Ropes & Gray attorneys supervised the document review team on an on-going basis.

20)    Prior to any substantive document review, I am informed and believe that tailored searches were run on the documents to identify and segregate potentially privileged documents from non-privileged documents. Based on information and belief, I understand that the list of search terms used to identify privileged documents contained over 200 terms. I understand that the list was based on a standard list used and tested by Purdue in other litigations. It was generated by the vendor working with Purdue's in-house attorneys and Ropes & Gray attorneys. The list included names of attorneys and law firms who were involved with providing legal services to Purdue, Napp, and Mundipharma, including legal services relating to the patents-in-suit and their foreign counterparts. The list also included words commonly indicating privilege, e.g., "confidential" or "work product." The search terms included domain names and used Boolean operators.

21)    Based on information and belief, I understand that after the electronic searches were run and the reviewers started reviewing the documents, they again used the search terms to confirm that privileged documents were identified. I understand that for paper documents that were not text-searchable, reviewers used the same criteria to identify privileged documents. The search terms were only a tool to help identify privileged documents for further review. They did not substitute for attorney review.

22)    The potentially privileged documents identified by the searches and review were transferred to separate folders for further review. Approximately 90,000 documents were identified as potentially privileged. These documents were then segregated into responsive and non-responsive documents. All the responsive potentially privileged documents were then

reviewed by Ropes & Gray attorneys or the document review team. This resulted in identification of about 15,000 privileged responsive documents that were described on privilege logs.

23)    The document review team reviewed the collected documents, which constitutes approximately 5.2 million pages. Based on that review, over 2.3 million pages were identified as responsive for production. Ropes & Gray attorneys further "spot-checked" (i.e., reviewed some but not all) the documents identified for production before they were produced to Par. Purdue and Napp produced approximately 2.3 million pages of documents to Par by January 4, 2008. Purdue and Napp produced an additional 43,000 pages of documents to Par by January 30, 2008. In addition, Purdue and Napp produced about 15,000 pages from the Davidson law firm and described about 1800 Davidson documents on a privilege log.

24)    In February 2008, as part of preparing for depositions, Purdue and Napp started reviewing the Davidson production. In the week of February 11, during this review, Purdue and Napp realized that about thirty privileged documents were inadvertently produced. Purdue and Napp immediately wrote to Par requesting the return of these inadvertently produced documents pursuant to paragraph 10 of the Protective Order.

25)    In April and May, Purdue and Napp started reviewing name sets in its own production in preparation for depositions of their witnesses. During this review, Purdue and Napp discovered that additional privileged documents were inadvertently produced.

26)    When Purdue and Napp discovered that privileged documents were inadvertently produced, they immediately wrote to Par requesting the return of those documents. Purdue and Napp made this request within ten days of learning of the inadvertent disclosure,

often before the day of the witnesses' deposition. Purdue and Napp also promptly searched for any duplicates of the discovered documents in its production and recalled them as well.

27)     Purdue and Napp recalled approximately 1000 documents under the Protective Order. The recalled documents amount to approximately 65,000 pages which is less than 0.3% of Purdue and Napp's 2.3 million page production. Of the approximately 1000 recalled documents, about 100 were duplicates, and more than 600 were later reproduced with the inadvertently produced information redacted. Often, the redacted information was contained in a few lines or paragraphs of privileged information buried within a document. Several of the redactions, e.g., in meeting minutes, related to information other than tramadol, which is the drug at issue in this litigation. Approximately 50 of the recalled documents are protected by work product immunity.

28)     Re-reviewing the entire 2.3 million pages of produced documents immediately upon learning of the inadvertently produced documents to identify if there were additional documents to be recalled was not practical. It would have required Purdue and Napp's outside trial counsel (not the contract attorneys who did the initial review) to manually review each of the 2.3 million produced pages. This would have stopped all other work on this lawsuit for weeks, if not months.

29)     When Purdue and Napp recalled inadvertently produced documents during depositions, they allowed Par to proceed with deposition questions directed to non-privileged portions of any such documents.

I declare under penalty of perjury that the forgoing is true and correct.

Dated: June 30, 2008

_____
SONA DE

7

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

Frederick L. Cottrell, III, Esquire
Steven J. Fineman, Esquire
RICHARDS, LAYTON & FINGER, P.A.

Richard D. Kirk, Esquire
BAYARD, P.A.

Mary W. Bourke, Esquire
CONNOLLY BOVE LODGE & HUTZ LLP

I further certify that I caused to be served copies of the foregoing document on June 30, 2008, upon the following in the manner indicated:

Frederick L. Cottrell, III, Esquire                          *VIA ELECTRONIC MAIL*
Steven J. Fineman, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
Wilmington, DE  19801

Edgar H. Haug, Esquire                                       *VIA ELECTRONIC MAIL*
Robert E. Colletti, Esquire
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue
New York, NY  10151

Richard D. Kirk, Esquire                                     *VIA ELECTRONIC MAIL*
BAYARD, P.A.
222 Delaware Avenue
Suite 900
Wilmington, DE  19801

Mary W. Bourke, Esquire                                      *VIA ELECTRONIC MAIL*
CONNOLLY BOVE LODGE & HUTZ LLP
The Nermours Building
1007 North Orange Street
Wilmington, DE  19801

*/s/ Rodger D. Smith II*
Rodger D. Smith II (#3778)



**From:** Colletti, Robert [mailto:RColletti@flhlaw.com]
**Sent:** Sunday, April 27, 2008 12:47 PM
**To:** Chinta, Padmaja
**Cc:** Goldman, Robert J.; De, Sona; Richard Kirk; cjeffers@cblw.com; mbourke@cblh.com; Haug, Ed; Chen, Angus; Wise, Jonathan
**Subject:** Napp Formulation Books (540572-521)

Dear Paddy,

Napp produced its tramadol formulation notebooks bearing production numbers NAPP 0368857 - NAPP 0381097 in an illegible manner.   Moreover, many of the notebooks are improperly redacted.  For example, Napp has redacted laboratory notebook nos. F523, F573, and F616.  It is clear from other production documents that the work pertaining to Napp's analysis of the Merck reference is redacted from these notebooks.  Those redactions are improper because any claim to privilege was waived when Ms. Malkowska submitted public declarations to the U.S. Patent Office and in the European opposition disclosing Napp's analysis of the Merck reference.  Please immediately produce legible copies of the Napp formulation notebooks that do not redact information pertaining to any analysis of the Merck reference.  Moreover, please have Napp's original laboratory notebook nos. F474, F523, F573, F616, and F644 available for the depositions of Dr. Leslie, Ms. Malkowska and the continued deposition of Dr. Prater.  Finally, please produce Dr. Prater's Ph.D dissertation and his patent declarations and testimony before his continued deposition in New York:

Sincerely,
Rob

```
=============================================
This message originates from the law firm of Frommer
Lawrence and Haug LLP.  It contains information that may be
confidential or privileged and is intended only for the individual
or entity named above.  No one else may disclose, copy,
distribute, or use the contents of this message. Unauthorized
use, dissemination, and duplication is strictly prohibited, and
may be unlawful.  All personal messages express views
solely of the sender, which are not to be attributed to
Frommer Lawrence and Haug LLP, and may not be copied or
distributed without this disclaimer.  If you receive this
message in error, please notify us immediately at
firm@flhlaw.com or call (212) 588-0800.
```

B

**From:** Chinta, Padmaja
**Sent:** Friday, May 09, 2008 3:52 PM
**To:** 'Colletti, Robert'
**Cc:** Goldman, Robert J.; De, Sona; Richard Kirk; cjeffers@cblw.com; mbourke@cblh.com; Haug, Ed; Chen, Angus; Wise, Jonathan
**Subject:** RE: Napp Formulation Books (540572-521)

Dear Rob:

I write in response to your April 27, May 5, and May 8 emails regarding Napp's lab notebooks and privilege log.

First, Par asks for "legible copies" of Napp's tramadol formulation notebooks. The copies that Napp produced are the best copies we have. We believe that they are legible. The original notebooks are at Napp's offices in Cambridge, England. If you would like to inspect individual pages, we will try to arrange that when you return to the UK to take the deposition of Ms. Malkowska.

Second, Napp disagrees with your argument that Napp has waived privilege on the analysis of the Merck reference by submitting public declarations of Ms. Malkowska. As I explained during Dr. Prater's deposition, the work done on the Merck reference is protected by the work product immunity, in addition to the attorney-client privilege. Waiver of work product immunity occurs, if at all, on a document-by-document basis. However, to resolve this issue, Napp will produce the unredacted pages of lab notebook nos. F523, 573, F616, and F644. We will produce them later today. We are continuing to investigate whether there are any additional documents that formed the basis for Ms. Malkowska's declarations.

Third, you ask for Dr. Prater's "Ph.D. dissertation and his patent declarations and testimony" without explaining how they are relevant to this litigation. Indeed, the dissertation of Dr. Prater, a fact witness, has nothing to do with tramadol or even controlled-release formulations. It is directed to cosmetic tablet coatings for immediate-release formulations. Similarly, Dr. Prater's declarations and testimony have nothing to do with tramadol and are irrelevant. Moreover, Dr. Prater does not have a copy of his declarations or testimony.

With respect to Dr. Prater's continued deposition, we offered him the week of April 28 in Frankfurt and also on May 6 in New York. You refused those dates. Dr. Prater is also available on May 21 and May 29 in New York. However, given that Par will be taking the depositions of Ms. Malkowska, in London in June and has asked for the depositions of Drs Leslie and Miller, it would certainly be more convenient for the witness to complete Dr. Prater's deposition in London. Please let us know by Tuesday if this is acceptable so Dr. Prater can plan accordingly.

Finally, you ask whether "Purdue and Napp are refusing to identify the recalled documents" in a privilege log even though we have already indicated that we will do so. In that regard, see Sona De's April 30, 2008 letter to you. We will produce a supplemental privilege log by Wednesday, May 14. You also ask that we explain the "circumstances surrounding the alleged inadvertent production" even though we have already done so. Sona's April 30, 2008 letter discusses that as well.

Sincerely,
Paddy

C



ROPES & GRAY LLP

1211 AVENUE OF THE AMERICAS    NEW YORK, NY 10036-8704    212-596-9000    F 212-596-9090

BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    TOKYO    WASHINGTON, DC    www.ropesgray.com

May 9, 2008

Padmaja Chinta
212-596-9477
padmaja.chinta@ropesgray.com

**BY EMAIL (W/O ENCLOSURES)**
**(CONFIRMATION VIA FEDEX)**

Robert E. Colletti, Esq.
Frommer Lawrence & Haug LLP
745 5th Avenue
New York, NY 10151

Re:    *Purdue et al. v. Par et al.*

Dear Rob:

Enclosed are four CDs containing copies of plaintiffs Purdue and Napp's documents. The enclosed production results from the preparation of five of our privilege logs. As we prepared our privilege logs, we determined that some documents that were originally believed to be privileged were no longer privileged and should be produced. These documents were removed from the privilege log before the logs were served on you. We are still processing certain documents resulting from the preparation of our sixth log (served on you already) relating to Purdue's electronically stored documents and expect to produce them next week.

The enclosed production also includes unredacted copies of Napp's laboratory notebooks. The documents in all four CDs are being produced pursuant to the Stipulated Protective Order dated January 25, 2008.

We also hereby request the return of the following inadvertently and/or unintentionally produced documents as protected by the attorney/client privilege and/or work product immunity pursuant to ¶ 10 of the Protective Order:

| Begin | End |
| --- | --- |
| NAPP0067534 | NAPP0067548 |
| NAPP0242036 | NAPP0242040 |
| NAPP0242086 | NAPP0242089 |
| NAPP0242108 | NAPP0242113 |
| NAPP0242238 | NAPP0242277 |
| NAPP0346662 | NAPP0346664 |

ROPES & GRAY LLP

Robert E. Colletti, Esq.                    - 2 -                        May 9, 2008

| Begin | End |
|-------|-----|
| NAPP0346665 | NAPP0346678 |
| NAPP0346702 | NAPP0346706 |
| NAPP0346707 | NAPP0346712 |
| NAPP0346713 | NAPP034671 |
| NAPP0346718 | NAPP0346724 |
| NAPP0346735 | NAPP0346739 |
| NAPP0346740 | NAPP0346744 |
| NAPP0346745 | NAPP034674 |
| NAPP0346750 | NAPP034675 |
| NAPP0346884 | NAPP0346889 |
| NAPP0346900 | NAPP034695 |
| NAPP0346958 | NAPP0346964 |

These documents are being re-produced with redactions and have the same bates numbers as before. Please confirm in writing once Par has complied with the requirements of ¶ 10 of the Protective Order with respect to the above-identified inadvertently produced documents.

Sincerely,

Padmaja Chinta

Enclosures

D



ROPES & GRAY LLP
525 UNIVERSITY AVENUE, SUITE 300
PALO ALTO, CA 94301-1917
WWW.ROPESGRAY.COM

May 23, 2008

Thomas A. Wang
650-617-4075
650-566-4190 fax
thomas.wang@ropesgray.com

**BY E-MAIL (CONFIRMATION COPY BY FEDEX)**

Robert E. Colletti, Esq.
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY  10151

Re:     *Purdue et al. v. Par Pharmaceutical et al.*

Dear Rob:

Further to Paddy Chinta's e-mail to you of May 23, 2008, enclosed is a CD containing documents concerning experimental testing based on the Merck/Bondi reference conducted by Napp in connection with foreign patent office proceedings or foreign patent litigation.

The CD includes those documents specifically requested in your May 12, 2008 email to Ms. Chinta that concern experimental testing based on the Merck/Bondi reference or are not privileged. As stated in Ms. Chinta's May 23 e-mail, we also include additional previously withheld documents relating to these tests.

Finally, also included on the CD is a copy of Napp notebook F575.

In the interest of time, we are sending these to you via e-mail with confirmation copies to follow.

Regards,

Thomas A. Wang

TAW:taw

Enclosure

E

**From:** Colletti, Robert [mailto:RColletti@flhlaw.com]
**Sent:** Monday, June 02, 2008 12:21 PM
**To:** Chinta, Padmaja
**Cc:** Goldman, Robert J.; mbourke@cblh.com; tully@mbhb.com; cottrell@rlf.com; Fineman, Steven; Haug, Ed
**Subject:** DDK Privilege Log (540572-521)

Dear Paddy,

On March 5, 2008 we received a log from your office identifying approximately 1700 privileged documents from the files of Davidson, Davidson & Kappel ("DDK"). Attorney-client and work-product privilege to any communication relating to Ms. Malkowska's declarations or the *Napp v. Asta* repeat experiment has been waived. *See e.g. Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349-50 (Fed. Cir. 2005); *Samsung SDI v. Matsushita Elec., Ind.*, 2007 WL 4302707, C.D.Cal. 2007; *Tracinda v. Daimler Chrysler*, 362 F.Supp.2d 487, 513 (D.Del. 2005, J. Farnan). Hence, please confirm that DDK will produce documents currently withheld on the basis of attorney client and/or work product privilege from its log relating to the above-identifed subject matters. If not, we will need to seek the Court's assistance.

Sincerely,
Rob

```
=============================================
This message originates from the law firm of Frommer
Lawrence and Haug LLP.  It contains information that may be
confidential or privileged and is intended only for the individual
or entity named above.  No one else may disclose, copy,
distribute, or use the contents of this message. Unauthorized
use, dissemination, and duplication is strictly prohibited, and
may be unlawful.  All personal messages express views
solely of the sender, which are not to be attributed to
Frommer Lawrence and Haug LLP, and may not be copied or
distributed without this disclaimer.  If you receive this
message in error, please notify us immediately at
firm@flhlaw.com or call (212) 588-0800.
```

F

----- Original Message -----
From: Colletti, Robert <RColletti@flhlaw.com>
To: Chinta, Padmaja
Cc: Goldman, Robert J.; cjeffers@cblh.com <cjeffers@cblh.com>; Chen, Angus
<AChen@flhlaw.com>
Sent: Wed Jun 04 08:01:29 2008
Subject: Prater Deposition (540572-521)

Dear Paddy,

This is a follow up to Dr. Prater's deposition earlier today.  Please produce the
analytical information for the samples produced in formulation notebook F644, including
pages 15, and 24-25.  These samples are identified in the notebooks as LIMS 98000J62,
98000J6J, 98000J64, 98000J65, 98000376, and 98000381.  We also requested a copy of the
analytical notebooks from the stability department as our search has not located them.  If
these analytical notebooks were produced please identify the production numbers.  Finally,
please produce the PowerPoint or Excel presentations of notebook data that Dr. Prater
testified would have been reviewed with Mr. Milnes.

Regards,
Rob
============================================
This message originates from the law firm of Frommer Lawrence and Haug LLP.  It contains
information that may be confidential or privileged and is intended only for the individual
or entity named above.  No one else may disclose, copy, distribute, or use the contents of
this message. Unauthorized use, dissemination, and duplication is strictly prohibited, and
may be unlawful.  All personal messages express views solely of the sender, which are not
to be attributed to Frommer Lawrence and Haug LLP, and may not be copied or distributed
without this disclaimer.  If you receive this message in error, please notify us
immediately at firm@flhlaw.com or call (212) 588-0800.

1

G

**From:** Chen, Angus [mailto:AChen@flhlaw.com]
**Sent:** Tuesday, June 10, 2008 12:39 PM
**To:** Wang, Thomas
**Cc:** Colletti, Robert
**Subject:** P. Cowcher deposition (540572-521)

Tom

I am writing to follow-up on the requests that Rob made at the end of Mr. Cowcher's deposition.

Please produce the following by the close of business on Thursday, June 12: videotape of the witnessed experiments from the Napp v. Asta litigation; the raw data relating to the witnessed experiments from the Napp v. Asta litigation; stability notebooks relating to the witnessed experiments from the Napp v. Asta litigation; and LIMS printouts of experiments relating to tramadol.

Regards,
Angus

Angus Chen, Ph.D.
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue

H

1       IN THE UNITED STATES DISTRICT COURT        FOR THE DISTRICT OF DEl

2    PURDUE PHARMA PRODUCTS, L.P.,)

3    NAPP PHARMACEUTICAL GROUP,   )LTD., BIOVAIL LABORATORIES   )

4    INTERNATIONAL, SRL, and    )ORTHO-MCNEIL, INC.,        )

5                   ) Civil Action      Plaintiffs,    ) No. 07-255-JJF

6                   ) No. 07-414-JJFv.                )

7                   )PAR PHARMACEUTICAL, INC., and)

8    PAR PHARMACEUTICAL COMPANIES,)INC.,                )

9                   )        Defendants.    )

10

11          United States District Court        866 King Street - Fourth Floor

12          Wilmington, Delaware

13          Thursday, September 6, 2007

14          4:10 p.m.

15    BEFORE: THE HONORABLE JOSEPH J. FARNAN, JR.

16          United States District Judge

17    APPEARANCES:

18    Plaintiffs:

19          ROBERT J. GOLDMAN, ESQ.        RODGER DALLERY SMITH, II, ESQ.

20          MARY W. BOURKE, ESQ.       RICHARD D. KIRK, ESQ.

21    Defendants:

22          FREDERICK L. COTTRELL, III, ESQ.        STEVEN J. FINEMAN, ESQ.

23          EDWARD HAUG, ESQ.       ROBERT E. COLLETTI, ESQ.

24           For the Defendants

1          THE COURT:   So tell me what you

2     have been talking about with each other, what

3     you're thinking?

4          MR. GOLDMAN:   Good afternoon, Your

5     Honor.  We have some good news and some bad news.

6     The parties have been able to agree about ready

7     for trial dates and dispositive motions dates and

8     just about everything that affects the Court.

9          Then there is a disagreement about

10    some of the timing of some of the interim events

11    during discovery.  When fact discovery will cut

12    off and when documents need to be produced.

13          And really it's the document

14    production piece that is driving the dispute

15    between the parties.  What the case is about is a

16    patent involving work that was done in Europe and

17    European inventors. And we have been trying pretty

18    much since the lawsuit began to identify and

19    collect the documents and interview the witnesses

20    and so on and so forth.

21          The work was done back in the mid

22    nineties and so when my partner Ms. Dee took her

23    squad over to England and Germany this summer to

24    interview the witnesses we found that a lot of the

1   documents are archived.  So not only do we have to

2   go find the witnesses but we have to dig them out

3   of archives and identify them and so on.

4          So when it came time to negotiate

5   the dates for the pretrial schedule we proposed

6   that documents be produced by the beginning of

7   February. That was the reason for our proposal and

8   all the other dates followed from that.  The

9   defendants for reasons that they explained in the

10   pretrial order believe that documents should be

11   produced by the end of November.  And although we

12   hear them and we understand why they would like

13   the documents earlier, we have been working at

14   this diligently and we don't believe that it's

15   practical.

16          So we basically agreed to disagree

17   about those dates and those are the dates we

18   proposed alternative schedules and that's why

19   we're here today.

20          THE COURT:  All right.

21          MR. HAUG:   Good afternoon, Your

22   Honor.  I think Mr. Goldman is correct largely and

23   certainly correct in what our dispute is.  From

24   our point of view as the defendants they knew

1          MR. HAUG:  Yes, Your Honor.

2          THE COURT:  October 1 of '09 and so

3    that means you would want a decision by October of

4    2009.  So that means you would have to be 12

5    months, 11 months in the Federal Circuit.

6          All right.  Your trial date is

7    November 10, 2008.  Now if you can't decide about

8    the document date I'll order it for January 4,

9    2008. That is completed by January 4, 2008.  That

10   will tie you up on New Year's Eve.  But it could

11   be in London, I'm just trying to help here.

12   That's pretty good actually.  January 4, 2008.

13         I'm going to put the pretrial

14   conference on for October the 16, 2008.  We will

15   get you a time from that.  You don't need that

16   today.  And there won't be dispositive motions.

17   What did you pick as a markman?  I didn't bring it

18   in with me.  If you want to hand it up to me I'll

19   take a look at it.

20         MR. GOLDMAN:  We had briefing in

21   November and December of 2008.

22         THE COURT:  Right.  So that's the

23   other thing I'm concerned about.  You're going to

24   have to move that date by agreeing with the dates